No. 25-2205

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

_____

KANGOL, LLC,

*Appellee-Plaintiff*,

v.

HANGZHOU CHUANYUE SILK IMPORT & EXPORT CO., LTD,

*Appellant-Defendant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division,
District Judge Sharon Johnson Coleman
No. 1:24-cv-01636

_____

### *AMICI CURIAE* BRIEF

### IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL

_____

J. Benjamin Bai
**King & Wood Mallesons LLP**
500 Fifth Avenue, 50th Floor
New York NY 10110
(212) 319-4755
benjamin.bai@cn.kwm.com

*Counsel of Record for Amici Curiae*

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 29, and Seventh Circuit Rule 26.1, the undersigned counsel for *amici curiae* states:

1. The full names of all *amici curiae* are: Hangzhou Longqi Network Technology Co., Ltd. and Hangzhou Qingpeng Technology Co. Ltd.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) is: N/A.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the *amici curiae* I represent are: N/A

4. The names of all law firms whose partners or associates have appeared or are expected to appear for *amici* in this Court are: None.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal: None.

6. All information required by Federal Rules of Appellate Procedure 26.1(b) and 26.1(c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases is: None.

| | |
|---|---|
| October 29, 2025 | Respectfully submitted. |
| | By: /s/ Benjamin Bai |
| | J. Benjamin Bai |

**Table of Contents**

INTEREST OF *AMICI CURIAE* ...................................................................................1

SUMMARY OF THE ARGUMENT .............................................................................1

ARGUMENT ..................................................................................................................4

I.     Service through Email without the Recipient's Consent Is Categorically Prohibited Under Chinese Law ....................................................................................4

    1.     Under Chinese Domestic Law, Service by Email Always Requires the Recipient's Consent. ......................................................................................................4

    2.     Consistent with Its Approach in Domestic Litigation, China also Prohibits Serving Domestic Defendants to Circumvent the Hague Convention. ....................5

II.     The District Court's Decision Creates Unnecessary Risk of International Friction. ...........................................................................................................................9

CONCLUSION ..............................................................................................................11

CERTIFICATE OF COMPLIANCE ............................................................................13

CERTIFICATE OF SERVICE .....................................................................................14

# Table of Authorities

CASE

*Abbott v. Abbott*,
     560 U.S. 1 (2010) ........................................................................9

*Agha v. Jacobs*,
     No. C 07-1800, 2008 WL 2051061 (N.D. Cal. May 13, 2008) ...............8

*Baek v. Radish Media, Inc.*,
     No. CV 18-7475, 2018 WL 6025843 (C.D. Cal. Nov. 16, 2018) ............8

*El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*,
     525 U.S. 155 (1999) ....................................................................9

*Elobied v. Baylock*,
     299 F.R.D. 105 (E.D. Pa. 2014) ...............................................8

*Lozano v. Montoya Alvarez*,
     572 U.S. 1 (2014) ........................................................................9

*Vimar Seguros y Reaseguros v. M/V Sky Reefer*,
     515 U.S. 528 (1995) ...................................................................10

*Water Splash, Inc. v. Menon*,
     571 U.S. 271 (2017) .................................................................7, 9

OTHER AUTHORITIES

China Civil Procedure Law ................................................... 3, 4, 5

Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters of November 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163................................................................. 1, 3, 6, 7

Gary A. Magnarini, *Service of Process Abroad under the Hague Convention*, 71 Marq. L. Rev. 649 (1988)....................................................11

Guangjian Tu, *Service of Process (Documents) in International Civil and Commercial Proceedings: A Critical Review of the Chinese Approach*, 13 China J. Int'l L. 577 (2014).............................................................9

Jenny S. Martinez, *Towards an International Judicial System*, 56 Stan. L. Rev.

    429 (2004) ..................................................................................10

Philip W. Amram, *United States Ratification of the Hague Convention on Service of Documents Abroad*, 61 Am. J. Int'l L. 1019 (1967) ..............11

*Provisions of the Shanghai Higher People's Court on Online Case Filing, Electronic Service of Documents, and Electronic Filing (Interim)* ..........4

*Provisions of the Supreme People's Court on Judicial Assistance Requests for Service of Judicial Documents and Investigation of Evidence in Civil and Commercial Cases Pursuant to International Conventions and Bilateral Judicial Assistance Treaties* ......................................................6

Zheng Sophia Tang, Yongping Xiao & Zhengxin Huo, CONFLICT OF LAWS IN THE PEOPLE'S REPUBLIC OF CHINA (2016)................................8

## INTEREST OF *AMICI CURIAE*

Statement Regarding Consent. Appellant consents; counsel for Appellee did not consent to *Amici*'s motion for leave to file. Accordingly, *Amici* file a contemporaneous motion for leave under Fed. R. App. P. 29(a)(3).

*Amici curiae* are Hangzhou Longqi Network Technology Co., Ltd. and Hangzhou Qingpeng Technology Co. Ltd.[1] They are companies registered in the People's Republic of China and conduct business in the United States. *Amici* have no personal or financial interest in the outcome of this case. Rather, *Amici* offer their broader perspectives to promote judicial fairness and efficiency for foreign companies operating in the United States, which ultimately benefits the American consumers they serve.

## SUMMARY OF THE ARGUMENT

The petition for review in this case is concerned with the interpretation of the Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters of November 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Convention" or the "Convention"). The Hague Convention requires each party to set up a "Central Authority" to accept and serve foreign legal

---

[1] Rule 29(a)(4)(E) Statement: No party or party's counsel authored any part of this brief or contributed money towards its preparation or submission. No one, other than *amici* and their counsel, contributed money towards the preparation or submission of this brief.

documents in civil matters. The Hague Convention also authorizes other methods of service. Relevant to this case, Article 10(a) of the Hague Convention provides that unless a country specifically opts out, service by postal channels may be authorized.

As part of its accession to the Hague Convention, China expressly stated that it does not agree to service by email. Indeed, the official P.R.C. declarations and reservations to the Hague Convention make it clear that, with the limited exception of voluntary service on a foreign national living in China by his country's own embassy or consulate, the only acceptable method of service in China is through the Chinese Central Authority.[2]

Here, Plaintiff-Appellee Kangol LLC served judicial documents to Hangzhou Chuanyue Silk Import & Export Co., Ltd. ("Hangzhou Chuanyue") in China by email, commencing a proceeding in the U.S. District Court for the Northern District of Illinois on February 27, 2024. Disregarding China's unequivocal reservations under the Hague Convention and Article 294 of Chinese Civil Procedure Law which rejected service of foreign judicial documents by email, the District Court concluded that service by email was proper under Fed. R. Civ P. 4(f)(3). Dkt. 32. The District Court entered its Amended Final Judgment Order on October 2, 2024. Dkt. 58. On

---

[2] *See* Declarations of the People's Republic of China, available at <https://www.hcch.net/en/instruments/conventions/statustable/notifications/?csid=393&disp=resdn>.

February 25, 2025, Hangzhou Chuanyue moved to vacate the default judgment under Federal Rule of Civil Procedure 60(b)(4). Dkt. 60. On June 13, 2025, the District Court denied Defendant's motion to vacate. Dkt. 66.

The District Court's decision is plainly wrong and implicates a matter of exceptional importance to international commerce. The District Court's decision cannot be reconciled with the plain language of the Hague Convention Articles 10 and 15, which unambiguously provide that methods of service outside the Convention are proper only if the destination state does not object. This brief argues that service of process on Chinese defendants via email without their consent violates Chinese law and risks creating international friction between the United States and China.

First, Article 294 of China's Civil Procedure Law categorically prohibits service by email without the recipient's express consent. This prohibition reflects China's sovereign decision to regulate how legal documents may be served on defendants within its borders. Chinese law treats email service without consent as legally ineffective, rendering any resulting judgment unenforceable in China.

Second, the district court's authorization of email service without consent creates substantial risks of international friction. Such orders undermine comity between nations, violate China's sovereign prerogatives, and may result in

3

unenforceable judgments. Respecting foreign service requirements promotes international judicial cooperation and ensures that American judgments receive recognition abroad.

## ARGUMENT

I. **Service through Email without the Recipient's Consent Is Categorically Prohibited Under Chinese Law**

    1. **Under Chinese Domestic Law, Service by Email Always Requires the Recipient's Consent.**

The Chinese Civil Procedural Law ("CPL"), amended 2023, is the principal statute that regulates the conduct for civil litigation, including service of process. Article 90 of the CPL, which addresses email service, provides: "[w]ith the consent of the recipient, the people's court may serve litigation documents by electronic means of which delivery can be ascertained."

The language of Article 90 is clear and unambiguous; it expressly conditions the propriety of electronic service on the consent of the recipient. The judicial interpretations issued by lower courts are consistent with this reading. *See e.g. Provisions of the Shanghai Higher People's Court on Online Case Filing, Electronic Service of Documents, and Electronic Filing (Interim)*, Article 19 ("The case-filing judge and the presiding judge shall log into the case management system to verify whether electronically served documents have been acknowledged. If the opposing party fails to respond within three working days after the electronic documents are

dispatched, or refuses to accept electronic service, such electronic service shall be deemed invalid and shall immediately be converted to other statutory methods of service.").

### 2. Consistent with Its Approach in Domestic Litigation, China also Prohibits Service Methods That Circumvent the Hague Convention.

Article 294 of the CPL provides the manner a foreign court proceeding may be served to a party within the territory of P.R.C.:

> (1) The request for provision of judicial assistance shall be effected through channels provided in the international treaties concluded or acceded to by the People's Republic of China; in the absence of such treaties, they shall be effected through diplomatic channels.
> (2) A foreign embassy or consulate accredited to the People's Republic of China may serve documents on its citizens and make investigations and collect evidence among them, provided that the laws of the People's Republic of China are not violated and no compulsory measures are taken.
> (3) Except for the conditions provided in the preceding paragraph, no foreign organization or individual may, without the consent of the competent authorities of the People's Republic of China, serve documents or make investigations and collect evidence within the territory of the People's Republic of China.

By its plain terms, Article 294 provides three and only three avenues to conduct international service of process in China. It is undisputed that paragraphs (2) and (3) are not applicable in this case. The first paragraph of Article 294 provides that a foreign court can request judicial assistance, including service of process, through an international treaty to which China is a party.

The Chinese Government ratified the Hague Convention in May 1991 and the

treaty entered into force for China as of January 1, 1992. The Chinese accession to the Hague Convention was roughly contemporaneous with its adoption of the initial CPL.

To implement the Hague Convention, the highest court in China, the Supreme People's Court of China, has issued several binding judicial interpretations to guide lower courts. The most recent interpretation, issued in 2020, requires Chinese courts to "refuse to provide assistance to those foreign authorities whose requests for judicial assistance fall under any of the circumstances in which a request for judicial assistance shall be rejected as specified in the Hague Convention." *Provisions of the Supreme People's Court on Judicial Assistance Requests for Service of Judicial Documents and Investigation of Evidence in Civil and Commercial Cases Pursuant to International Conventions and Bilateral Judicial Assistance Treaties*, Article 13 (2020).

As this Court is aware, the United States ratified the Hague Convention in April 1967. The Convention became effective for the United States as of February 1969. Therefore, both the United States and China are parties to the Hague Convention.

The United States and China have not entered into a bilateral judicial assistance treaty for service of process in civil cases. They are also not parties to any

other applicable multilateral treaty. Therefore, the Hague Convention is the only treaty that is on point for service of process between the U.S. and China.

Article 2 of the Hague Convention requires each signatory to designate a Central Authority to accept and serve legal documents from abroad. Pursuant to the Hague Convention, the Chinese Government has designated its Ministry of Justice as its Central Authority. Article 10(a) of the Hague Convention provides that as long as a country does not object, the Convention shall not be construed to interfere with the service of judicial documents by "postal channels." The U.S. Supreme Court held in *Water Splash, Inc. v. Menon*, 571 U.S. 271, 284 (2017) that a U.S. litigant can serve a document by mail if (i) the receiving country does not object pursuant to Article 10(a), and (ii) service by mail is authorized under otherwise applicable U.S. law.

But when ratifying the Hague Convention, China expressly objected to the application of Article 10(a) to China. This means that foreign judicial documents cannot be served in China using postal channels. The official P.R.C. declarations and reservations to the Hague Convention make it clear that, with the limited and inapplicable exception of voluntary service on a foreign national living in China by his country's own embassy or consulate, the only acceptable method of service on China is through the Chinese Central Authority.

China is far from being alone in objecting to Article 10(a). Some of the closest allies of the United States likewise do not permit service by mail. *See, e.g., Baek v. Radish Media, Inc.*, No. CV 18-7475, 2018 WL 6025843, at *2 n.5 (C.D. Cal. Nov. 16, 2018) (South Korea); *Elobied v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014) (Switzerland); *Agha v. Jacobs*, No. C 07-1800, 2008 WL 2051061, at *1-2 (N.D. Cal. May 13, 2008) (Germany).

The official Chinese reservation rejecting mail service is also reflected in the domestic Chinese ratification process. When the Standing Committee of the National People's Congress, the country's legislature, voted to authorize the adoption of the Hague Convention in March 1991, its resolution expressly noted that China would reject the use of postal channels.

According to a leading English-language book on Chinese conflict of law written by three prominent Chinese legal academics, China opted out of Article 10(a) because service of process is considered "an exercise of judicial sovereignty" that cannot be delegated to any persons or entities that are not directly controlled by the Chinese Government. Zheng Sophia Tang, Yongping Xiao & Zhengxin Huo, CONFLICT OF LAWS IN THE PEOPLE'S REPUBLIC OF CHINA 119 (2016). In rejecting Article 10(a), the Chinese Government deliberately chose the "protection of national and judicial sovereignty instead of pragmatic convenience

and efficiency." *Id.* Other Chinese scholars agree. *See e.g.*, Guangjian Tu, *Service of Process (Documents) in International Civil and Commercial Proceedings: A Critical Review of the Chinese Approach*, 13 China J. Int'l L. 577, 599 (2014) ("apart from the diplomatic/consular channel and the channel of Central Authority under a treaty, no foreign documents can cross the Chinese border as a result of the strong concept of sovereignty reposed upon service of process (documents) by China.").

## II. The District Court's Decision Creates Unnecessary Risk of International Friction.

When interpreting an international treaty, the U.S. Supreme Court routinely accords "considerable weight" to the views of other nations which are parties to that treaty. *Abbott v. Abbott*, 560 U.S. 1, 16 (2010); *see also Water Splash*, 571 U.S. at 283 (noting that multiple other signatories permit or acquiesce in service by mail); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 12 (2014) (international treaties should be read "in a manner consistent with the shared expectations of the contracting parties" (internal quotation marks omitted)); *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 175 (1999) ("Decisions of the courts of other Convention signatories corroborate our understanding of the Convention's preemptive effect."). This rule applies with special force here because of the need to "ensure greater predictability and uniformity of procedure" under the Hague Convention. Jenny S. Martinez, *Towards an International Judicial System*, 56 Stan. L. Rev. 429, 513 (2004).

9

The District Court's decision permitting a private litigant to serve judicial documents on a party in China by email is not consistent with the plain meaning of the Hague Convention. Even assuming *arguendo* that the District Court's interpretation is permissible, divergent interpretations of the Hague Convention can have significant adverse real-world consequences. The U.S. Supreme Court has expressly cautioned against interpreting international treaties in a manner "contrary to every other nation to have addressed this issue." *Vimar Seguros y Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 537 (1995). Since the Hague Convention was designed to streamline cross-border litigation, courts should put more weight on promoting international uniformity rather than emphasizing domestic law. *See id.* at 539 ("If the United States is to be able to gain the benefits of international accords and have a role as a trusted partner in multilateral endeavors, its courts should be most cautious before interpreting its domestic legislation in such manner as to violate international agreements."). The risk for unnecessary friction may be particularly acute between the United States and China, the world's largest and second largest economies, respectively.

The United States helped draft and enact the Convention. *See* Philip W. Amram, *United States Ratification of the Hague Convention on Service of Documents Abroad*, 61 Am. J. Int'l L. 1019 (1967) (noting that the drafting was

"heavily influenced" by the U.S. and that the U.S. was the first country to ratify the Convention); Gary A. Magnarini, *Service of Process Abroad under the Hague Convention*, 71 Marq. L. Rev. 649, 657 (1988) (American "suggestions, reflective of a liberal attitude towards service of process, had a substantial effect on the ultimate text of the Convention."). If the Hague Convention does not function as intended, the interest of U.S. plaintiffs in cross-border cases will be seriously prejudiced. *Id.* at 653, 655-57 (describing the difficulties facing American plaintiffs before the approval of the Hague Convention). The possibility of this scenario occurring, which would contradict the fundamental purpose of the Hague Convention, further justifies vacation of the District Court's judgment.

Therefore, a definitive resolution of this and related issues by the Seventh Circuit would provide much-needed clarity, particularly in light of the mounting volume of "Schedule A" cases against overseas defendants filed in the District Court every year. A ruling on the propriety of electronic service of process would help future litigants avoid substantial confusion.

## **CONCLUSION**

For the reasons set forth above, the amici respectfully support reversal and urge this Court to provide guidance to district courts on the proper means for service in "Schedule A" litigation. They believe it is important for this Court to consider the

broader context of the many procedural and legal deficiencies in how this case, like most other "Schedule A" cases, was litigated and how those litigation irregularities can harm litigants, competition, and consumers at large.

October 29, 2025

Respectfully submitted.

By: /s/ Benjamin Bai

J. Benjamin Bai
**King & Wood Mallesons LLP**
500 Fifth Avenue, 50th Floor
New York NY 10110
Telephone: (212) 319-4755
E-mail: benjamin.bai@cn.kwm.com

Haolu Feng
**King & Wood Mallesons**
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031 China
Telephone: (206) 499-2956
Email: harry.feng@cn.kwm.com

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that

1. The foregoing *AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL complies with the type-volume limitation of Fed. R. App. P. 29(a)(5).

2. This brief complies with the typeface and type-style requirements of Seventh Circuit Rule 32. It has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14 point font, with footnotes in 14 points.

October 29, 2025

Respectfully submitted.

By: /s/ Benjamin Bai

J. Benjamin Bai
**King & Wood Mallesons LLP**
500 Fifth Avenue, 50th Floor
New York NY 10110
Telephone: (212) 319-4755
E-mail: benjamin.bai@cn.kwm.com

Haolu Feng
**King & Wood Mallesons**
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031 China
Telephone: (206) 499-2956
Email: harry.feng@cn.kwm.com

*Counsel for Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2025, I caused the foregoing *AMICI CURIAE* BRIEF IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL to be served by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.

October 29, 2025

Respectfully submitted.

By: /s/ Benjamin Bai

J. Benjamin Bai
**King & Wood Mallesons LLP**
500 Fifth Avenue, 50th Floor
New York NY 10110
Telephone: (212) 319-4755
E-mail: benjamin.bai@cn.kwm.com

Haolu Feng
**King & Wood Mallesons**
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031 China
Telephone: (206) 499-2956
Email: harry.feng@cn.kwm.com

*Counsel for Amici Curiae*