No. 25-2205

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

KANGOL LLC,
Plaintiff-Appellee,

vs.

HANGZHOU CHUANYUE SILK IMPORT & EXPORT CO., LTD.
Defendant-Appellant,

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 1:24-cv-01636
Hon. Sharon Johnson Coleman, District Judge

BRIEF OF AMICI CURIAE
WILLIAM S. DODGE AND MAGGIE GARDNER
IN SUPPORT OF THE APPELLANT URGING REVERSAL

RUBIN AND RUDMAN, LLP
Theodore J. Folkman
53 State Street
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com

# CIRCUIT RULE 26.1 CERTIFICATION

Counsel for the amici curiae makes the following disclosures under Circuit Rule 26.1.

Parties represented: William S. Dodge and Maggie Gardner

Law firms appearing for the parties: Rubin and Rudman, LLP

*/s/ Theodore J. Folkman*

Theodore J. Folkman
53 State Street
Boston, Mass. 02109
 (617) 330-7000
tfolkman@rubinrudman.com

# TABLE OF CONTENTS

Circuit Rule 26.1 certification ............................................................. i

Table of authorities ........................................................................ iii

Interest of the amici curiae ............................................................. 1

Introduction and summary of argument ........................................... 2

Argument ....................................................................................... 8

   I.    The Hague Service Convention is exclusive. ........................... 8

      A.   The Convention permits specified means of service. ........... 9

      B.   Methods of service not expressly permitted by the
      Convention are prohibited. ....................................................... 11

      C.   The negotiating history and views of other contracting states
      confirm that the Convention is exclusive. ................................. 12

   II.   Service by email is permissible as service through "postal
   channels" only if the receiving state has not objected................... 16

   III.   The clear language of Rule 4(f) requires service in
   compliance with the Convention. .................................................. 19

   IV.   The Convention prohibits default judgments unless service
   by one of its specified methods has been attempted. ..................... 21

   V.   Email service on a defendant outside the United States may
   still be permissible in some circumstances..................................... 23

Conclusion ..................................................................................... 27

Certificate of compliance................................................................. 28

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Abbott*, 560 U.S. 1 (2010) ............................................. 13, 17

*Air France v. Saks*, 470 U.S. 392 (1985) ............................................ 12

*D Squared Plant Traps LLC v. Guangdong Bixing Trading Co.*,
    No. 23-CV-1907, 2024 WL 503628 (W.D. Pa. Feb. 8, 2024) ........ 23

*Duong v. DDG BIM Services LLC*, 700 F. Supp. 3d 1088
    (M.D. Fla. 2023) ......................................................... 3, 11

*Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*,
    766 F.3d 74 (D.C. Cir. 2014) ......................................... 24

*Luxottica Group S.p.A. v. P'ships & Unincorporated Ass'ns
    Identified on Sched. "A"*, 391 F. Supp. 3d 816
    (N.D. Ill. 2019) ......................................................... 3, 25

*NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) .............. 25

*NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in
    Sched. "A"*, 549 F. Supp. 3d 790 (N.D. Ill. 2021) ......................... 25

*Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns
    Identified on Sched. "A"*, 347 F.R.D. 316
    (N.D. Ill. 2024) ............................................... 3, 4, 23, 24

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007
    (9th Cir. 2002) ......................................................... 19, 24

*SEC v. Lahr*, No. 22-2497, 2024 WL 3518309
    (3d Cir. July 24, 2024) ................................................. 4, 18

*Smart Study Co., Ltd. v. Acuteye-US*, 620 F. Supp. 3d 1382
(S.D.N.Y. 2022) ..................................................... 3, 12, 24

*Teetex LLC v. Zeetex, LLC*, 20-cv-07092-JSW, 2022 WL 4096881
(N.D. Cal. Jul. 5, 2022) ...................................................... 3

*Uipath, Inc. v. Shanghai Yunkuo Info. Tech. Co.*, No. 23 CIV. 7835
(LGS), 2023 WL 8600547 (S.D.N.Y. Dec. 12, 2023) ...................... 3

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988)......................................... 5, 8, 9, 12, 23, 25, 26

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017).................................. 8, 9, 11, 12, 13, 15, 16, 17

## Treaties

Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters, Nov. 15, 1965, 20
U.S.T. 361, 658 U.N.T.S. 163 (1969) ........................................... 2, 8

Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 1,
20 U.S.T. 361, 362, 658 U.N.T.S. 163, 165 (1969) ......................... 7

Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 2,
20 U.S.T. 361, 362, 658 U.N.T.S. 163, 165 (1969) ......................... 9

Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 5,
20 U.S.T. 361, 362-63, 658 U.N.T.S. 163, 167 (1969)..................... 9

Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 6,
20 U.S.T. 361, 363, 658 U.N.T.S. 163, 167-69 (1969).....................9

Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 8,
20 U.S.T. 361, 363, 658 U.N.T.S. 163, 169 (1969)....................9, 11

Convention on the Service Abroad of Judicial and Extrajudicial Doc-
uments in Civil or Commercial Matters, Nov. 15, 1965, art. 10, 20
U.S.T. 361, 363, 658 U.N.T.S. 163, 169
(1969)....................................3, 5, 6, 7, 10, 11, 16, 17, 18, 21, 22, 26

Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 11,
20 U.S.T. 361, 363-64, 658 U.N.T.S. 163, 171 (1969).............10, 11

Convention on the Service Abroad of Judicial and Extrajudicial Doc-
uments in Civil or Commercial Matters, Nov. 15, 1965, art. 15,
20 U.S.T. 361, 364, 658 U.N.T.S. 163, 171-73 (1969).........7, 21, 22

Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 19,
20 U.S.T. 361, 365, 658 U.N.T.S. 163, 175 (1969).................10, 11

Inter-American Convention on Letters Rogatory, Jan. 30, 1975,
S. Treaty Doc. No. 98-27 (1984), 1438 U.N.T.S. 287....................20

## Rules

Fed. R. App. P. 29(a)(2) ........................................................................1

Fed. R. Civ P. 4, 1993 Advisory Committee Note,
146 F.R.D. 401, 569 (1993) ...........................................................23

Fed. R. Civ. P. 4(e)...............................................................25

Fed. R. Civ. P. 4(f) ..............................................19, 23, 25

Fed. R. Civ. P. 4(f)(1)......................................................6, 19

Fed. R. Civ. P. 4(f)(2)..........................................6, 19, 20, 23

Fed. R. Civ. P. 4(f)(3)...........................2, 4, 6, 19, 20, 21, 24

Fed. R. Civ. P. 4(h)(2) ..................................................2, 19

## Other Authorities

B. Ristau, International Judicial Assistance (2000 rev. ed.)...............13

China—Declarations and Notifications,
  https://www.hcch.net/en/instruments/conventions/status-
  table/notifications/?csid=393&disp=resdn ............................6, 9, 18

Hague Conference on Private International Law, Conclusions and
  Recommendations Adopted by the Special Commission on the
  Practical Operation of the Apostille, Evidence and Service
  Conventions (2003), https://assets.hcch.net/docs/0edbc4f7-675b-
  4b7b-8e1c-2c1998655a3e.pdf ........................................................14

Hague Conference on Private International Law, Conclusions and
  Recommendations Adopted by the Special Commission on the
  Practical Operation of the Hague Apostille, Service, Taking of
  Evidence and Access to Justice Conventions (2009),
  https://assets.hcch.net/docs/5bf65314-4f55-42b5-9b0c-
  770f2bfccd37.pdf..........................................................................15

Hague Conference on Private International Law, Conclusions and
  Recommendations Adopted by the Special Commission on the

Practical Operation of the Hague Service, Taking of Evidence and Access to Justice Conventions (2024), https://assets.hcch.net/docs/6aef5b3a-a02c-408f-8277-8c995d56f255.pdf. .................................................................... 5, 15, 17

John F. Coyle, Robin Effron & Maggie Gardner, *Contracting Around the Hague Service Convention*, 53 U.C. Davis Law Review Online 53 (2019) .......................................................................................... 26

Office of International Judicial Assistance Guidance on Service Abroad in U.S. Litigation, https://www.justice.gov/civil/page/file/1064896/download (last updated Oct. 1, 2018) ....................................................................... 16

Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on the Operation of the 1965 Service Convention (2025) ........................................................ 14, 15, 16, 17

Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on the Operation of the Service Convention (2016) ......................................................................... 16

Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 .................................................................................... 8

Supreme People's Court, Minutes of the National Symposium on the Foreign-Related Commercial and Maritime Trial Work of Courts art. 11 (2021), https://lawinfochina.com/display.aspx?id=39125&lib=law ........... 18

United States, Questionnaire Relating to the Service Convention, https://assets.hcch.net/docs/e40165e3-4301-41fe-8d70-3d34a3e251ed.pdf ......................................................................... 17

United States—Declaration, Reservation, Notification, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=428&disp=resdn ...................................... 22

William S. Dodge & Maggie Gardner, *E-Service Across Borders*, 108 Judicature 44 (2024) ...................................................... 4, 12, 19

William S. Dodge, *Substituted Service and the Hague Service Convention*, 63 William & Mary L. Rev. 1485 (2022)................... 26

# INTEREST OF THE AMICI CURIAE[1]

Amici are professors who teach and write about transnational litigation. They have an interest in the proper interpretation of the Hague Service Convention and believe that their expertise may help the Court.

William S. Dodge is Lobingier Professor of Comparative Law and Jurisprudence at the George Washington University Law School. He is a reporter for the Restatement (Fourth) of the Foreign Relations Law of the United States, a co-author of Transnational Litigation in Nutshell (2d ed. 2021), and a founding editor of the Transnational Litigation Blog (www.tlblog.org).

Maggie Gardner is a Professor of Law at Cornell Law School. Her articles on transnational litigation, including the Hague Service Convention, have appeared in such journals as Stanford Law Review, NYU Law Review, Virginia Law Review, and University of Pennsylvania Law Review. She is also a founding editor of the Transnational Litigation Blog (www.tlblog.org).

Along with their other publications, amici are co-authors of *E-Service Across Borders*, 108 Judicature 44 (2024), which discusses many of the issues raised in this appeal.

---

[1] No person or entity other than amici and their counsel authored the brief in whole or in part. No person or entity other than amici and their counsel contributed money intended to fund preparing or submitting the brief. Both parties have consented to the filing of this brief. Filing is authorized by Fed. R. App. P. 29(a)(2).

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case presents a common fact pattern. Plaintiff filed a complaint against alleged counterfeiters in China and other jurisdictions who sell products through online marketplaces. Shortly thereafter, plaintiff filed an ex parte application for a temporary restraining order and an order authorizing service by email. The district court granted the application. When the defendants failed to appear, the court granted default judgment. Nine months later, defendant Hangzhou Chuanyue Silk Import & Export Co. moved to vacate the default judgment for lack of proper service.

In authorizing service by email, the district court relied on Federal Rule of Civil Procedure 4(f)(3), which applies to corporations outside the United States through Rule 4(h)(2). Rule 4(f)(3) permits service on defendants in foreign countries "by other means *not prohibited by international agreement*, as the court orders" (emphasis added). China and the United States are parties to the Hague Service Convention. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (1969) [Hague Service Convention or Convention]. Defendant argued that the Convention prohibits service by email, which is therefore not permitted under Rule 4(f)(3).

District courts are divided on this question. Some have held, like the court below (Short App. 5-6), that the Convention's silence with

respect to service by email means that such service is not prohibited. *See, e.g.*, *Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns Identified on Sched. "A"*, 347 F.R.D. 316, 328 (N.D. Ill. 2024); *Teetex LLC v. Zeetex, LLC*, 20-cv-07092-JSW, 2022 WL 4096881, at *2 (N.D. Cal. Jul. 5, 2022). Others have held that the methods of service specified in the Convention are exclusive, which means that email service is prohibited because it is not one of the specified methods. *See, e.g.*, *Duong v. DDG BIM Services LLC*, 700 F. Supp. 3d 1088, 1093-95 (M.D. Fla. 2023); *Smart Study Co., Ltd. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1393-96 (S.D.N.Y. 2022). Still other courts have held that email in encompassed within "postal channels," by which Article 10(a) of the Convention permits service unless the receiving state has objected to this method. Under this interpretation, email service is prohibited when the receiving state has objected to the use of postal channels generally or to the use of email specifically. *See, e.g.*, *Uipath, Inc. v. Shanghai Yunkuo Info. Tech. Co.*, No. 23 CIV. 7835 (LGS), 2023 WL 8600547, at *1-2 (S.D.N.Y. Dec. 12, 2023); *Luxottica Group S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Sched. "A"*, 391 F. Supp. 3d 816, 826-27 (N.D. Ill. 2019).

4705125_1

No federal Court of Appeals has yet addressed this question in a published opinion.[2] "The question of email service on foreign defendants has … evaded appellate review because many of the cases in which courts have ordered such service result in default judgments that are never appealed." William S. Dodge & Maggie Gardner, *E-Service Across Borders*, 108 Judicature 44, 45 (2024). Guidance is sorely needed. As the district court noted in *Peanuts Worldwide*, "it is hardly fair for a Schedule A litigant's chances to rise or fall based on the identity of the judge to which that entity's case is assigned." 347 F.R.D. at 330.

The correct answer is that the Convention prohibits methods of service to which the receiving state has not consented. Because the Convention applies to this case, and because China has not consented to service by email (or service by postal channels more generally), service by email was "prohibited by international agreement." Thus, the district court was without authority under Rule 4(f)(3) to order email service on a defendant in China.

---

[2] The Third Circuit addressed some of these questions in an unpublished decision. *See SEC v. Lahr*, No. 22-2497, 2024 WL 3518309 (3d Cir. July 24, 2024). The Court held that service by email was prohibited because the Convention is exclusive. *Id.* at *5. The Court found it unnecessary to address whether email is included within "postal channels" because the receiving state, Switzerland, had objected to the use of postal channels. *Id.* at *5 n.17.

The Supreme Court has held that "compliance with the Convention is mandatory in all cases to which it applies," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988), and stated that the Convention "provide[s] the exclusive means of valid service," *id.* at 706. The text and structure of the Convention support its exclusivity. The principal means of service under the Convention is through a Central Authority designated by each contracting state. Other means of service are permitted only if the receiving state consents. The fact that each alternative means permitted by the Convention requires the receiving state's consent makes clear that means not permitted by the Convention are prohibited. The negotiating history of the Convention, the unanimous views of the contracting states expressed during three Special Commissions, the views of the Permanent Bureau of the Hague Conference on Private International Law, and the views of the U.S. executive branch also demonstrate the exclusive character of the Convention.

One of the alternative means permitted by the Convention is service through "postal channels" under Article 10(a). The most recent Special Commission concluded that "postal channels" includes email when authorized by the state of origin and not objected to by the state of destination. *See* Hague Conference on Private International Law, Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Service, Taking of Evidence and Access to Justice Conventions ¶ 105 (2024) [hereinafter 2024

5

C&R], https://assets.hcch.net/docs/6aef5b3a-a02c-408f-8277-8c995d56f255.pdf. The U.S. executive branch takes the same view. China, however, has objected to all methods of service set forth in Article 10. *See* China—Declarations and Notifications, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn. When a defendant is located in China or any other country that has objected to the use of postal channels under Article 10(a), service by email is "prohibited by international agreement."

When the Convention applies, methods of service not identified in the Convention are not permitted under Rule 4(f). Rule 4(f)(1) authorizes service by internationally agreed means "such as those authorized by the Hague Convention." Even if email service as a "postal channel" is "authorized" by the Convention, China has objected to service through postal channels. Rule 4(f)(2) applies only "if there is no internationally agreed means, or if an international agreement allows but does not specify other means." Here, there are internationally agreed means and, because the Hague Service Convention is exclusive, it does not allow "other means." Rule 4(f)(3) authorizes a district court to order "other means not prohibited by international agreement." Because the Convention is exclusive, it prohibits service through any means that is not expressly permitted.

4705125_1

In the absence of proper service, a default judgment was improper. Article 15 of the Convention allows the entry of a default judgment only if process was served by a means proscribed by the internal law of the receiving state or "was actually delivered to the defendant or to his residence *by another method provided for by this Convention*." Convention art. 15 (emphasis added). In countries such as the United States that have made an appropriate declaration, Article 15 also allows the entry of a default judgment if "the document was transmitted *by one of the methods provided for in this Convention*," at least six months have elapsed, and no certificate of service has been returned. *Id.* (emphasis added). China has objected to service by "postal channels" under Article 10(a), which is the only plausible provision for email service in the Convention. The plaintiff made no effort to attempt service on the defendant by any method provided for in the Convention.

Service by email may still be used in many transnational cases. Such service may be authorized under Rule 4(f)(3) for defendants located in countries that are not parties to the Hague Service Convention. Also, the Convention does not apply "where the address of the person to be served with the document is not known." Convention art. 1. And even when the Convention applies, service by "postal channels," which arguably includes service by email, is permitted if the receiving state has not objected. But here, China is a party to the Convention and has objected to service by postal channels. Unless the defendant's address

is unknown—a question the district court did not decide (Short App. 4)—a district court may not enter a default judgment without first requiring an attempt at Convention-compliant service.

## ARGUMENT

### I.   The Hague Service Convention is exclusive.

The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (1969) [Hague Service Convention or Convention] is a multilateral treaty intended "to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017). It currently has 84 contracting parties, including the United States and China. *See* Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

The Supreme Court has explained that when the Convention applies, it "provide[s] the exclusive means of valid service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). The text and structure of the Convention establish that its specified methods of service are exclusive and that unspecified methods of service are prohibited. If any doubt remains, "the Convention's drafting history, the views of the Executive, and the views of other signatories," *Water Splash*, 581 U.S. at 280, further show that the Convention is exclusive.

**A. The Convention permits specified means of service.**

"The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Schlunk*, 486 U.S. at 698. Article 2 requires each contracting state to "designate a Central Authority which will undertake to receive requests for service coming from other Contracting States." Convention art. 2. When a Central Authority receives such a request, it serves the document (or arranges for service) in accordance with its internal law, *id.* art. 5, and it returns a certificate of service to the applicant, *id.* art. 6.

"Submitting a request to a central authority is not, however, the only method of service approved by the Convention." *Water Splash*, 581 U.S. at 275. Article 8 allows each contracting state to effect service without compulsion through its diplomatic or consular agents, subject to the receiving state's right to object to such service (although this right to object does not extend to service on nationals of the serving state). Convention art. 8. China has objected to service under Article 8 except for service on nationals of the serving state. China—Declarations and Notifications, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn.

Article 10 permits service through three alternate channels: (a) service by "postal channels"; (b) transmission of documents by the "judicial officers, officials or other competent persons of the State of

origin" to "the judicial officers, officials or other competent persons of the State of destination" for service; and (c) transmission of documents by any interested person to the "the judicial officers, officials or other competent persons of the State of destination" for service. The state of destination, however, has the right to object to any of these alternate methods of service. Convention art. 10. China has objected to all methods of service under Article 10. China—Declarations and Notifications, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn.

Article 11 allows two or more contracting states to agree on "channels of transmission other than those provided for in the preceding Articles." Convention art. 11. China and the United States have not agreed on additional channels of transmission.

Finally, Article 19 provides: "To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions." Convention art. 19. Amici are not aware of any provision of Chinese law allowing plaintiffs outside of China to effectuate service of process by email directly on defendants inside China.[3]

---

[3] Chinese law permits Chinese *courts* to use electronic means of service. But service in China must be made by a governmental authority,

4705125_1

## B. Methods of service not expressly permitted by the Convention are prohibited.

The "text and structure" of the Hague Service Convention, *Water Splash*, 581 U.S. at 279, demonstrate that it is exclusive. Several of the Convention's provisions make sense only if the Convention's specified methods of service are exclusive. As noted, Articles 8 and 10 permit certain additional methods of service subject to the receiving state's right to object. Reading the Convention to be non-exclusive would render the right to object under Articles 8 and 10 "a dead letter" because "contracting parties have no procedural mechanism to object to an alternative method of service that is not discussed in the Convention." *Duong*, 700 F. Supp. 3d at 1094. For example, this reading would mean that China could object under Article 10(a) to service by registered mail, but it would have no similar mechanism to object to service by TikTok or WhatsApp.

Article 11 allows contracting states to agree to other means of service not specified in the Convention, and Article 19 allows each contracting state to permit other means of service from abroad through its own domestic law. If the Convention were non-exclusive, "those articles would be largely superfluous [because] litigants could serve a party in another country merely by selecting a method that is not expressly

---

and therefore private parties may not use email to serve process. *See Smart Study*, 620 F. Supp. 3d at 1397-99 (discussing Chinese law).

4705125_1

listed in the Hague Convention." *Smart Study*, 620 F. Supp. 3d at 1394. As the Supreme Court noted in *Water Splash*, reading the Convention to render some of its provisions "superfluous" is "structurally implausible." 581 U.S. at 278.

In short, "all of the means of service permitted by the convention require the receiving state's consent." Dodge & Gardner, *supra*, at 46. Reading the specified means to be non-exclusive undercuts the central role of state consent under the Convention.

### C. The negotiating history and views of other contracting states confirm that the Convention is exclusive.

"Three extratextual sources are especially helpful in ascertaining [the Convention's] meaning: the Convention's drafting history, the views of the Executive, and the views of other signatories." *Water Splash*, 581 U.S. at 280; *see also Schlunk*, 486 U.S. at 700 (drawing on "the history of the treaty, the negotiations, and the practical construction adopted by the parties" (quoting *Air France v. Saks*, 470 U.S. 392, 396 (1985))). All three sources support reading the Convention to prohibit any means of service to which the receiving state has not consented.

The authoritative account of the Convention's drafting history explains that "[t]he drafting group considered at length the questions whether the Convention should mandate that the means of service provided by the Convention constituted the exclusive means of service of judicial documents in the territories of the contracting states; whether

12

any exceptions to such a rule should be permitted, and if so, what types of exceptions should be permitted." 1 B. Ristau, International Judicial Assistance § 4–1–5, p. 160 (2000 rev. ed.); *see also Water Splash*, 581 U.S. at 281 (citing Ristau). During the negotiations, "certain revisions were made to make it clear that the Convention machinery must be employed in all cases where service of process abroad is sought." Ristau § 4–1–5, p. 161. "Based on this design of the Convention, the answer … is that the Convention machinery is obligatory, except in instances where the state where service is to be made permits other methods of service of foreign documents." *Id.* at 162. Ristau continues: "Where a contracting state formally objects to any manner of service of foreign documents in its territory other than under the Convention, the conventional route [through the Central Authority] becomes the exclusive method of service in that state." *Id.*

The positions of other contracting states confirm the exclusive character of the Convention. As the Supreme Court noted in *Water Splash*, "this Court has given 'considerable weight' to the views of other parties to a treaty." *Water Splash*, 581 U.S. at 283 (quoting *Abbott v. Abbott*, 560 U.S. 1, 16 (2010)). In 2003, a Special Commission with representatives from 57 countries met in The Hague to review the operation of the Convention. It adopted Conclusions and Recommendations, paragraph 73 of which "confirmed the prevailing view that the Convention was of a non-mandatory, but exclusive character." Hague

13

Conference on Private International Law, Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Apostille, Evidence and Service Conventions ¶ 73 (2003), https://assets.hcch.net/docs/0edbc4f7-675b-4b7b-8e1c-2c1998655a3e.pdf. By "exclusive," the Special Commission meant that "one of the methods of transmission under the Convention must be used." *See* Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on the Operation of the 1965 Service Convention 32 (2025) [Practical Handbook] (defining "exclusive character").[4]

In 2009, another Special Commission met in The Hague with representatives from 64 countries. It adopted Conclusions and Recommen-

---

[4] By "non-mandatory," the Special Commission meant that "the law of the State of origin" determines "whether or not the document has to be transmitted for service abroad." *See* Practical Handbook 35 (defining "non-mandatory character"). The U.S. Supreme Court has similarly held that "the internal law of the forum state" determines whether there is occasion to transmit a document for service abroad. *Schlunk*, 486 U.S. at 700. The Court in *Schlunk* also stated that the Convention is "mandatory" in a different sense—specifically, that the Convention is binding on courts in the United States and preempts inconsistent means of service. *See id.* at 699 (noting that the Convention's "language is mandatory" and that it "pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies"). There is no inconsistency between the Special Commission's statement and the holding in *Schlunk*.

4705125_1

dations in which it again "confirm[ed] the view that the Service Convention is of a non-mandatory but exclusive character." Hague Conference on Private International Law, Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Service, Taking of Evidence and Access to Justice Conventions ¶ 12 (2009), https://assets.hcch.net/docs/5bf65314-4f55-42b5-9b0c-770f2bfccd37.pdf.

In 2024, another Special Commission met in The Hague with representatives from 57 countries. It adopted Conclusions and Recommendations in which it again "confirmed the view that the Service Convention is of a non-mandatory but exclusive character." 2024 C&R ¶ 66. Thus, three Special Commissions have concluded that the Convention is "exclusive." In *Water Splash*, the Supreme Court relied on the conclusions of Special Commissions as reflecting the views of parties to the Convention. *Water Splash*, 581 U.S. at 283 & n.8.

Citing the 2024 Conclusions and Recommendations, as well as other authorities, the Practical Handbook issued by the Permanent Bureau of the Hague Conference on Private International Law states that "[t]he exclusive character of the Convention has been broadly acknowledged by case law, and by scholars, as well as by the Special Commission." Practical Handbook 90; *see also* Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on the

Operation of the Service Convention ¶ 51 (2016) ("The exclusive character of the Convention was never really disputed."). As noted above, "exclusive character" means that "one of the methods of transmission under the Convention must be used." Practical Handbook 32.

The United States shares this view of the Convention's exclusive nature. The Department of Justice's Office of International Judicial Assistance explains that "[i]f the Convention applies, parties cannot agree or stipulate to a method of service that the Convention neither authorizes nor permits and a party in the U.S. should not utilize a method of service … to which the state of destination has objected." Office of International Judicial Assistance Guidance on Service Abroad in U.S. Litigation, https://www.justice.gov/civil/page/file/1064896/download, at 4-5 (last updated Oct. 1, 2018); *see also Water Splash*, 581 U.S. at 282 n.5 (considering position taken by State Department on its website).

In short, as in *Water Splash*, "the traditional tools of treaty interpretation unmistakably demonstrate" that the Hague Service Convention is exclusive and that only means of service affirmatively permitted by the Convention may be ordered. 581 U.S. at 284.

## II. Service by email is permissible as service through "postal channels" only if the receiving state has not objected.

One of the permissible means of service under the Hague Service Convention is through "postal channels." Article 10(a) states: "Provided the State of destination does not object, the present Convention

16

shall not interfere with … (a) the freedom to send judicial documents, by postal channels, directly to persons abroad." Although Article 10(a) uses the word "send," the Supreme Court held in *Water Splash* that "Article 10(a) encompasses service." 581 U.S. at 284.

In 2024, the Special Commission "noted that Article 10(a) includes transmission and service by e-mail, insofar as such method is provided by the law of the State of origin and permitted under the law of the State of destination." 2024 C&R ¶ 105; *see also* Practical Handbook 181 (noting the position of the 2024 Special Commission). The U.S. government similarly considers email to be a "postal channel" under Article 10(a). *See* United States, Questionnaire Relating to the Service Convention ¶ 23.3, https://assets.hcch.net/docs/e40165e3-4301-41fe-8d70-3d34a3e251ed.pdf (listing "E-mail" as one of the "categories [that the United States] recognize[s] as a 'postal channel' under Article 10(a)"). The Supreme Court "gives 'great weight' to 'the Executive Branch's interpretation of a treaty.'" *Water Splash*, 581 U.S. at 281 (quoting *Abbott*, 560 U.S. at 15).[5]

---

[5] Without analysis, the district court chose to follow other district court decisions holding that email is not a postal channel. Short App. 4-5. Those other decisions, however, did not consider (and mostly predated) the views of the 2024 Special Commission and the U.S. executive branch.

4705125_1

This Court does not need to decide in this case whether "postal channels" includes email because, regardless, China has objected to service by postal channels under Article 10(a). China—Declarations and Notifications, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn; *see also Lahr*, 2024 WL 3518309, at *5 n.17 (Third Circuit finding it unnecessary to address whether email is included within "postal channels" because Switzerland had objected to their use). Further, in its own application of the Convention, China treats objections to "postal channels" as objections to email service.[6] Taken together with the Special Commission's recent clarification and the position of the U.S. executive branch, China's objection to Article 10(a) could even be interpreted as an express prohibition on email service in China.

---

[6] *See* Supreme People's Court, Minutes of the National Symposium on the Foreign-Related Commercial and Maritime Trial Work of Courts art. 11 (2021), https://lawinfochina.com/display.aspx?id=39125&lib=law ("If the country of the person to be served is a state party to the Hague Service Convention and declares its opposition to service by mail under the Convention, it shall be presumed to disallow electronic service, and the people's court may not conduct electronic service.").

### III. The clear language of Rule 4(f) requires service in compliance with the Convention.

Rule 4(f) is drafted to operate consistently with the Hague Service Convention. When the Convention applies, methods of service not permitted under the Convention are not permitted under Rule 4(f).

Rule 4(f) sets forth permissible methods of service for an individual "at a place not within any judicial district of the United States." Rule 4(h)(2) incorporates Rule 4(f) (with one exception not relevant here) for service on a business "at a place not within any judicial district of the United States." Rule 4(f) identifies three options for such international service. These three options are non-hierarchical, which means that (f)(1) and (f)(2) need not be attempted before a court orders service under (f)(3). *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2).").

Rule 4(f)(1) authorizes service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Service through the receiving country's Central Authority is certainly authorized by the Convention. But it is an "unsettled question" whether the other means specified in the Convention are authorized or merely permitted. Dodge & Gardner,

*supra*, 48-49. This Court need not resolve that question, however, because none of the other means permitted under the Convention are available in light of China's objections under the Convention, including service by email as a "postal channel." *See* Part I.A.

Rule 4(f)(2) applies only "if there is no internationally agreed means, or if an international agreement allows but does not specify other means."[7] Because the Hague Service Convention is exclusive, *see* Part I, it does not allow "other means." Therefore, when the Convention applies, the options listed under Rule 4(f)(2) are not available.

Rule 4(f)(3) authorizes "other means not prohibited by international agreement, as the court orders." As shown above, the Convention is exclusive and thus prohibits service through any means that it does not expressly permit. Service through "postal channels" is expressly permitted, and as discussed in Part II, email may be considered a postal channel. Thus, when a receiving state has not objected to the use of postal channels, service by email may be possible under Rule 4(f)(3). But when a state that is a party to the Convention has objected to the

---

[7] An example of an "international agreement [that] allows but does not specify other means" is the Inter-American Convention on Letters Rogatory, Jan. 30, 1975, S. Treaty Doc. No. 98-27 (1984), 1438 U.N.T.S. 287, to which the United States (but not China) is a state party.

use of postal channels, as China has done, service by email is "prohibited by international agreement" and therefore is not permitted under Rule 4(f)(3).

### IV. The Convention prohibits default judgments unless service by one of its specified methods has been attempted.

Article 15 of the Convention addresses default judgments. Its first paragraph allows the entry of a default judgment only if process was served by a means proscribed by the internal law of the receiving state or "was actually delivered to the defendant or to his residence *by another method provided for by this Convention*." Convention art. 15 (emphasis added). The district court concluded that this provision was satisfied because "the Convention does not prohibit email service and the listed methods of service permitted in the Convention are not exclusive." Short App. 6.[8] Because the district court's premise that the Convention's methods of service are not exclusive is wrong, *see* Part I, its conclusion that Article 15 was satisfied is wrong as well. The Convention "provide[s] for" email service only as a postal channel, and China has objected to service by postal channels under Article 10.

---

[8] The district court's logic conflicts with the plain language of Article 15, which calls for service not by a method "not prohibit[ted]" by the Convention, Short App. 6, but by a method *provided for* by the Convention, Convention art. 15 (emphasis added). Even if the Convention were not exclusive, that language in Article 15 would still require service by a method affirmatively sanctioned by the Convention.

Article 15's second paragraph allows contracting states to declare that, notwithstanding paragraph one, their courts may enter a default judgment, "even if no certificate of service or delivery has been received, if all the following conditions are fulfilled": (a) "*the document was transmitted by one of the methods provided for in this Convention*"; (b) at least six months have elapsed; and (c) "no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed" (emphasis added). The United States has made a declaration under paragraph two. *See* United States—Declaration, Reservation, Notification, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=428&disp=resdn ("[I]t is declared that the judge may, notwithstanding the provisions of the first paragraph of Article 15, give judgment even if no certificate of service or delivery has been received, *if all the conditions specified in subdivisions (a), (b) and (c)* of the second paragraph of Article 15 are fulfilled." (emphasis added)). The plaintiff did not attempt to transmit service by "one of the methods provided for" in the Convention, such as service through China's Central Authority. Even if Article 10(a) is understood to "provide[] for" email service, China has objected to that Article.

That leaves the final sentence of Article 15: "Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of

urgency, any provisional or protective measures."[9]  By its terms, this sentence is limited to "provisional or protective measures." A default judgment is not a "provisional or protective measure." In sum, Article 15 does not create exceptions to the Convention's service requirements or authorize additional methods of service before the entry of a final judgment.

## V.    Email service on a defendant outside the United States may still be permissible in some circumstances.

"[C]ompliance with the Convention is mandatory in all cases to which it applies." *Schlunk*, 486 U.S. at 705. When the Convention does not apply, however, Rule 4(f) allows federal courts greater flexibility regarding service of process. Rule 4(f)(2) authorizes certain other

---

[9] Citing this language, the 1993 Advisory Committee Note for Rule 4 states that the Convention "authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances." 146 F.R.D. 401, 569 (1993). Some courts have mistakenly relied on the Advisory Committee Note to approve service by email before entry of final judgment in cases of "urgency." *See, e.g.*, *D Squared Plant Traps LLC v. Guangdong Bixing Trading Co.*, No. 23-CV-1907, 2024 WL 503628, at *3 & n.3 (W.D. Pa. Feb. 8, 2024). To the extent the Advisory Committee Note can be read as condoning "special forms of service" beyond the context of preliminary measures, that reading conflicts with the clear language of Article 15 and thus with the clear language of Rule 4(f)(3). As the district court observed in *Peanuts Worldwide*, the Advisory Committee's "comments cannot trump the text of the Rule." 347 F.R.D. at 329.

means of service "when there is no internationally agreed means," although such means must not violate foreign law. Rule 4(f)(3) allows the court to order still other means of service so long as they are "not prohibited by international agreement," which they would not be if the Convention does not apply. A district court has "discretion under Rule 4(f)(3) to authorize service even if the alternative means would contravene foreign law." *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 84 (D.C. Cir. 2014); *see also Rio Props.*, 284 F.3d at 1014 (noting that "as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country").

Most obviously, the Convention does not apply when the state in which the defendant is located is not a contracting party. More than half the countries in the world do not belong to the Convention.

By its terms, the Convention also "shall not apply where the address of the person to be served with the document is not known." Convention art. 1. District courts have required a plaintiff to use "reasonable diligence" to determine a defendant's physical address. *Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns Identified on Sched. "A"*, 347 F.R.D. 316, 327-28 (N.D. Ill. 2024)[8]; *see also Smart Study Co., Ltd. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1390-91 (S.D.N.Y. 2022); *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified*

*in Sched. "A"*, 549 F. Supp. 3d 790, 795-96 (N.D. Ill. 2021), *aff'd sub nom. NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022); *Luxottica Group S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Sched. "A"*, 391 F. Supp. 3d 816, 822-24 (N.D. Ill. 2019). The Convention itself does not explain the degree of diligence required, and therefore U.S. courts are free to adopt any reasonable, good faith interpretation of this provision.

Amici take no position on the level of diligence in determining defendants' physical addresses that should be expected of plaintiffs. But Amici emphasize that requests to authorize service by email are often made ex parte, which means that it rests entirely with the district judge to ensure that the address of the person to be served is in fact unknown. If district courts simply rubber stamp the plaintiff's cursory assertions that addresses are unknown, plaintiffs can easily evade the mandatory nature of the Convention.

The Convention also does not apply when service may be made within the United States. *Schlunk*, 486 U.S. at 707.[10] Thus, for example, the parties to a transnational contract may avoid the requirements of the Hague Service Convention by appointing agents for service of process in each of the parties' countries so that service can be made without transmitting documents abroad. *See* John F. Coyle, Robin Effron &

---

[10] When service occurs within the United States, it is governed by Rule 4(e) rather than Rule 4(f).

Maggie Gardner, *Contracting Around the Hague Service Convention*, 53 U.C. Davis Law Review Online 53 (2019). Or, as in *Schlunk,* U.S. state law may allow service on the foreign parent company by service on a U.S. subsidiary. 486 U.S. at 706-07 (noting that Illinois law permits substituted service on a subsidiary); *see also* William S. Dodge, *Substituted Service and the Hague Service Convention*, 63 William & Mary L. Rev. 1485 (2022) (discussing the laws of Illinois and other U.S. states).

In sum, the Hague Service Convention does not prevent email service in all cases. Service by email may be permissible when the Convention does not apply. Service by email may also be permissible as service through "postal channels" under Article 10(a) of the Convention, provided that the receiving state has not objected to such service. China, however, has objected to service through "postal channels." Because of this objection, and because the methods of service specified in the Convention are exclusive, a district court may not order service by email on defendants located in China with known addresses.

4705125_1

## CONCLUSION

For the reasons above, this Court should reverse the district court's decision and remand for further proceedings.

Respectfully submitted,

RUBIN AND RUDMAN, LLP

*/s/ Theodore J. Folkman*

Theodore J. Folkman
53 State Street
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com

4705125_1

# CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 5,937 words (as determined using the "word count" feature of Microsoft Word 2016).

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Supra.

RUBIN AND RUDMAN, LLP

*/s/ Theodore J. Folkman*

Theodore J. Folkman
53 State Street
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com

4705125_1