No. 25-2205

---

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

## KANGOL LLC,

*Appellee-Plaintiff,*

v.

## HANGZHOU CHUANYUE SILK IMPORT & EXPORT CO., LTD.,

*Defendant-Appellant.*

---

Appeal from the United States District Court
For the Northern District of Illinois, Eastern Division
District Judge Sharon Johnson Coleman
No. 1:24-cv-01636

---

## RESPONSE BRIEF OF PLAINTIFF-APPELLEE KANGOL LLC

---

Todd R. Tucker
   *Counsel of Record*
Yizhou Liu
Nicholas Zalany
Xu Jin

Calfee, Halter & Griswold LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
ttucker@calfee.com
bliu@calfee.com
nzalany@calfee.com
ejin@calfee.com
(216) 622-8200 (Telephone)
(216) 241-0816 (Facsimile)

*Attorneys for Plaintiff-Appellee*

## ORAL ARGUMENT REQUESTED

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2205

Short Caption: Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd.

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Kangol LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Calfee, Halter & Griswold LLP

(3)    If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and

   Bollman Hat Company

   ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

   N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

---

Attorney's Signature: /s/Todd R. Tucker                    Date: 12/22/2025

Attorney's Printed Name: Todd R. Tucker

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [✔]   **No** [ ]

Address:  Calfee, Halter & Griswold LLP, The Calfee Building, 1405 East Sixth Street, Cleveland, OH 44114

Phone Number: 216-622-8231                    Fax Number: 216-241-0816

E-Mail Address: ttucker@calfee.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>25-2205</u>

Short Caption: <u>Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Kangol LLC</u>

_____

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Calfee, Halter & Griswold LLP</u>

_____

(3)      If the party, amicus or intervenor is a corporation:

    i)        Identify all its parent corporations, if any; and

        <u>Bollman Hat Company</u>

    ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

        <u>N/A</u>

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

        <u>N/A</u>

---

Attorney's Signature: <u>/s/Yizhou Liu</u>      Date: <u>12/22/2025</u>

Attorney's Printed Name: <u>Yizhou Liu</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: <u>Calfee, Halter & Griswold LLP, The Calfee Building, 1405 East Sixth Street, Cleveland, OH 44114</u>

_____

Phone Number: <u>216-622-8432</u>      Fax Number: <u>216-241-0816</u>

E-Mail Address: <u>bliu@calfee.com</u>

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2205

Short Caption: Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Kangol LLC

_____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Calfee, Halter & Griswold LLP

_____

(3)   If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

        Bollman Hat Company

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/Nicholas P. Zalany     Date: 12/22/2025

Attorney's Printed Name: Nicholas P. Zalany

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: Calfee, Halter & Griswold LLP, The Calfee Building, 1405 East Sixth Street, Cleveland, OH 44114

Phone Number: 216-622-8546     Fax Number: 216-241-0816

E-Mail Address: nzalany@calfee.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2205

Short Caption: Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  Kangol LLC

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  Calfee, Halter & Griswold LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

      Bollman Hat Company

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: /s/Xu Jin    Date: 12/22/2025

Attorney's Printed Name: Xu Jin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: Calfee, Halter & Griswold LLP, The Calfee Building, 1405 East Sixth Street, Cleveland, OH 44114

Phone Number: 216-622-8688    Fax Number: 216-241-0816

E-Mail Address: ejin@calfee.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

GLOSSARY ......................................................................................................... viii

JURISDICTIONAL STATEMENT .......................................................................... 1

STATEMENT OF THE ISSUES .............................................................................. 2

STATEMENT OF THE CASE ................................................................................. 3

   A.    The Parties ............................................................................................... 3

   B.    The District Court Proceedings ............................................................. 5

SUMMARY OF ARGUMENT ................................................................................. 9

STANDARD OF REVIEW .................................................................................... 11

INTRODUCTION ................................................................................................. 12

ARGUMENT ........................................................................................................ 14

   I.    Chuanyue Waived Any Objections as to Insufficient Service ......................... 14

   II.    The District Court Did Not Abuse Its Discretion in Denying Chuanyue's Motion to Vacate the Default Judgment Order Because Chuanyue Failed to Show Good Cause ........................................................................................ 16

   A.    Chuanyue Failed To Show That Service Was Improper ............................... 18

       1.    The Majority Circuit Court View Is that Service Under the Hague Convention Is Not Mandatory ......................................................................... 19

       2.    Service Was Proper Under Rule 4(f)(3) ........................................................ 24

       3.    The Hague Convention Does Not Prohibit Electronic Service, and China Has Not Objected to Service of Process by Email ................................................. 27

       4.    Service via Email Comports with Constitutional Notions of Due Process ......... 29

   B.    Alternatively, the Hague Convention Does Not Apply ................................ 31

       1.    Electronically Publishing Filings to a Website and Sending a Link to said Website via Email Does Not Implicate the Hague Convention ........................... 32

       2.    Chuanyue's Address Was Unknown ............................................................ 33

   C.    The District Court Did Not Abuse Its Discretion in Determining That Kangol Is Entitled to Default Judgment Notwithstanding Article 15 of the Hague Convention .......................................................................................... 37

       1.    Article 15 Does Not Apply Where Service Is Completed Under Rule 4(f)(3) ..... 38

i

2. Noncompliance with Article 15 Does Not Render Judgment
Void ............................................................................................... 39

III. The District Court Did Not Err in Declining to Modify the
Default Judgment Pursuant to Rule 69(a)(1) of the Federal Rules ........................... 40

A. Chuanyue Waived Its Argument Regarding Illinois Post-
Judgment Collection Rules ................................................................ 40

B. Kangol Did Not Violate Illinois Post-Judgment Collection
Procedures ......................................................................................... 41

IV. Restitution Should Not Be Granted .................................................... 43

CONCLUSION ................................................................................................ 44

# TABLE OF AUTHORITIES

**Cases**

*Ambrosia Land Invs. v. Peabody Coal Co.*, 521 F.3d 778 (7th Cir. 2008) ........... 12, 14

*AngioDynamics, Inc. v. Biolitec AG.*, 780 F.3d 420 (1st Cir. 2015)........................... 20

*Baker v. Lindgren*, 856 F.3d 498 (7th Cir. 2017) ...................................................... 14

*Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185 (7th Cir. 2011)............................... 41

*Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278 (5th
Cir. 1987) ........................................................................................... 9, 10, 15

*Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004) ...................................................... 11

*Bulgari, S.P.A. v. P'ships & Unincorporated Ass'ns Identified on
Schedule "A"*, No. 14-cv-4819, 2014 U.S. Dist. LEXIS 107218 (N.D.
Ill. July 18, 2014) ..................................................................................... 35

*Bulgari, S.P.A. v. Zou Xiaohong*, No. 15-cv-05148, 2015 U.S. Dist.
LEXIS 140606 (N.D. Ill. Oct. 15, 2015) .................................................... 42

*Chen v. P'ships, et al.*, 2025 U.S. Dist. LEXIS 3672 (N.D. Ill. Jan. 8,
2025) ............................................................................................................ 20

*Commercial Casualty Ins. Co. v. Consolidated Stone Co.*, 278 U.S. 177
(1929) ........................................................................................................... 16

*Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de
Chihuahua S.A.B. de C.V.*, 970 F.3d 1269 (10th Cir. 2020) ............................ 20, 27

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002)...................................... 44

*DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839
(N.D. Ill. 2021) ............................................................................................ 33

*Enovative Techs., LLC v. Leor*, 622 F. App'x 212 (4th Cir. 2015) ............................ 20

*Erdman v. City of Madison*, 91 F.4th 465 (7th Cir. 2024) ........................................ 12

*Fox Shiver LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, &
Unincorporated Ass'ns Identified on Schedule A to the Complaint*, 23-
CV-1989 (JPO), 2024 U.S. Dist. LEXIS 10861 (S.D.N.Y. Jan, 22,
2024) ............................................................................................................ 37

*Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries
OPEC*, 766 F.3d 74 (D.C. Cir. 2014)............................................................. 20, 27

*Girl Scouts of Manitou Counsil, Inc. v. Firl Scouts of the United States
of Am. Inc.*, 549 F.3d 1079 (7th Cir. 2008) ................................................. 31

*Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 LX 16351 (N.D. Ill. Apr. 1, 2021) ..................................................................................... 34

*Hangzhou Chic Intelligent Tech. Co. v. P'ships, et al.*, 2021 U.S. Dist. LEXIS 64064 (N.D. Ill. Apr. 1, 2021) ........................................ 26, 28, 30

*Henderson v. United States*, 517 U.S. 654 (1996).................................... 23, 40

*In re OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 2021-165, 2021 U.S. App. LEXIS 27282 (Fed. Cir. Sept. 10, 2021) ................................................ 24

*In re Whitney-Forbes, Inc.*, 770 F.2d 692 (7th Cir. 1985) ...................... 17, 40

*Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351 (7th Cir. 2022) ...................................................................... 12

*Int'l Controls Corp. v. Vesco*, 593 F.2d 166 (2d Cir. 1979) ........................ 20

*Isaac Indus., Inc. v. Petroquímica de Venezuela, S.A.*, 127 F.4th 289 (11th Cir. 2025) ...................................................................................... 38

*Jogi v. Voges*, 480 F.3d 822 (7th Cir. 2007) .............................................. 27

*Jones v. Jones*, 217 F.2d 239 (7th Cir. 1954) ............................................ 18

*Kelly Toys Holdigs, LLC v. Top Dep't Store*, No. 22-cv-558, 2022 U.S. Dist. LEXIS 154175 (S.D.N.Y. Aug. 26, 2022) ........................................ 36

*Kennedy v. Four Boys Labor Services, Inc.*, 664 N.E.2d 1088 (Ill. App. Ct. 1996) ............................................................................................... 42

*Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997) ................................. 22

*Luxottica Grp. S.p.A. v. P'ships, et al.*,2019 U.S. Dist. LEXIS 93466 (N.D. Ill. June 4, 2019)............................................................................ 24

*Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S. Dist. LEXIS 97241 (N.D. Ill. Dec. 1, 2008).................................................... 29

*Marcure v. Lynn*, 992 F.3d 625 (7th Cir. 2021) ......................................... 21

*MCM Holding AG, et al. v. Dequn Zhao, et al.*, No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018)........................................................................................ 34

*McPartlin v. Commissioner*, 653 F.2d 1185 (7th Cir. 1981)...................... 35

*Mestek, Inc. v. Shenzhen Mestek Elecs. Co., Ltd.*, 2025 U.S. Dist. LEXIS 207903 (D. Mass. Oct. 22, 2025) ............................................... 37

*Milwaukee Elec. Tool Corp. v. Individuals, et al.*, 2025 U.S. Dist. LEXIS 216016 (N.D. Ill. Nov. 3, 2025) .................................................. 20

*Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494 (5th Cir. 2018) ................. 20

*NBA Properties, Inc. v. P'ships, et al.*, 549 F. Supp. 3d 790 (N.D. Ill. 2021) ....................................................................................... 19, 23, 25, 27

*Neman Bros. & Assocs. v. P'ships, et al.*, 2024 U.S. Dist. LEXIS 223383 (N.D. Ill. Dec. 10, 2024) .................................................................... 20

*Noble v. United States*, 231 F.3d 352 (7th Cir. 2000) ................................................. 12

*Nuance Commc 'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222 (Fed. Cir. 2010) ................................................................................ 20, 21

*O'kane v. Apfel*, 224 F.3d 686 (7th Cir. 2000) ........................................................... 39

*Oakley Inc. v. Yantai Lanlei Network Technology Co., LTD., et al.*, No. 20-cv-00396, 2020 U.S. Dist. LEXIS 273527 (N.D. Ill. May 21, 2021) .................. 28

*O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394 (7th Cir. 1993) .................... 18

*Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 U.S. Dist. LEXIS 118878 (N.D. Ill. June 25, 2021) .................................................................... 30

*Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989) .................................... 21

*Peanuts Worldwide LLC v. P'ships, et al.*, 347 F.R.D. 316 (N.D. Ill. 2024) ................................................................................ passim

*Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851 (7th Cir. 2011) ............. 11, 14, 18

*Planet Corp. v. Sullivan*, 702 F.2d 123 (7th Cir. 1983) .............................................. 40

*Popparties LLC v. Defendants*, 2022 U.S. Dist. LEXIS 214729 (W.D. Wash., November 29, 2022) .......................................................... 35

*Pretzel & Stouffer v. Imperial Adjusters*, 28 F.3d 42 (7th Cir. 1994) ........................ 16

*Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424 (7th Cir. 2001) .............................. 31

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552 (9th Cir. 1992) ................................................................................ 44

*Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221 (7th Cir. 1993) .......................... 42

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ............... passim

*Roadget Bus. PTE. Ltd. v. Individuals*, No. 23 C 17036, 2024 U.S. Dist. LEXIS 77461 (N.D. Ill. Apr. 29, 2024) .......................................... 36

*Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492 (2020) .......................... 21

*San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co., Ltd.*, 53 F.4th 1136 (9th Cir. 2022) .................................................................... 32, 33

*Sanderford v. Prudential Ins. Co.*, 902 F.2d 897 (11th Cir. 1990) ............. 9, 15, 16, 40

*SEC v. Lahr*, No. 22-2497, 2024 U.S. App. LEXIS 18170 (3d Cir. July 24, 2024) ................................................................................ 23

*Segid v. United States Citizenship & Immigration Servs.*, 47 F.4th 545 (7th Cir. 2022) .................................................................... 41

*Shishko v. Whitley*, 64 N.C. App. 668 (1983) ........................................................... 43

*Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382 (S.D.N.Y. 2022) .................... 23

*Smart Study Co., Ltd. v. Shenzhenshi-xindajixieyouxiangongsi*, No. 24-313, 2025 U.S. App. LEXIS 33039 (2d Cir. Dec. 18, 2025) .................... 22, 24, 26, 28

*Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) ................................... 11, 19, 22, 25

*Sueros & Rehidratantes S.A. de C.V. v. Candies*, No. 2:23-cv-08282-DSF-BFMx, 2025 LEXIS 232571 (C.D. Cal. Apr. 17, 2025) ................................. 43

*The Neck Hammock, Inc. v. Danezen.com*, No. 2:20-CV-287-DAK-DBP, 2020 U.S. Dist. LEXIS 202808 (D. Utah Oct. 29, 2020) ........................................ 28

*Thornton v. Brown*, 47 F.3d 194 (7th Cir. 1995) ........................................................ 35

*Tory Burch LLC v. P'ships,* No. 13 C 2059, 2013 U.S. Dist. LEXIS 43173 (N.D. Ill. Mar. 27, 2013) ..................................................................... 43

*Trask v. Rodriguez*, 854 F.3d 941 (7th Cir. 2017) ....................................................... 34

*Trs. of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731 (7th Cir. 1991) ............................................................................................ 9, 14, 15

*United States v. $242,484.00 in United States Currency*, 389 F.3d 1149 (11th Cir. 2004) ............................................................................................ 35

*United States v. Clark*, 538 F.3d 803 (7th Cir. 2008) ................................................. 22

*United States v. Torres-Chaves*, 744 F.3d 988 (7th Cir. 2014) ................................. 11

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) ..................... 17, 40

*Viahart, L.L.C. v. He Gangpeng*, No. 21-40166, 2022 U.S. App. LEXIS 3974 (5th Cir. Feb. 14, 2022) ......................................................................... 20

*Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 2020 U.S. Dist. LEXIS 82150 (S.D. Cal. May 8, 2020) ..................................................................... 25, 28

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ..... 22, 23, 32, 33

*Walton v. Arizona*, 497 U.S. 639 (1990) .................................................................. 34

*Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017) ............................................... 22

*Yates v. United States*, 574 U.S. 528 (2015) ............................................................. 33

## Statutes

15 U.S.C. §1114 ........................................................................................................ 5

15 U.S.C. §1125(a) ................................................................................................... 5

15 U.S.C. §1125(c) ................................................................................................... 5

## Other Authorities

735 ILCS 5/2-1402 ................................................................................................. 42

Charles Alan Wright, et al., Federal Practice & Procedure § 1134 (4th ed.) ....................................................................................................21

Hague Convention ........................................................................................2

Hague Convention Article 15 .......................................................................2

Ill. Sup. Ct., R 277 .....................................................................................42

**Rules**

Fed. R. Evid. 1001(d) ...............................................................................33

Federal Rules of Civil Procedure 34..........................................................32

Federal Rules of Civil Procedure 4............................................................44

Federal Rules of Civil Procedure 4(f) ........................................... 2, 10, 19, 20

Federal Rules of Civil Procedure 4(f)(1)-(3) .............................................19

Federal Rules of Civil Procedure 4(f)(3).............................................. passim

Federal Rules of Civil Procedure 4(h) .......................................................19

Federal Rules of Civil Procedure 55.....................................................10, 45

Federal Rules of Civil Procedure 60(b)(4)...........................................11, 22, 39

Federal Rules of Civil Procedure Rule 69(a)(1) .........................................2, 8

Federal Rules of Civil Procedures 4(h)(2) ................................................19

# GLOSSARY

| Short Form | Description |
|---|---|
| SA | Appendix of Defendant-Appellant Hangzhou Chuanyue Silk Import & Export Co. Ltd. |
| KSA | Kangol's Supplemental Appendix |
| R. | Record Number in the District Court (PACER) |
| Dkt. | Appellate Court Docket |
| Br. | Chuanyue's Opening Brief |
| Motion to Vacate | Chuanyue's Motion To Vacate Judgement In Whole Or In Part Pursuant To Rule 60(b)(4) Or In The Alternative, For Failure To Comply With Rule 69(A)(1) And For Other Relief (R. 60) |

# JURISDICTIONAL STATEMENT

Plaintiff-Appellee Kangol LLC ("Kangol" or "Appellee" or "Plaintiff") is without knowledge of the principal place of business of Defendant-Appellant Hangzhou Chuanyue Silk Import & Export Co., LTD. ("Chuanyue" or "Appellant" or "Defendant"). Chuanyue's Jurisdictional Statement is otherwise complete and correct.

## STATEMENT OF THE ISSUES

1) Whether Chuanyue waived objections as to sufficiency of service by failing to raise the objection until after default judgment despite participating in the case and acknowledging notice of the case;

2) Whether the District Court abused its discretion in denying Chuanyue's Motion to Vacate, including:

   a. Whether service by email was proper under Federal Rules of Civil Procedure 4(f);

   b. Whether the Hague Convention applies in this case where Chuanyue's address is unknown;

   c. Even if Chuanyue's address was known, whether email service was permissible; and

   d. Whether the District Court abused its discretion in determining that Kangol was entitled to default judgment notwithstanding Article 15 of the Hague Convention.

3) Whether the District Court erred in declining to modify the default judgment pursuant to Rule 69(a)(1) of the Federal Rules of Civil Procedure.

4) Whether Chuanyue is entitled to restitution in the event that the Court remands the District Court's denial of Chuanyue's Motion to Vacate.

**STATEMENT OF THE CASE**

**A.    The Parties.**

Plaintiff-Appellee Kangol has been selling high-quality hats under the well-known "Kangol" brand since 1938. *See* Declaration of Sean McCabe ("McCabe Decl."), at ¶¶ 3-4, R. 6, KSA 022-023. Through hard work and substantial investment in its brand, Kangol developed a large trademark portfolio including U.S. Trademark Registration Nos. 535,357; 1,011,576; 1,490,292; 3,017,272; 4,153,667; 4,384,997; 2,235,981; 2,278,532; and 3,787,973 (the "Kangol Marks"), which are depicted below. *See* Exhibit 1 to McCabe Decl., R. 6, KSA023-024, KSA029-043.

| Registration Number | Trademark |
|---|---|
| 535,357; 1,011,576; 1,490,292; 3,017,272; 4,153,667; 4,384,997 | KANGOL (standard character word mark) |
| 1,372,671; 4,204,801; 4,384,996 | |
| 2,235,981; 2,278,532 | |
| 3,787,973 | |

Kangol has expended substantial time, money, and resources building goodwill in the Kangol Marks through marketing, advertising, and promoting its apparel sold under the Kangol Marks. *See generally* McCabe Decl., R. 6, KSA022-028. The Kangol

Marks have achieved widespread recognition and fame by the general consuming public of the United States. *Id.* For decades, Kangol Marks and Kangol's products have been a mainstay in United States popular culture, having been popularized by celebrities such as LL Cool J, Wesley Snipes, and Samuel L. Jackson:



R.1 at 7-8, KSA010. Kangol's *reputation* for making and selling high-quality apparel has also led to frequent counterfeiting of the Kangol Marks. This frequent counterfeiting by what can be called "shadowy" companies prompted Kangol to investigate various online sales platforms. Kangol's investigation revealed a myriad of counterfeiters selling fake Kangol product. Among these counterfeiters is Defendant-Appellant Chuanyue who copied and used without authorization some of the Kangol Marks in connection with the sale and/or offer for sale of apparel, including headwear:



KSA046.

## B.     The District Court Proceedings.

Upon learning of the counterfeiting activities by Chuanyue and other foreign counterfeiters on the Alibaba platform, Kangol filed on February 27, 2024, the District Court Action asserting trademark infringement and counterfeiting under 15 U.S.C. §1114, False Designation of Origin under 15 U.S.C. §1125(a), and Trademark Dilution under 15 U.S.C. §1125(c).  *See* R. 1, KSA003.  Given the risk of irreparable harm and the likelihood that these counterfeiters would move assets that could satisfy an eventual judgment, Kangol moved for a Temporary Restraining Order ("TRO") on February 27, 2024.  *See* R. 10, KSA050.  Finding that immediate and irreparable harm existed, the District Court granted the TRO on March 26, 2024. SA014.

Recognizing that these overseas counterfeiters including Chuanyue operate exclusively via online platforms such as Alibaba with their physical addresses not determinable by reasonable diligence, Kangol moved for alternative service.  *See* R.

12, KSA067 ("[C]ounterfeiters routinely use false or inaccurate names and addresses when registering with e-commerce platforms" and "[w]hen brand owners pursue counterfeiters in enforcement actions, they discover that names and addresses are fictional, and the counterfeiters then disappear into the vast expanse of cyberspace."); R. 11 at 15, KSA067 ("Service of process by email is warranted in this case because (1) it is very difficult to know the true identities and locations of the Defendants given that the Defendants are primarily Chinese entities that sell counterfeit goods on online sales platforms and typically do not disclose reliable information about their identities and locations in connection with their online storefronts and (2) email service will be reliable given that the Defendants rely on email to operate their online businesses."). The District Court granted Kangol's motion for alternative service by email. SA019-020.

On April 18, 2024, in accordance with the District Court's Order, Kangol served Chuanyue the Complaint and other case filings by an email provided by Alibaba pursuant to Paragraph 7 of the TRO. SA019; R. 41 at 2, KSA129-131. That ***same day***, Chuanyue*, represented *by its **first** counsel*, acknowledged the existence of the District Court proceedings by sending an email to Kangol's counsel offering to discuss potential resolution. R. 63-1 at 5, KSA202. In these discussions, Chuanyue's first counsel said absolutely nothing about insufficient service. Thus, no later than April 18, 2024, Chuanyue had notice of the case and was represented by counsel.

On May 14, 2024, a ***second counsel*** stepped in to represent Chuanyue starting a series of "revolving counsel"—all of whom acknowledged the lawsuit and that

Chuanyue had been sued. R. 63-1 at 7, KSA204. For instance, Chuanyue's second counsel on May 14, 2024 acknowledged the District Court proceeding by reciting the case number and copying all counsels of record for Kangol, but inexplicably decided to ignore Chuanye's failure to answer the complaint or challenge the sufficiency of email service. Thus, Chuanyue made the strategic decision to not answer the complaint or challenge service—the exact moment where action on these fronts was required. Due to Chuanyue's decision to ignore the complaint, Kangol moved for default judgment.

On May 22, 2024, the District Court granted Kangol's Motion for Default Judgment, entered the Final Judgment Order, and rendered a statutory judgment of $50,000 against each defaulting defendant, including Chuanyue. SA011. Kangol served the default judgment papers in the same manner it served the pleadings. KSA144. Once again, Chuanyue did nothing. It did not move to vacate the default and more importantly, still remained completely silent about any potential service "argument."

On November 22, 2024, a ***third counsel*** for Chuanyue reached out to Kangol's counsel to attempt to settle. R. 63-1 at 9, KSA206. Exactly like Chuanyue's first and second counsel, its third counsel made no attempt to lift the default, let alone present any argument to the District Court that service was insufficient.

And, on December 31, 2024, a ***fourth counsel*** stepped in attempting to negotiate with Kangol's counsel. Like all previous counsel, fourth counsel did nothing

to vacate the default and exactly like all previous counsel was completely silent on service.  R. 63-1 at 11, KSA208.

Finally, Chuanyue, through its ***fifth counsel and after 10 months of actual knowledge of the case***, moved to vacate the default judgment on February 25, 2025, representing the first time Chuanyue challenged the sufficiency of service.  R. 60, KSA168.  Notably, Chuanyue filed the Motion to Vacate only after Kangol successfully collected the default judgment amount against Chuanyue.  R. 63, KSA186.  Simply put, only when faced with real world consequences for its counterfeiting did Chuanyue show any interest in participating in the District Court case—standard operating procedure for overseas counterfeiters.

In denying the Motion to Vacate, the District Court ruled that Chuanyue "received timely notice of the lawsuit based on the frequent communications with the parties during the pendency of the matter."  SA006.  Additionally, on top of setting forth the lack of any evidence demonstrating an actual address at which service could have been made, it found that  regardless of whether the address was known, service was proper under Rule 4(f)(3) because "no hierarchy exists in attempting service under Rule 4(f)(1)" and that "service via email is not prohibited by Article 10(a) [of the Hague Convention]."  SA004-005.  The District Court further held that the "default judgment did not contravene Article 15 of the Convention" SA006. Finally, the District Court ruled that Chuanyue waived any argument under Federal Rule 69(a)(1) with regard to its contention that Kangol violated Illinois post judgment collection procedures.  SA007.  Indeed, the District Court noted, "[n]or does Defendant

make any attempt to argue which Illinois post judgment proceedings Plaintiff violated and how Plaintiff failed to comply with these procedures." *Id.*

## SUMMARY OF ARGUMENT

Chuanyue's only asserted ground for setting aside the default judgment order was a baseless and well out of time "claim" of insufficient service. For months, Chuanyue never brought up sufficiency of service and only raised this "defense" after ignoring Kangols' motion for default and the Court's subsequent order granting default. On Chuanyue's Motion to Vacate, the District Court rejected the defense and it should be similarly rejected here.

Without issue, Chuanyue waived any objections as to insufficient service—it clearly missed every opportunity to raise this defense through its multitude of counsel. Chuanyue was represented by four different attorneys over the course of months and blatantly ignored its answer deadline and the motion for default judgment. (And a fifth attorney appeared for purposes of the Motion to Vacate and this appeal.) Indeed, Chuanyue "received timely notice of the lawsuit based on the frequent communications with the parties during the pendency of the matter." SA006. It only filed a motion to vacate some **10 months** after service of the Complaint and only **after** the judgment was collected. This Court and other Circuit Courts have found waiver in situations where a party participates to some degree in a case but fails to timely raise a defense of insufficiency of service of process. *See Trs. Of Cent. Laborers Fund, infra; Broadcast Music, Inc., infra; Sanderford, infra.* As aptly put in *Broadcast Music,* a party cannot "pull failure of service out of the hat like a rabbit in order to

9

escape default judgment." 811 F.2d at 281. This is exactly what Chuanyue asks, and it should be summarily rejected.

The first four attorneys Chuanyue retained attempted solely to negotiate a settlement despite being well-aware of the case and dates to answer pleadings, meaning that Chuanyue made a conscious decision not to have its attorneys challenge service. This falls woefully short of the good cause needed to obtain relief from a default judgment, particularly as Chuanyue had no meritorious defenses.

Moreover, the District Court did not abuse its discretion in ordering service by email. The overwhelming majority of courts in this Circuit and several other Circuit Courts have held that Federal Rule 4(f) does not suggest any order of preference amongst service options. In other words, a district court can decide to order service by email without first exhausting other means of service. Contrary to Chuanyue's arguments, the Hague Convention does not displace or abrogate Rule 4(f)(3). In addition, the Hague Convention does not apply in this case because there is nothing in the record evidencing that Chuanyue's address was known.

Also, nothing in the Hague Convention prohibited the District Court from entering a default judgment. Chuanyue's arguments are based on inapplicable provisions of the Hague Convention, and, if accepted, would effectively hinder a district court's ability to use the mechanism of Federal Rule 55 to resolve cases where a defendant fails to timely answer.

Chuanyue's final two arguments are equally baseless and can be ignored outright. Chuanyue waived its argument regarding Illinois post-judgment collection

10

rules, and, even if the Court decides to consider them, the Illinois laws Chuanyue cites do not prohibit a party from enforcing its judgment in the way that Kangol did. Lastly, even if the Court were to remand, restitution should not be granted. Should the action return to pre-judgment status, the previously-entered preliminary injunction would remain in effect absent a contrary ruling from the district court. As that order prohibits Chuanyue from transferring or disposing any funds held by third party providers such as Amazon, there would be no basis to return the funds that Kangol collected from Amazon.

For the reasons further discussed below, this Court should affirm the rulings of the District Court.

**STANDARD OF REVIEW**

The denial of a motion for relief under Rule 60(b)(4) is reviewed for abuse of discretion. *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 854 (7th Cir. 2011). Likewise "[t]he decision whether to allow alternate methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (citing *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004)). "An abuse of discretion occurs when a district court resolves a matter in a way that no reasonable jurist would, or when its decision strikes us as fundamentally wrong, arbitrary or fanciful." *United States v. Torres-Chaves*, 744 F.3d 988, 992 (7th Cir. 2014) (citations omitted). Nothing was wrong, arbitrary or fanciful here. Chuanyue obviously had notice of the proceedings, including the default motion, and chose not to participate.

11

Additionally, a district court's findings of fact are reviewed under a clearly erroneous standard. *See Erdman v. City of Madison*, 91 F.4th 465, 470 (7th Cir. 2024) ("we review . . . factual findings for clear error."). A finding is only clearly erroneous "if the trial judge's interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence." *Noble v. United States*, 231 F.3d 352, 356 (7th Cir. 2000) (citations omitted).

Finally, a district court's interpretations of legal issues, including treaties, are reviewed *de novo. See, e.g., Ambrosia Land Invs. v. Peabody Coal Co.,* 521 F.3d 778, 786 (7th Cir. 2008)("Our *de novo* review is limited to legal issues and conclusions."); *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 362 (7th Cir. 2022) ("We review the district court's interpretation of the [United Nations Convention Against Corruption] de novo.") (citations omitted).

## INTRODUCTION

Chuanyue appeals the repercussions of its calculated decision to ignore all District Court deadlines despite clear knowledge. Chuanyue received timely notice of the lawsuit and even retained four different attorneys to represent it in settlement negotiations, all while willfully ignoring multiple Court deadlines and Kangol's motion for default judgment. Chuanyue only first argued that it was not properly served ***after*** the judgment was collected on. Chuanyue's late-presented defense is not prompted by a genuine lack of notice, but rather an attempt to undo the consequences of its own failed gamble. Undoubtedly, Chuanyue was served and its actions demonstrate clear notice of the proceedings including the default motion. But

Chuanyue did nothing until well after the District Court entered default. Simply put, Chuanyue tried to game the system and only participated once it faced real world consequences.

The District Court appropriately denied the Motion to Vacate and this Court should affirm that denial. Holding otherwise would deprive district courts of their essential role of exercising discretion under the unique circumstances of each case to prevent foreign defendants from evading or unnecessarily delaying the litigation process and providing plaintiffs a mechanism to reasonably enforce U.S. trademark rights.

Chuanyue, through its conscious failure to raise sufficiency of service until ***ten months*** after default judgment was entered, has waived any arguments on sufficiency of service. Yet its brief ignores this fact and that it has been adjudicated a counterfeiter while sidestepping critical issues such as its failure to provide an accurate address at which service could be accomplished. Even though the record shows that there was no definitive physical address at which it could have been served, Chuanyue bases its whole appeal on whether service should have been effectuated through the Hague Convention as a distraction from the fact that it has been adjudicated as a counterfeiter. Beyond the fact that Chuanyue should be found to have waived its objections to the sufficiency of service, Chuanyue's position contradicts the overwhelming majority of courts in this Circuit that have found email service and the entry of a default judgment to be appropriate under similar circumstances.

**ARGUMENT**

## I. Chuanyue Waived Any Objections as to Insufficient Service.

The District Court's order may be affirmed for the sole reason that Chuanyue waived challenges to service.[1]  Chuanyue retained four different attorneys to contact Kangol to attempt to resolve this case before its fifth counsel moved to vacate the judgment almost a year after it was entered.  First and foremost, "an appearance does not necessarily 'require the filing of responsive papers or actual in-court efforts.'" *Philos Techs.*, 645 F.3d at 858; *see also, Trs. of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 733 (7th Cir. 1991) ("A party need not actually file an answer or motion before waiver is found.") Chuanyue clearly had five different attorneys representing it in the District Court case.

---

[1] To the extent that Chuanyue argues that the issue of waiver should not be addressed because the District Court's Opinion and Order denying the Motion to Vacate did not explicitly address it, any such argument should be rejected.  This Court has found that it "may decide the merits of legal issues which were not addressed by the district court only when the facts on which those conclusions are based are not in dispute." *Ambrosia Land Invs.,* 521 F.3d at 786; *Baker v. Lindgren*, 856 F.3d 498, 506-07 (7th Cir. 2017) (holding that question of whether conduct amounts to waiver is a legal question reviewed *de novo*).

The facts related to the waiver issue are undisputed in the record and were determined by the District Court.  *See* SA006 (finding that Chuanyue "received timely notice of the lawsuit based on the frequent communications with the parties during the pendency of the matter").  Chuanyue has failed to dispute its succession of counsel and the fact that none of them challenged sufficiency of service until after the judgment was collected on, and some ten months after being served.   Thus, a determination of whether there was waiver is a purely legal issue as the relevant facts are ***not*** in dispute.

14

Here, Chuanyue also never disputed or suggested that service was improper when attempting to negotiate a settlement during the case's pendency before the District Court. Through its silence on service, Chuanyue clearly gave the decided belief that service was proper. If service was an issue, its counsel should have promptly brought it up. However, none of them did.

Courts have found that a sufficiency of service defense is waived "where a defendant leads a plaintiff to believe that service is adequate and that no such defense will be interposed[." *Trs. of Cent. Laborers' Welfare Fund*, 924 F.2d at 733 (collecting cases); *see also Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5th Cir. 1987) ("Thus, we hold that defendants [], through the actions of their counsel, voluntarily appeared in this case and waived the defense of insufficiency or failure of service of process."). In *Broadcast Music,* the Fifth Circuit found that "[t]he Federal Rules do not in any way suggest that a defendant may halfway appear in a case, giving plaintiff **and the court the impression that he has been served, and, at the appropriate time, pull failure of service out of the hat like a rabbit in order to escape default judgment**." *Id.* (emphasis added)(holding that it was not an abuse of discretion to deny motion to set aside default judgment). This is precisely what Chuanyue did here and which this Court should similarly not countenance.

In *Sanderford v. Prudential Ins. Co.*, 902 F.2d 897, 901 (11th Cir. 1990), the Eleventh Circuit affirmed a district court's denial of motion to vacate because "[defendant] chose to remain silent and, with full knowledge of what was taking place, elected to do nothing as the court entered the first stage of default judgment." It held

15

that the defendant waived the defense of insufficiency of process, reasoning that "the Federal Rules do not contemplate that a party may simply ignore pleadings it receives." *Id.* at 900*; see also Commercial Casualty Ins. Co. v. Consolidated Stone Co.*, 278 U.S. 177, 180 (1929) ("The defendant, although duly served with a proper summons apprising it of the time within which it was required to appear and answer, permitted that time to elapse without making any objection to the venue, or place of suit, by motion, pleading or otherwise . . . . Our conclusion is that the objection was not seasonably made and therefore that under our decisions, as also the Ohio statute, it was waived."). Again, this is exactly what Chuanyue did: it ignored the pleadings and only raised a defense—which is non-meritorious for the reasons discussed herein—after the judgment was collected on by Kangol.

Chuanyue's counsel constantly contacted Kangol about the case, ignored the pleadings it received and never made a timely objection to the service of those pleadings. Under this large body of case law, Chuanyue needed to make a timely objection to service of the pleadings. It chose not to. Chuanyue waived all of its service arguments. The District Court's decision should be affirmed.

## II. The District Court Did Not Abuse Its Discretion in Denying Chuanyue's Motion to Vacate the Default Judgment Order Because Chuanyue Failed to Show Good Cause.

It is also not an abuse of discretion to deny a motion to vacate where a moving party fails to show good cause for default, quick action to correct the default and a meritorious defense. *Pretzel & Stouffer v. Imperial Adjusters*, 28 F.3d 42, 47 (7th Cir. 1994). Chuanyue failed to make this showing. Chuanyue waited 10 months to

challenge the default judgment and then only made arguments on positions that it waived. Chuanyue demonstrated no good cause to vacate the default judgment. The District Court rightly denied Chuanyue's tardy and baseless Motion to Vacate.

Before it moved to vacate in February of 2025, Chuanyue had retained four different attorneys to negotiate a settlement. All had contacted Kangol's counsel and had knowledge of the pleadings. Yet all said nothing about service and did nothing to avoid default. Only after Kangol collected on the judgment in January 2025 did Chuanyue move to vacate, arguing insufficiency of service for the first time. Chuanyue lacks any good cause for why it fell into default and failed to take quick action to address the default. Chuanyue consciously adopted a strategy of doing **nothing** despite knowing of the complaint and subsequent proceedings. It cannot cry foul now.

"[R]elief under Rule 60(b)(4) is granted only in exceptional circumstances." *In re Whitney-Forbes, Inc.*, 770 F.2d 692, 696 (7th Cir. 1985). The "list of such infirmities is exceedingly short." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). The Rule "applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271. In *Espinosa,* there was no basis for relief as the petitioner-creditor "received *actual* notice of the filing and contents of Espinosa's plan" which "more than satisfied [petitioner's] due process rights." *Id.* at 261. Similarly, Chuanyue can make **no** argument that it was deprived of the opportunity to be heard or that it did not receive actual notice of the

case. The District Court ruled that Chuanyue "received timely notice of the lawsuit based on the frequent communications with the parties during the pendency of the matter." SA006. This finding was ***not*** clearly erroneous and should not be set aside.

Chuanyue bears the burden of proving the judgment was void. *Philos Techs., Inc.*, 645 F.3d at 857. It fails on this front. Kangol filed a properly executed return of service that constitutes *prima facie* evidence of valid service which can only be overcome by Chuanyue making a strong and convincing showing. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993); R. 41 at 2, KSA129-131; *see also Jones v. Jones*, 217 F.2d 239, 242 (7th Cir. 1954). The District Court correctly concluded that Chuanyue failed to meet its burden.

## A.      Chuanyue Failed To Show That Service Was Improper.

In the Temporary Restraining Order, the District Court found that "[t]he combination of providing notice via electronic publication and email, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections." SA020. This is precisely what email service accomplished here as Chuanyue was immediately made aware of the pending lawsuit and retained multiple attorneys to represent it in this matter. The District Court recognized this in granting default judgment after holding that Chuanyue "received timely notice of the lawsuit based on the frequent communications with the parties during the pendency of the matter." SA006.

The District Court acted within its discretion by authorizing alternative service under Rule 4(f)(3). Rule 4(h) states, in relevant part, that a "foreign corporation" may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual[.]" Fed. R. Civ. P. 4(h)(2). Rule 4(f), provides, in relevant part: "an individual . . . may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents [or] (3) by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1)-(3). Under the Federal Rules, Kangol's service was proper.

### 1. The Majority Circuit Court View Is that Service Under the Hague Convention Is Not Mandatory.

Chuanyue argues that service was improper because service did not comply with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"). In other words, Chuanyue argues that service must have been completed under Rule 4(f)(1). The majority of Circuit Courts that have considered this issue have confirmed that Rule 4(f) does not require a plaintiff to attempt service by other means before seeking authorization to use an alternate means of service under Rule 4(f)(3).[2] Indeed, any argument that overlooks Rule 4(f)(3)

---

[2] While the Seventh Circuit has not squarely addressed service under Rule 4(f)(3), Courts in this Circuit have repeatedly upheld electronic service of process. *See, e.g.*, *Peanuts Worldwide LLC v. P'ships, et al.*, 347 F.R.D. 316, 328-31 (N.D. Ill. 2024) (Pallmeyer, J.); *NBA Properties, Inc. v. P'ships, et al.*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021) (Kness, J.); *Strabala*, 318 F.R.D. 81, 114-15 (N.D. Ill. 2016) (Durkin, J.);

"misses the mark" because the Hague Convention does not displace Rule 4(f)(3). *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018); *see also AngioDynamics, Inc. v. Biolitec AG.*, 780 F.3d 420, 429 (1st Cir. 2015) ("By its plain terms, Rule 4(f)(3) does not require exhaustion of all possible methods of service before a court may authorize service by 'other means,' such as service through counsel and by email."); *Viahart, L.L.C. v. He Gangpeng*, No. 21-40166, 2022 U.S. App. LEXIS 3974, at *8-9 (5th Cir. Feb. 14, 2022) ("Service pursuant to the Hague Convention listed in subsection (f)(1), does not displace subsection (f)(3), which permits service by other means."); *Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 214 (4th Cir. 2015); *Nuance Commc 'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239-40 (Fed. Cir. 2010); *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries OPEC*, 766 F.3d 74, 81-82 (D.C. Cir. 2014); *Int'l Controls Corp. v. Vesco*, 593 F.2d 166, 179-80 (2d Cir. 1979) ("even if the terms of the Convention were applicable, the Convention was not intended to abrogate the methods of service prescribed by F.R.C.P. Rule 4."); *cf. Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1293-94 (10th Cir. 2020).

The plain language of Fed. R. Civ. P. 4(f) does not require a plaintiff to attempt service by other means before seeking authorization to use an alternate means under Rule 4(f)(3). *See Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1495

---

*Milwaukee Elec. Tool Corp. v. Individuals, et al.*, 2025 U.S. Dist. LEXIS 216016, at *6 (N.D. Ill. Nov. 3, 2025) (Kocoras, J.); *Chen v. P'ships, et al.*, 2025 U.S. Dist. LEXIS 3672, at *16 (N.D. Ill. Jan. 8, 2025) (Ellis, J.); (Wood, J.); *Neman Bros. & Assocs. v. P'ships, et al.*, 2024 U.S. Dist. LEXIS 223383, at *4-6 (N.D. Ill. Dec. 10, 2024) (Tharp, J.).

(2020); *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989); *Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021).

Moreover, "no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). In fact, authorizing alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but rather one means among several for serving international defendants. *Id.*; *see also* 4B Charles Alan Wright, et al., Federal Practice & Procedure § 1134 (4th ed.) ("The use of a court-directed means for service of process under Rule 4(f)(3) is not a disfavored process and should not be considered extraordinary relief."). As such, "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing." *Rio Props.*, 284 F.3d at 1015.

In sum, the majority Circuit Court view is that service does not need to have been attempted under the Hague Convention before alternative service methods could be employed. *Nuance Communs.*, 626 F.3d at 1238 (collecting cases). Thus, the District Court did not abuse its discretion in ordering service via email.

Conflicting with the majority view and not controlling here, Chuanyue makes a last gasp "supplemental authority" filing regarding a recent Second Circuit case. ECF 29. Contrary to the majority of circuits, the Second Circuit ***assumed*** that the Hague Service Convention governed service. *Smart Study Co., Ltd. v. Shenzhenshixindajixieyouxiangongsi*, No. 24-313, 2025 U.S. App. LEXIS 33039, at *11 (2d Cir.

Dec. 18, 2025). Importantly, the *Smart Study* court was reviewing the lower court's decision of improper service for abuse of discretion, giving the reasoning of the lower court significant deference. *Id.* at *11, 20 ("we cannot say that the district court abused its discretion in denying relief here"). The present case is also procedurally opposite from *Smart Study* because Chuanyue moved to vacate the default judgment against it pursuant to Rule 60(b)(4). Therefore, the burden of convincing this Court that the district court was "fundamentally wrong" rests on Chuanyue. *Ladien v. Astrachan*, 128 F.3d 1051, 1056 (7th Cir. 1997) ("The district court's decision must strike us as *fundamentally wrong* for an abuse of discretion to occur.") The Court should therefore decline to follow this non-controlling decision and instead follow the majority view set forth above.[3]

Chuanyue also relies on dictum in *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017), and *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)[4] to support its argument that service through the Hague Convention must be attempted before authorizing email service. Those cases, however, do "not hold or even suggest that the Hague Convention must always be complied with before alternative service is ordered, and that the quoted language from that case is dictum." *Strabala*, 318 F.R.D. at 115 n. 36 (cleaned-up) (citation omitted). Neither case mentions Rule 4(f)(3),

---

[3] *See United States v. Clark*, 538 F.3d 803, 812 (7th Cir. 2008) ("While we carefully and respectfully consider the opinions of our sister circuits, we are not bound by them. Our duty is to independently decide our own cases, which sometimes results in disagreements with decisions of the other circuits.")(citations omitted)

[4] *Schlunk* was also decided in 1988, before the inclusion of subsection Fed. R. Civ. P. 4(f)(3) in 1993.

let alone holds that the Hague Convention must be attempted or complied with before alternate service pursuant to Rule 4(f)(3) is ordered. *See NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d at 798 ; *Peanuts Worldwide LLC*, 347 F.R.D. at 328-29. Chuanyue cites the lower court opinion in *Smart Study* which also relied on this dictum from *Water Splash* and *Schlunk*. *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1393-94 (S.D.N.Y. 2022).

This argument and reliance on *Water Splash* and *Schlunk* also overlooks that in both cases, the Supreme Court was reviewing methods of service provided by state law, and their interplay with the Hague Convention—"by virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Schlunk*, 486 U.S. at 699 (emphasis added). By contrast, in cases like the present that arise under federal law (*i.e.,* the Lanham Act), "the manner and timing of serving process are . . . controlled by the Federal Rules." *Henderson v. United States*, 517 U.S. 654, 656 (1996).

Chuanyue's reliance on the Third Circuit ruling *SEC v. Lahr* is also misplaced. *SEC v. Lahr*, No. 22-2497, 2024 U.S. App. LEXIS 18170 (3d Cir. July 24, 2024). The Third Circuit, in a non-precedential opinion, only addressed the propriety of email service after finding that the "address was known." *Id.* at *8-9. Since it was established in the record here that Chuanyue's address was unknown, *see* Part II.B.2 *infra,* the *Lahr* case cannot be fairly construed as conclusively determinining if service via email is proper. Likewise, in *Luxottica Grp. S.p.A. v. P'ships, et al.*, the

23

district court conceded that the Supreme Court did not "conclusively settle the precise questions here for neither *Schlunk* nor *Water Spalsh* involved Rule 4(f)(3) or email service." 2019 U.S. Dist. LEXIS 93466, at *9 (N.D. Ill. June 4, 2019). In sum, none of Chuanyue's cited cases squarely address the issue in its appeal, let alone compel remand.

### 2. Service Was Proper Under Rule 4(f)(3).

In this case, the District Court found that "[t]he combination of providing notice via electronic publication and email, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections." SA020. In other words, this was a determination within the discretion of the District Court based on the facts presented to it. Indeed, "the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)" is committed "to the sound discretion of the district court." *Rio Props.,* 284 F.3d at 1016; *In re OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 2021-165, 2021 U.S. App. LEXIS 27282 at *10 (Fed. Cir. Sept. 10, 2021) ("[C]ourts have recognized that delay and expense are factors that legitimately bear on whether to issue an order for alternative service."). Some courts have noted that "it is difficult to see why any party 'would ever choose slower, more costly methods' of service" if email service exists. *Smart Study*, 2025 U.S. App. LEXIS 33039, at *14-15. However, this is why district courts have the discretion to determine if email service is appropriate for the circumstances of the cases before

them. These methods may very well be more appropriate than email in cases with different circumstances, but that is for the district court to determine. The District Court's determination here was correct, particularly after it specifically found that Chuanyue "received timely notice of the lawsuit based on the frequent communications with the parties during the pendency of the matter." SA006.

Even though Kangol "had not attempted service under the terms of the Convention, the Court was authorized to order that service be affected by an alternative means (i.e., email) so long as [Kangol] 'ma[d]e a showing as to why alternative service should be authorized.'" *NBA Props.,* 549 F. Supp. 3d at 797. Court-directed electronic service pursuant to Rule 4(f)(3) is particularly appropriate in this case where "there is a need for speed that cannot be met by following the Hague Convention methods." *Strabala,* 318 F.R.D. at 114. Indeed, even if Chuanyue's purported address was real and Chuanyue was available for service at that address—which the record does not support—it is nearly certain that the Chinese Central Authority would exceed six months in its attempt to effectuate service. *See, e.g., Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 2020 U.S. Dist. LEXIS 82150, at *3 (S.D. Cal. May 8, 2020) ("[T]he Ministry of Justice in China noted that service is 'time-consuming and not efficient' and confirmed that it often takes more than two years to complete."); *Peanuts Worldwide*, 347 F.R.D. at 331 (explaining that certain "plaintiffs cannot, as a practical matter, wait up to six months—an eternity in the e-commerce world—to physically serve dozens of overseas defendants who often have no real defense to the merits of their infringement claims.") As such,

25

it would have been impossible to effectuate service on Chuanyue in a timely manner, particularly given that Chuanyue did not have a known physical address.

Moreover, "email offers many advantages over the older methods of service spelled out in the Convention: it is instantaneous, it does not require physical intrusion into the receiving country's territory, and it is often a more reliable way of reaching overseas e-commerce vendors who must maintain a verified email address in connection with their seller profiles." *Peanuts Worldwide*, 347 F.R.D. at 330; *see also Hangzhou Chic Intelligent Tech. Co. v. P'ships, et al.*, 2021 U.S. Dist. LEXIS 64064, at *10 (N.D. Ill. Apr. 1, 2021) (noting that email does not require physical intrusion on Chinese territory). "Indeed, when faced with an international ebusiness scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process." *Rio Prop.*, 284 F.3d at 1018. Chuanyue does not dispute any of the above or argue that the District Court erred in concluding that Kangol justified the need for alternative service. It has, therefore, waived any argument to the contrary.

Finally, "[a]s obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement." *See Rio,* 284 F.3d at 1015. "No other limitations are evident from the text." *Id.* Some courts attempt to determine what methods of service the Hague Convention permits. *See Smart Study*, 2025 U.S. App. LEXIS 33039, at *14. However, "the relevant inquiry under Rule 4(f)(3) is not whether the agreement affirmatively endorses service outside the central authority" but instead "whether the alternative service

method in question is 'prohibited' by the agreement."  *Compañía De Inversiones Mercantiles,* 970 F.3d at 1294.[5]  *Smart Study* also based its decision on the preamble of the Hague Convention, which is only relevant to consider if there is an ambiguity in the text of the instrument.  *Jogi v. Voges*, 480 F.3d 822, 834 (7th Cir. 2007) (finding it is a "mistake" to allow general language of a preamble to "create an ambiguity in specific statutory or treaty text where none exists.")

As discussed in the next section, there is no basis to argue that the Hague Convention prohibits electronic service.

> **3.     The Hague Convention Does Not Prohibit Electronic Service, and China Has Not Objected to Service of Process by Email.**

The Hague Convention does not expressly prohibit service by email.  *See NBA Props.,* 549 F. Supp. 3d at 797 ("Service by email is not specifically provided for in the Convention, but neither is it forbidden.") (collecting cases).  While Article 10(a) of the Hague Convention discusses "postal channels," it does not include any language to the effect that email is a postal channel.[6]  Courts in this Circuit and others that have considered this issue have rejected the analogy of postal service to email service, along with arguments that China's objection to serve by postal channels extends to email.  *See, e.g., Peanuts Worldwide LLC,* 347 F.R.D. at 329 (collecting cases); *see*

---

[5] Service of process ordered under Rule 4(f)(3) may even be completed in contravention of the foreign country's laws.  *See id.*; *see also Rio Props.,* 284 F.3d at 1014; *Freedom Watch*, 766 F.3d at 84.

[6] Postal channels are a means for delivering physical items like letters and packages through entities such as the U.S. Postal Service, FedEx, and UPS.  Email is a means for transmitting digital messages electronically between devices on a network similar to text messages or other messaging applications.

*also Oakley Inc. v. Yantai Lanlei Network Technology Co., LTD., et al.*, No. 20-cv-00396, 2020 U.S. Dist. LEXIS 273527 at *4 n.1 (N.D. Ill. May 21, 2021) ("[M]any courts have rejected the analogy of postal service to email service" observing that "the instantaneous and traceable nature of email cures the concerns with postal service."); *Hangzhou Chic Intelligent Tech.*, 2021 U.S. Dist. LEXIS 64064, at *10-11 ("the Court finds it is inappropriate to interpret China's objections to postal service under the Hague Convention as encompassing service by email."); *The Neck Hammock, Inc. v. Danezen.com*, No. 2:20-CV-287-DAK-DBP, 2020 U.S. Dist. LEXIS 202808, at 11 (D. Utah Oct. 29, 2020) ("the court cannot conclude that China's objection to service by traditional mail to service by traditional mail under Article 10(a) is also an objection to service by email."); *Victaulic Co.*, 2020 U.S. Dist. LEXIS 82150, at *7 ("Although Article 10(a) references 'postal channels,' it does not mention service by email, online messaging system, or other electronic means. Thus, China's objection to service by 'postal channels' does not prohibit service by 'electronic means.'"). In *Smart Study*, the Court cited to a single district court decision from Pennsylvania involving service in Switzerland to determine that China's objection to service by postal channels includes email. *Smart Study*, 2025 U.S. App. LEXIS 33039, at *12. However, this Court should follow the majority of courts that have considered this issue with respect to service by email in China.

The majority of contracting parties to the Hague Convention have rejected equating email service to service by postal channels. In fact, the Permanent Bureau of the Hague Convention conducted a service questionnaire in 2022 and compiled the

responses received through 2024. In that summary, the Permanent Bureau concluded

that, amongst all Contracting Parties, only *13%* recognize email as a "Postal Channel."

More specifically, the summary states:

> Contracting Parties were asked which categories they recognise, exclusively or alternatively, as a "postal channel":

| | |
|---|---|
| Regular post | 50% |
| Registered (tracked) post, with receipt | 54% |
| Private courier, such as FedEX | 33% |
| E-mail | 13% |
| e-Post via State postal agency | 0% |
| Other | 13% |

https://assets.hcch.net/docs/783bc7ff-ab8e-46bd-a386-42131f316f4b.pdf        (last

accessed Dec. 22, 2025).[7]

### 4. Service via Email Comports with Constitutional Notions of Due Process.

Service via email comports with constitutional notions of due process because

it was reasonably calculated, under all of the circumstances, to apprise Defendant of

the pendency of this action and afford Defendant an opportunity to present objections.

*See Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S. Dist. LEXIS 97241,

at *5 (N.D. Ill. Dec. 1, 2008) ("Accordingly, we find that service upon the Ningbo

---

[7] Chuanyue cited the 2024 Special Commission Conclusions & Recommendations to support its incorrect interpretation of Article 10(a). Br. 47. As Chuanyue conceded, however, the cited passage is merely a recommendation, not a formal adoption. Moreover, perhaps the reason that it is labeled as "recommendation" is because, as discussed above, only *13%* of the signatories considered email to be within "postal channel." Chuanyue is essentially asking this Court to skip the amendment process and force the adoption of a recommendation.

Defendants by e-mail and facsimile is reasonably calculated to apprise them of the pendency of this action and afford them an opportunity to present their objections.") In *Maclean-Fogg,* the court emphasized that the plaintiffs had demonstrated that the defendants conducted business through their website and communicated with customers via e-mail. Thus, there was a "high likelihood" that they would receive and respond to emails such that service would not violate Due Process.[8] Kangol made the same showing here, as recognized by the District Court in finding that Chuanyue "received timely notice of the lawsuit based on the frequent communications with the parties during the pendency of this matter." SA006.

Here, Chuanyue had prompt and actual notice of this case since at least as early as April 18, 2024—a fact that Chuanyue does not contest. R. 41 at 2, KSA129-131. Chuanyue has been represented by different counsel since that date. Chuanyue thus does not show why service by email unfairly prejudiced it or violated due process. Simply stated, Chuanyue chose not to respond after receiving constitutionally appropriate notice and default judgment was appropriately entered.

The District Court's grant of a TRO and Preliminary Injunction demonstrated the urgency in this case, which further supported the appropriateness of service by email. The District Court ruled that the evidence "clearly show[s] that immediate

---

[8] More recent decisions confirm that email is instantaneous and "it is often a more reliable way of reaching overseas e-commerce vendors who must maintain a verified email address in connection with their seller profiles." *Peanuts Worldwide*, 347 F.R.D. at 328; *see also Hangzhou Chic Intelligent Tech. Co.*, 2021 U.S. Dist. LEXIS 64064, at *8-9; *Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 U.S. Dist. LEXIS 118878 at *3 (N.D. Ill. June 25, 2021).

and irreparable injury, loss, or damage will result to the movant."  SA016; *see also Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (holding that this Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy.").  Chuanyue does not dispute the District Court's factual finding of urgency, which should be reviewed under a clearly erroneous standard.  *See, e.g. Girl Scouts of Manitou Counsil, Inc. v. Firl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1087 (7th Cir. 2008) (holding that a district court's determination of irreparable harm is reviewed as a finding of fact and submit to clearly erroneous standard).

Ordering service by email under these exigent circumstances does not run afoul of Due Process (or the Hague Convention).  *See, e.g., Rio Props, Inc.*, 284 F.3d at 1015 ("the advisory notes [of the Federal Rules of Civil Procedure] suggest that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service' even if other methods of service remain incomplete or unattempted."); *Strabala v. Zhang*, 318 F.R.D. at 114  ("Court-directed service pursuant to Rule 4(f)(3) is appropriate when, for example, 'there is a need for speed that cannot be met by following the Hague Convention methods....'" and finding no Due Process violation) (internal quotation omitted).

Accordingly, the District Court did not abuse its discretion in ordering service by email.

> **B.  Alternatively, the Hague Convention Does Not Apply.**

Even if Kangol was incorrect about the propriety of email service under the Hague Convention, the District Court's decision may nonetheless be affirmed since the Hague Convention does not apply to the particular circumstances of this case. Specifically, (1) Kangol did not "transmit a judicial or extrajudicial document for service abroad" and (2) Chuanyue's claimed address is inaccurate, and therefore unknown.

### 1. Electronically Publishing Filings to a Website and Sending a Link to said Website via Email Does Not Implicate the Hague Convention.

The Hague Convention is only implicated when service "require[s] the transmittal of ***documents*** abroad." *San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co., Ltd.*, 53 F.4th 1136, 1143 (9th Cir. 2022) (emphasis added) (quoting *Schlunk*, 486 U.S. at 700). Whether documents are being transmitted abroad for purposes of Article 1 of the Hague Convention is determined by U.S. internal law. *Id.*.

In this case, the District Court authorized Kangol to complete service "by electronically publishing a link to the Complaint, this Order and other relevant documents on a website and by sending an email with a link to said website to an email address for each Defendant." SA019. An email with links to a website is not a "document" as contemplated by Article 1 of the Hague Convention. Most obviously, email did not exist when the Hague Convention was drafted, so it could not have been contemplated. Likewise, the Federal Rules of Civil Procedure distinguish between documents and electronically stored information, like emails. Fed. R. Civ. P. 34; *see also, e.g., DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 975

(N.D. Ill. 2021) (describing emails as ESI); *Yates v. United States*, 574 U.S. 528, 550 (2015) ("[W]hat is similar to a 'record' or 'document' but yet is not one? An e-mail[.]") (Alito, J. concurring).). The Federal Rules of Evidence also make the same distinction. *See* Fed. R. Evid. 1001(d). For similar reasons, sending electronic messages containing a link across servers cannot constitute transmittal abroad as contemplated by Article 1 of the Hague Convention.

"[The] Due Process Clause does not require an official transmittal of documents abroad every time there is service on a foreign national." *Schlunk*, 486 U.S. at 707 (affirming, serving documents on domestic agent of foreign defendant does not constitute transmitting documents abroad for service); *see also San Antonio Winery*, 53 F.4th at 1143 (affirming, completing service on a foreign defendant by service on a trademark registrants' designated U.S. person or the Director of the PTO does not constitute serving documents abroad for service). For the foregoing reasons, "this case [did] not present an occasion to transmit a judicial document for service abroad." *Schlunk*, 486 U.S. at 707. As such, the Hague Convention does not apply.

### 2. Chuanyue's Address Was Unknown.

The record below establishes that Chuanyue's address was unknown and that the District Court appropriately ordered alternative service by email. On top of providing conflicting addresses, Chuanyue went so far as to propose that its address could be located among hundreds of stalls at an open-air market in China. R.65 at 9, KSA217. Having made every effort to obscure its true address, the Court should

reject its tardy attempt to invoke the Hague Convention to second guess the District Court's rulings.

Article 1 of the Hague Convention states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." Since Chuanyue's address was unknown or reasonably uncertain, the Hague Convention did not apply, and email service was proper. *See, e.g.,* Order, *MCM Holding AG, et al. v. Dequn Zhao, et al.*, No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018) (Dkt. No. 42) (unpublished) (finding electronic service proper because defendant's address was unknown). In moving for a TRO, Kangol discussed the difficulty in determining the addresses of the defendants, including Chuanyue, and cited to *Hangzhou Chic Intelligent Tech. Co.*, 2021 U.S. Dist. LEXIS 64064, which found that the Hague Convention cannot be invoked without a known address. R. 11, KSA067. Thus, in ordering alternative service via email, the District Court agreed with Kangol. *See Walton v. Arizona*, 497 U.S. 639, 653 (1990) ("Trial judges are presumed to know the law and to apply it in making their decisions."). Since Chuanyue has not appealed that original order allowing for service via email, it has waived that argument. *Trask v. Rodriguez*, 854 F.3d 941, 944 (7th Cir. 2017) ("But Trask doesn't challenge the district court's reasons for granting summary judgment, and has thus waived any claim of error."). Even if Chuanyue did not waive this ground for appeal, any arguments it might make here should be rejected.

***First,*** to the extent Chuanyue argues that the District Court did not make an explicit finding as to whether the address of Chuanyue was known, that argument

should be rejected. It is "assum[ed] all courts base rulings upon a review of the entire record" and that "any factual issues necessary to the judgment that were not explicitly resolved in a bench trial were implicitly decided in favor of the court's decisions, or the court would have decided the other way." *United States v. $242,484.00 in United States Currency*, 389 F.3d 1149, 1155 (11th Cir. 2004). A district court's finding that service of process was sufficient, including that plaintiff has made a reasonably diligent effort to find defendant's address or that a defendant's address is unknown, is a factual finding. *McPartlin v. Commissioner*, 653 F.2d 1185, 1189 (7th Cir. 1981); *Thornton v. Brown*, 47 F.3d 194, 197 (7th Cir. 1995)(a "trial court's choice between two permissible views of the evidence cannot be considered clearly erroneous.")

Here, similar to these cases, when deciding to allow for service by email, the District Court, whether explicitly or implicitly, made a factual determination. That determination was that the address of Chuanyue was not known at the time of requesting service via email. [9] This determination was only confirmed after Chuanyue's Motion to Vacate failed to conclusively establish the existence of an address at which service via the Hague Convention could actually be completed. As discussed above, factual findings can only be overturned by a showing of clear error.

---

[9] As many courts have found, having false addresses and names is a common tactic of counterfeiters. *See e.g. Bulgari, S.P.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14-cv-4819, 2014 U.S. Dist. LEXIS 107218, at *5 (N.D. Ill. July 18, 2014); *see also Popparties LLC v. Defendants*, 2022 U.S. Dist. LEXIS 214729, at *6 (W.D. Wash., November 29, 2022) (holding that "investigation [of defendants' addresses] would only result in wasted resources and delay.").

Chuanyue has not shown clear error by the District Court and thus fails to meet the threshold requirement under the Hague Convention that the address must be known. Based on this factual finding, the District Court did not abuse its discretion in ordering service via email, which decision was validated by the fact that Chuanyue received notice.

***Second,*** even examining the record based on Chuanyue's late-filed Motion to Vacate, Chuanyue's address was not ascertainable.[10]

Chuanyue represented for the first time in its Motion to Vacate, without any evidence, that its address is No. 252-257 China Silk City, Hangzhou. R.60 at 4-5, KSA171-172. However, Kangol's own online searches neither located this address nor located the Seller Aliases at those addresses. R.63 at 6–7, KSA189-190. In fact, as admitted by Chuanyue, one of the few possible addresses provided by Chuanyue is the general address of an *open-air market* with hundreds of storefronts. R.65 at 9, KSA217. It would plainly *not* be reasonable for plaintiffs to travel to an open-air market in a foreign country and identify the defendant from hundreds of storefronts. The District Court summarized what Kangol's investigation revealed: "Plaintiff

---

[10] *See e.g. Kelly Toys Holdigs, LLC v. Top Dep't Store*, No. 22-cv-558, 2022 U.S. Dist. LEXIS 154175, at *22 (S.D.N.Y. Aug. 26, 2022) ("[T]he inability of [the plaintiff's reasonably diligent] efforts to identify [the defendants' physical] addresses made [them] 'not known' for [] purposes of the Hague Convention."); *Roadget Bus. PTE. Ltd. v. Individuals*, No. 23 C 17036, 2024 U.S. Dist. LEXIS 77461, at *14 (N.D. Ill. Apr. 29, 2024) (holding that plaintiff's service is sufficient because defendant's address was unknown to plaintiff at the time of filing the Motion for Alternative Service via email.).

argues that it did make reasonably diligent efforts and that it could not verify the accurate address as its efforts resulted in a multitude of different addresses." SA004. Accordingly, Chuanyue's address was unknown for purposes of the Hague Convention.

It is not surprising for a counterfeiter like Chuanyue to operate with a fake address to evade enforcement efforts. In fact, addresses listed on Chinese Business Licenses or defendants' websites are often found to be inaccurate by the Chinese Central Authority, thus leading courts to order service by email. *See, e.g. Mestek, Inc. v. Shenzhen Mestek Elecs. Co., Ltd.*, 2025 U.S. Dist. LEXIS 207903, at *6 (D. Mass. Oct. 22, 2025) (ordering service by email because the Chinese Central Authority found that the address listed in Chinese defendant's official business registry, website, and email signature block "does not exist."); *Fox Shiver LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A to the Complaint*, 23-CV-1989 (JPO), 2024 U.S. Dist. LEXIS 10861, at *2 (S.D.N.Y. Jan, 22, 2024) (ordering service by email and finding that three Chinese defendants' address to be unknown because Chinese Central Authority was unable to locate the defendants' at their specified address).

Rather than attempting service at a fake address, Kangol completed service electronically, which made Chuanyue aware of the lawsuit on the same day it was made. The District Court did not abuse its discretion by ordering service via email under these circumstances.

### C. The District Court Did Not Abuse Its Discretion in Determining That Kangol Is Entitled to Default Judgment Notwithstanding Article 15 of the Hague Convention.

### 1. Article 15 Does Not Apply Where Service Is Completed Under Rule 4(f)(3).

As explained above, the Hague Convention does not apply because documents were not transmitted abroad for service and Chuanyue's address is unknown. The plain language of Paragraph 1 of Article 15 states that "[w]here a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, *under the provisions of the present Convention*, and the defendant has not appeared, judgment shall not be given until" other factors are established Hague Convention, Art. 15 (emphasis added). Service in this case was completed under Rule 4(f)(3)—not "under the provisions of the present Convention." Thus, this is unlike cases where Article 15 is invoked after there has been service under the Hague Convention. *See, e.g., Isaac Indus., Inc. v. Petroquímica de Venezuela, S.A.*, 127 F.4th 289, 295 (11th Cir. 2025) ("Article 15 permits a judge to enter a default judgment 'even if no certificate of service or delivery has been received' *so long as a plaintiff 'transmitted' the service documents 'by one of the methods' described in the Convention*….") (emphasis added).

Paragraph 2 of Article 15 further confirms that Article 15 does not apply. Notwithstanding paragraph 1, courts "may give judgment even if no certificate of service or delivery has been received, *if all of the following conditions are fulfilled*[:]

> a) the document was transmitted *by one of the methods provided for in this Convention*,
> b) a period of time of not less than six month, considering adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

c) no certificate of any kind has been received, ***even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.***

Hague Convention Art. 15 (emphasis added). Section (a) and (c) contemplate circumstances that arise exclusively in the context of service under the Hague Convention. Since service was not effectuated in this case under the Hague Convention, ***Article 15 is not applicable***.

The District Court correctly found that Article 15 was intended to prevent defaults in the case of defendants who did not receive notification of the lawsuit, i.e., *notification au parquet*. SA006. Since in this case Chuanyue did receive timely notification of the lawsuit "based on the frequent communications with the parties during the pendency of this matter," the District Court correctly found that this removed "any concern regarding the timeliness of notice Article 15 seeks to prevent." *Id.* Any other interpretation here would render Rule 4(f)(3) and Rule 55 meaningless as it would preclude entry of default judgment when service was validly completed under Rule 4(f)(3). *O'kane v. Apfel*, 224 F.3d 686, 691 (7th Cir. 2000) ("When construing statutes, courts should avoid 'absurd and unjust consequences.'")

### 2. Noncompliance with Article 15 Does Not Render Judgment Void.

Chuanyue argues that noncompliance with Article 15 renders the judgment void. This argument fails under Rule 60(b)(4). Fed. R. Civ. P. 60(b)(4) ("[T]he court may relieve a party … from a final judgment [if] the judgment is void.") A judgment is void "only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of

notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271. It provides no relief from judgment "simply because it is or may have been erroneous." *Id.* at 270; *see also In re Whitney-Forbes, Inc.*, 770 F.2d at 696 ("Even gross errors committed by a court in reaching a decision do not render the court's judgment or order void.").

Chuanyue was properly served, had actual notice of the case, was afforded the opportunity to consult with four different counsels to present its defenses and objections, and was notified of the pendency and the entry of the default judgment. Chuanyue does not dispute it was given its due process rights. *Sanderford, supra,* 902 F.2d at 901 (holding that parties may not have "an unfounded assurance that a technical omission absolves him or her or it from responding to a galaxy of notices, …, warning of possible entry of a final default judgment." (citation omitted).

Chuanyue does not otherwise dispute jurisdiction, and Article 15 is a "procedural rule," which is "not jurisdictional." *Espinosa*, 559 U.S. 260 at 272; *see also Henderson*, 517 U.S. at 656, *Peanuts Worldwide*, 347 F.R.D. at 332 (Article 15 is not jurisdictional). Thus, even if Article 15 applied, noncompliance "does not entitle [defendants] to relief under Rule 60(b)(4)." *Espinosa*, 559 U.S. 260 at 272; *see also Planet Corp. v. Sullivan*, 702 F.2d 123, 125 n.2 (7th Cir. 1983).

### III. The District Court Did Not Err in Declining to Modify the Default Judgment Pursuant to Rule 69(a)(1) of the Federal Rules.

#### A. Chuanyue Waived Its Argument Regarding Illinois Post-Judgment Collection Rules.

The District Court ruled that Chuanyue had waived its arguments regarding compliance with Illinois post-judgment collection procedures because "[Chuanyue did

not] make any attempt to argue which Illinois post judgment proceedings [Kangol] violated and how [Kangol] failed to comply with these procedures" and cited past precedent of this Court for the proposition that "[j]udges are not like pigs, hunting for truffles buried in briefs." SA007. Despite this, in its opening brief, Chuanyue's only argument against the ruling of waiver is one simple sentence—"[t]hat argument should not be derided for being brief." Br. 51. This one sentence argument simply cannot be construed as a meaningful argument to support reversal of the District Court's decision. [11]

## B. Kangol Did Not Violate Illinois Post-Judgment Collection Procedures.

Even if the Court were to find that the argument has not been waived, Chuanyue failed to cite a single case to support its position that Federal Rule 69 and/or Illinois post-judgment proceedings were not complied with. While citing to 735 ILCS 5/2-1402 and Ill. Sup. Ct., R 277,[12] Chuanyue does not even attempt to explain how these authorities are applicable, let alone warrant reversal of the default judgment order. *See, e.g., Bank of Am., N.A. v. Veluchamy*, 643 F.3d 185, 190 (7th Cir. 2011) ("As one circuit eloquently put it, '[i]t is not enough merely to mention a

---

[11] Further, the arguments Chuanyue made in its reply to Kangol's response to the Motion to Vacate would not save Chuanyue from waiving this argument. *See Segid v. United States Citizenship & Immigration Servs.,* 47 F.4th 545, 548 (7th Cir. 2022) ("We have consistently held that "arguments raised for the first time in a reply brief are waived[.]") (citation omitted)

[12] It should be noted that in Chuanyue's Motion to Vacate, Chuanyue did not even cite to 735 ILCS 5/2-1402 and Ill. Sup. Ct., R 277.

possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'") (quotation omitted).

Nothing in 735 ILCS 5/2-1402 and Ill. Sup. Ct., R 277 compel a reversal of the District Court's rulings. Post-judgment collections are "meant to be swift, cheap, informal." *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993). Similarly, courts are given broad powers to order asset transfers to satisfy judgments. *Kennedy v. Four Boys Labor Services, Inc.*, 664 N.E.2d 1088, 1091 (Ill. App. Ct. 1996). Indeed, facing online counterfeiters, most, if not all, courts directly order third parties such as Amazon or eBay to transfer assets to plaintiffs. *See, e.g., Bulgari, S.P.A. v. Zou Xiaohong*, No. 15-cv-05148, 2015 U.S. Dist. LEXIS 140606, at *10 (N.D. Ill. Oct. 15, 2015) ("A district court may order a third party, such as PayPal, to transfer to a successful plaintiff any funds that it is holding on behalf of one of its account recipients or customers in order to satisfy or partially satisfy a monetary award entered against that recipient or customer."). There is no requirement that any particular procedure under Illinois law be followed.

As Chuanyue admits, 735 ILCS 5/2-1402 and Ill. Sup. Ct. R. 277 are simply among the tools for creditors to "discover assets." Br. 52. Indeed, 735 ILCS 5/2-1402 allows for an examination of the judgment debtor to discover assets or income not exempt from enforcement of the judgment. Here, Kangol was independently able to discover the existence of assets being held by Amazon and the default judgment order allowed for the same to be transferred to Kangol in satisfaction of the judgment. Chuanyue cites no authority under Illinois state law or federal law prohibiting such

judgment collection efforts. In fact, Section (i) of 735 ILCS 5/2-1402, states: "[t]his Section is in addition to and does not affect enforcement of judgment or citation proceedings thereto." It is therefore clear that this rule is not exclusive and mandatory.

## IV. Restitution Should Not Be Granted.

Restitution should not be granted in the event that the Court reverses the District Court's denial of Chuanyue's Motion to Vacate. If the default judgment were vacated, the terms of the preliminary injunction (R. 46, KSA134-141) would remain in effect. *Sueros & Rehidratantes S.A. de C.V. v. Candies*, No. 2:23-cv-08282-DSF-BFMx, 2025 LEXIS 232571, at *5 (C.D. Cal. Apr. 17, 2025) (reinstating preliminary injunction after vacating default judgment.); *Shishko v. Whitley*, 64 N.C. App. 668, 674 (1983) ("Inasmuch as the trial court here had no jurisdiction to enter the judgment appealed from, that judgment must be vacated with the result that the preliminary injunction remains in effect until this matter is properly heard and considered on its merits.")

The Preliminary Injunction ordered that third-party providers shall "restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further order by this Court" and "Defendants shall not transfer or dispose of any money or other of Defendants' assets in any of Defendants' financial accounts." R. 46 at 4 and 7, KSA137 and 140; *see also Tory Burch LLC v. P'ships,* No. 13 C 2059, 2013 U.S. Dist. LEXIS 43173, at *26 (N.D. Ill. Mar. 27, 2013) ("The freezing of financial assets is also appropriate in this case

43

because Defendants may otherwise transfer their financial assets to overseas accounts, thereby depriving Plaintiffs of final relief."); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("Because the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [the defendant's] assets in order to ensure the availability of that final relief."); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("Since the assets in question . . . were profits of the [defendant] made by unlawfully stealing [the plaintiff's] services, the freeze is appropriate and may remain in place pending the final disposition of this case.").

Thus, even if the default judgment were vacated and the matter were remanded to the District Court, the terms of the Preliminary Injunction Order would remain in effect. In that scenario, the funds that Kangol collected from Amazon would remain subject to the terms of the Preliminary Injunction Order unless and until the District Court rules otherwise.

## CONCLUSION

For the foregoing reasons, the District Court's ruling should be affirmed. Chuanyue waived any complaint about sufficiency of service. Moreover, it was not an abuse of discretion to deny the Motion to Vacate or to order service by email in the first place. Affirming the District Court's rulings will ensure that courts in this Circuit may continue to utilize their discretion under Federal Rule 4 in ordering alternative forms of service, such as email, when warranted under the facts of each case. And where parties like Chuanyue are properly served and nonetheless fail to

44

answer or otherwise plead, default judgment is, and should remain, the appropriate

remedy under Federal Rule 55.

Date: December 22, 2025 Respectfully submitted,

/s/ Todd R. Tucker

Todd R. Tucker (65617)
ttucker@calfee.com
Yizhou Liu (93842)
bliu@calfee.com
Nicholas Zalany (80095)
nzalany@calfee.com
Xu Jin (105195)
ejin@calfee.com
Calfee, Halter & Griswold LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
(216) 622-8200 (Telephone)
(216) 241-0816 (Facsimile)

*Attorneys for Plaintiff-Appellee Kangol LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22th day of December 2025, I caused to be electronically filed the foregoing Response Brief of Plaintiff-Appellee Kangol LLC with the Clerk of Court using the CM/ECF system, which will serve notice on all counsel of record.

/s/ Todd R. Tucker
One of the Attorneys for Plaintiff-Appellee Kangol LLC

**Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

I hereby certify as follows:

1. This document complies with the type-volume limitations of Cir. R. 32(c) and Fed. R. App. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,419 words.

2. This document complies with the typeface requirements of Cir. R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

Respectfully submitted,

*/s/ Todd R. Tucker*

*One of the Attorneys for Plaintiff-Appellee Kangol LLC*