No. 25-2205

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

KANGOL LLC,                          )
                                     )
        Plaintiff-Appellee,      )
                                     )
v.                                   )
                                     )
HANGZHOU CHUANYUE SILK               )
IMPORT & EXPORT CO., LTD.,           )
                                     )
        Defendants-Appellant.    )

Appeal from the United States District Court
for the Northern District of Illinois
No. 24 CV 01636, Sharon Johnson Coleman, *Judge*

## BRIEF OF *AMICUS CURIAE* RICHARD K. WAGNER
## IN SUPPORT OF APPELLEE AND AFFIRMANCE

Amy C. Ziegler
Justin R. Gaudio
Greer, Burns & Crain, Ltd.
200 W Madison Street, Suite 2100
Chicago, IL, 60606

*Counsel for Amicus Curiae*
*Richard K. Wagner*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2205

Short Caption: Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    See attached Exhibit A

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Greer, Burns & Crain Ltd.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        See attached Exhibit A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        See attached Exhibit A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Justin R. Gaudio    Date: 12/29/2025

Attorney's Printed Name: Justin R. Gaudio

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✓    No ☐

Address: 200 West Madison Street, Suite 2100, Chicago, IL, 60606

Phone Number: (312) 987-2922    Fax Number: (312) 360-9315

E-Mail Address: jgaudio@gbc.law

rev. 12/19 AK

# Exhibit A

## **Name of Every Party Represented by Attorney Justin R. Gaudio**

1. Richard K. Wagner

2. Strategic Alliance for Fair Ecommerce, NFP

3. Chrome Hearts LLC

4. Crye Precision LLC

5. Costa Del Mar, Inc.

6. Deckers Outdoor Corporation

7. Eye Safety Systems, Inc.

8. Harley-Davidson Motor Company, Inc.

9. Luxottica Group S.p.A.

10. Mob Entertainment, Inc.

11. Oakley, Inc.

12. Pit Viper LLC

13. Swarovski Aktiengesellschaft

## Disclosure Statement

Pursuant to Fed. R. App. P. 26.1 and Cir. R. 26.1, the undersigned counsel provides the following statements:

1. Richard K. Wagner is an individual. As such, Fed. R. App. P. 26.1 and Cir. R. 26.1 do not apply, and no disclosure statement is required on his behalf.

2. Strategic Alliance for Fair Ecommerce, NFP, is an Illinois non-for-profit corporation with no parent company and no publicly held corporation owning 10% or more of its stock.

3. Chrome Hearts LLC is a limited liability company. As such, Fed. R. App. P. 26.1 and Cir. R. 26.1 do not apply, and no disclosure statement is provided on its behalf.

4. Crye Precision LLC is a limited liability company. As such, Fed. R. App. P. 26.1 and Cir. R. 26.1 do not apply, and no disclosure statement is provided on its behalf.

5. Costa Del Mar, Inc. is a wholly-owned subsidiary of Luxottica Group S.p.A and Essilor International, which in turn are also wholly owned subsidiaries of EssilorLuxottica, a French corporation. EssilorLuxottica is listed on the Euronext Paris market and is included in the Euro Stoxx 50 and CAC 40 indices.

6. Deckers Outdoor Corporation ("Deckers") is a publicly traded corporation with no parent company. The following entities own 10% or more of Deckers'

stock: Fidelity Management & Research Co. LLC, Vanguard Fiduciary Trust Co., and BlackRock Advisors LLC.

7. Eye Safety Systems, Inc. ("ESS") is a subsidiary of Oakley, Inc., which is an indirect, wholly-owned subsidiary of Luxottica Group S.p.A and Essilor International, which in turn are also wholly owned subsidiaries of EssilorLuxottica, a French corporation. EssilorLuxottica is listed on the Euronext Paris market and is included in the Euro Stoxx 50 and CAC 40 indices. ESS further discloses that no publicly held corporation owns 10% or more of its stock.

8. Harley-Davidson Motor Company, Inc. ("HDMC") discloses that its parent company is Harley-Davidson, Inc., a publicly traded company. HDMC further discloses that Vanguard Fiduciary Trust Co. owns 10% or more of Harley-Davidson, Inc.'s stock.

9. Luxottica Group S.p.A. ("Luxottica") is a wholly-owned subsidiary of EssilorLuxottica. EssilorLuxottica is listed on the Euronext Paris market and is included in the Euro Stoxx 50 and CAC 40 indices. Luxottica further discloses that no publicly held corporation owns 10% or more of its stock.

10. Mob Entertainment, Inc. has no parent company and there is no publicly held corporation owning 10% or more of its stock.

11. Oakley, Inc. is a wholly-owned subsidiary of Luxottica Group S.p.A and Essilor International, which in turn are also wholly owned subsidiaries of EssilorLuxottica, a French corporation. EssilorLuxottica is listed on the

Euronext Paris market and is included in the Euro Stoxx 50 and CAC 40 indices.  Oakley further discloses that no publicly held corporation owns 10% or more of its stock.

12. Pit Viper LLC is a limited liability company. As such, Fed. R. App. P. 26.1 and Cir. R. 26.1 do not apply, and no disclosure statement is provided on its behalf.

13. Swarovski Aktiengesellschaft discloses that it has no parent company and there is no publicly held corporation owning 10% or more of its stock.

Dated: December 29, 2025

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Greer, Burns & Crain, Ltd.
200 W Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law

*Counsel for Amici Curiae*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-2205

Short Caption: Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
See attached Exhibit A

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Greer, Burns & Crain Ltd.

(3)  If the party, amicus or intervenor is a corporation:

i)  Identify all its parent corporations, if any; and

See attached Exhibit A

ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

See attached Exhibit A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Amy C. Ziegler          Date: 12/29/2025

Attorney's Printed Name: Amy C. Ziegler

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ✓

Address: 200 West Madison Street, Suite 2100, Chicago, IL, 60606

Phone Number: (312) 987-2926          Fax Number: (312) 360-9315

E-Mail Address: aziegler@gbc.law

rev. 12/19 AK

# Exhibit A

## Name of Every Party Represented by Attorney Amy C. Ziegler

1.  Richard K. Wagner

2.  Strategic Alliance for Fair Ecommerce, NFP

3.  Chrome Hearts LLC

4.  Crye Precision LLC

5.  Costa Del Mar, Inc.

6.  Deckers Outdoor Corporation

7.  Eye Safety Systems, Inc.

8.  Harley-Davidson Motor Company, Inc.

9.  Luxottica Group S.p.A.

10. Mob Entertainment, Inc.

11. Oakley, Inc.

12. Pit Viper LLC

13. Swarovski Aktiengesellschaft

# Disclosure Statement

Pursuant to Fed. R. App. P. 26.1 and Cir. R. 26.1, the undersigned counsel provides the following statements:

1. Richard K. Wagner is an individual. As such, Fed. R. App. P. 26.1 and Cir. R. 26.1 do not apply, and no disclosure statement is required on his behalf.

2. Strategic Alliance for Fair Ecommerce, NFP, is an Illinois non-for-profit corporation with no parent company and no publicly held corporation owning 10% or more of its stock.

3. Chrome Hearts LLC is a limited liability company. As such, Fed. R. App. P. 26.1 and Cir. R. 26.1 do not apply, and no disclosure statement is provided on its behalf.

4. Crye Precision LLC is a limited liability company. As such, Fed. R. App. P. 26.1 and Cir. R. 26.1 do not apply, and no disclosure statement is provided on its behalf.

5. Costa Del Mar, Inc. is a wholly-owned subsidiary of Luxottica Group S.p.A and Essilor International, which in turn are also wholly owned subsidiaries of EssilorLuxottica, a French corporation. EssilorLuxottica is listed on the Euronext Paris market and is included in the Euro Stoxx 50 and CAC 40 indices.

6. Deckers Outdoor Corporation ("Deckers") is a publicly traded corporation with no parent company. The following entities own 10% or more of Deckers'

stock: Fidelity Management & Research Co. LLC, Vanguard Fiduciary Trust Co., and BlackRock Advisors LLC.

7. Eye Safety Systems, Inc. ("ESS") is a subsidiary of Oakley, Inc., which is an indirect, wholly-owned subsidiary of Luxottica Group S.p.A and Essilor International, which in turn are also wholly owned subsidiaries of EssilorLuxottica, a French corporation. EssilorLuxottica is listed on the Euronext Paris market and is included in the Euro Stoxx 50 and CAC 40 indices. ESS further discloses that no publicly held corporation owns 10% or more of its stock.

8. Harley-Davidson Motor Company, Inc. ("HDMC") discloses that its parent company is Harley-Davidson, Inc., a publicly traded company. HDMC further discloses that Vanguard Fiduciary Trust Co. owns 10% or more of Harley-Davidson, Inc.'s stock.

9. Luxottica Group S.p.A. ("Luxottica") is a wholly-owned subsidiary of EssilorLuxottica. EssilorLuxottica is listed on the Euronext Paris market and is included in the Euro Stoxx 50 and CAC 40 indices. Luxottica further discloses that no publicly held corporation owns 10% or more of its stock.

10. Mob Entertainment, Inc. has no parent company and there is no publicly held corporation owning 10% or more of its stock.

11. Oakley, Inc. is a wholly-owned subsidiary of Luxottica Group S.p.A and Essilor International, which in turn are also wholly owned subsidiaries of EssilorLuxottica, a French corporation. EssilorLuxottica is listed on the

Euronext Paris market and is included in the Euro Stoxx 50 and CAC 40 indices. Oakley further discloses that no publicly held corporation owns 10% or more of its stock.

12. Pit Viper LLC is a limited liability company. As such, Fed. R. App. P. 26.1 and Cir. R. 26.1 do not apply, and no disclosure statement is provided on its behalf.

13. Swarovski Aktiengesellschaft discloses that it has no parent company and there is no publicly held corporation owning 10% or more of its stock.

Dated: December 29, 2025             Respectfully submitted,

/s/ Amy C. Ziegler
Amy C. Ziegler
Justin R. Gaudio
Greer, Burns & Crain, Ltd.
200 W Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law

*Counsel for Amici Curiae*

# **TABLE** OF **CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

INTEREST OF AMICUS ............................................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

ARGUMENT ............................................................................................................... 3

   I.    China Allows For Email Service On Parties In Cases Involving
   Contracting States To The Hague Service Convention ......................................... 3

   II.    China Has Not Indicated That Email Service Falls Within The Ambit Of
   "Postal Channels" Under Article 10(a) ................................................................. 9

   III.   To The Extent It Provides Context, Chinese Civil Procedure Does Not
   Prohibit Electronic Service ................................................................................. 13

      A.    Article 294 of Chinese Civil Procedure Law Does not Specifically
      Contemplate or Prohibit Service by Email from Abroad ................................. 14

      B.    Under the Chinese Civil Procedure Doctrine of "Deemed Service," a Party
      from a Contracting State to the Hague Service Convention may be Deemed
      Served if the Party were to Challenge the Service in Chinese Court even if the
      Service was otherwise Improper ..................................................................... 16

   IV.   Contracting States May Order Substituted Service By Methods Not
   Provided For In The Hague Service Convention ................................................. 17

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Compañía De Inversiones Mercantiles v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269 (10th Cir. 2020) ............................................................. 14

*Dongguan Yixin Disk Co., Ltd v. Zhejiang Jinma Industrial Co., Ltd.,* (2018) Yue Min Zhong No. 726 ......................................................................................... 16

*Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries OPEC*, 766 F.3d 74 (D.C. Cir. 2014)......................................................................................... 14

*Hangzhou Chic Intelligent Tech. Co. v. P'ships, et al.*, 2021 U.S. Dist. LEXIS 64064  (N.D. Ill. April 1, 2021) .............................................................................. 6

*Milwaukee Elec. Tool Corp. v. Individuals, et al.*, 2025 U.S. Dist. LEXIS 216016 (N.D. Ill. Nov. 3, 2025)............................................................................................ 6

*Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) .................... 5, 14

*Xuzhou Sentife Fragrance Technology Co., Ltd. and American Velex Products Company v. Beijing Qizhihaotian Technology Co., Ltd, Hangzhou Alibaba Advertising Co., Ltd Xuzhou Sentife Fragrance Technology Co., Ltd. and American Velex Products Company v. Beijing Qizhihaotian Technology Co., Ltd, Hangzhou Alibaba Advertising Co., Ltd. and Zhejiang Taobao Network Co., Ltd.,* (2019) Zhejiang 01 Min Zhong No. 10636 .................................................... 16

**Other Authorities**

2022 Questionnaire relating to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters............................................................................................................... 2, 10

Certain Provisions of the Supreme People's Court on Issues Concerning Service of Judicial Documents in Civil or Commercial Cases Involving Foreign Elements, promulgated by Supreme People's Court on December 29, 2020 and effective from January 1, 2021, Fa Shi [2020] No. 20 ......................................... 16

Civil Procedure Law of the People's Republic of China, promulgated by the National People's Congress on and effective from April 9, 1991, latest amended on September 1 , 2023 and effective from January 1, 2024, Order No. 11 of the President of the People's Republic of China ............................................... passim

Constitution of the People's Republic of China, promulgated by the National People's Congress on December 4, 1982, last amended on and effective from

March 11, 2018, Announcement No. 1 of the National People's Congress of the People's Republic of China ................................................................ 12

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (1969) ........................................................................................... passim

Decision of the Standing Committee of the National People's Congress on Approving Accession to the Convention on the Service of Judicial and Extrajudicial Documents Abroad in Civil or Commercial Matters, promulgated on March 2, 1991 ................................................................................. 11

Hague Conference on Private International Law, Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Service, Taking of Evidence and Access to Justice Conventions (2024) ................................................................... 9

Law of the People's Republic of China on the Procedure of the Conclusion of Treaties, promulgated by the Standing Committee of the National People's Congress on and effective from December 28, 1990 ........................................... 13

Mo, H., 2001. The Contemporary Chinese Dictionary ....................................... 12

Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on the Operation of the 1965 Service Convention (2025). 17, 18

Special Commission Meetings, Prel. Doc. No. 13 of June 2024 ¶ 21 ................. 10

Special Commission Meetings, Prel. Doc. No. 2 REV of June 2024 ................... 10

Richard K. Wagner, *Proving Chinese Law in the Courts of the United States: Surveying and Critiquing the Article 277 Cases*, 188 Amicus Curiae Series 2 Vol. 2 (2020) ...................................................................................... 15

**Rules**

Federal Rule of Civil Procedure 4(f) ............................................... passim

**INTEREST OF AMICUS**

Amicus, Richard K. Wagner ("Amicus"),[1] is Of Counsel to Allen Overy Shearman Sterling in Hong Kong and has been working on issues involving transnational litigation and its interplay with China-based defendants, Chinese law and practice, and the Hague Service Convention for over twenty-five years. As part of his practice, Amicus also serves as a Chinese Law expert in U.S. and foreign proceedings. Amicus is admitted in Wisconsin and Illinois, was registered as a Foreign Lawyer with China's Ministry of Justice (2011-2012; 2016-2019; 2023-2024), and is currently a registered foreign lawyer with the Law Society of Hong Kong (2002-2004; 2021-2022; 2024-present).

Amicus has no financial or personal interest in the outcome of this appeal. No party's counsel authored the brief, in whole or part, and no party or a party's counsel contributed money that was intended to fund preparing or submitting the brief. No person—other than the Amicus or his counsel—contributed money that was intended to fund preparing or submitting the brief.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Amicus would like to provide additional context on three points for the Court's Rule 4(f)(3) analysis.

The first is whether, for purposes of a Rule 4(f)(3) analysis, China views the Hague Service Convention as prohibiting email service in cases before its courts involving parties who are from Contracting States to the Hague Service Convention.

---

[1] A Curriculum Vitae of Amicus is submitted as Exhibit 10 to the Addendum attached hereto.

In summary, China does not view the Hague Service Convention as generally prohibiting email service and permits email service on parties from Contracting States to the Hague Service Convention.

The second is whether China considers email as falling within the ambit of "postal channels" for purposes of Article 10(a). While there has been no formal interpretation on this issue, China did not specifically indicate that it views "postal channels" under Article 10(a) to encompass email in its response to the 2022 Questionnaire relating to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters[2] ("Questionnaire Relating to Service Convention"). Further, the Hague Service Convention's Article 10(a) did not contemplate email at the time it was enacted in 1965 and the Chinese language term used in the Chinese version of the Hague Service Convention would appear to be more narrowly confined to official postal channels, not private means of communication such as email, text messaging, or other electronic communications methods. Amicus is aware of no binding interpretation that has been issued on the meaning of Article 10(a) (and whether "postal channels" should include email) from China's treaty making and interpreting organs of government.

The third is whether Chinese domestic law expressly contemplates service by email from abroad. As a preliminary matter and addressed below, Chinese domestic law is irrelevant to a Rule 4(f)(3) analysis. In fact, Circuit Courts to

---

[2] https://assets.hcch.net/docs/f26d618c-0e2a-4ab4-9d43-e60a30674558.pdf.

consider the issue concluded that Rule 4(f)(3) permits District Courts to authorize a method of service in contravention of a country's laws. In Amicus' view, a country's domestic law only affects whether a judgment premised on that method of service is enforceable in that other country (for example, service under Rule 4(f)(2)). It does not affect whether service is valid under Rule 4(f)(3) and complies with due process under the U.S. Constitution. Nonetheless, this issue has been raised by other U.S. courts as collateral to the question of alternative service on Chinese defendants. In Amicus' view, China has not, as a general matter, contemplated service by email from abroad from its law-making institutions. The provision of Chinese civil procedure that has been raised by other U.S. courts in this context is Article 294 (formerly enumerated Article 284 and Article 277), but this provision does not contemplate email service.

Finally, Amicus explains that the Hague Convention contemplates substituted service when a contracting state court determines that it is appropriate, even when the Hague Convention may apply.

## ARGUMENT

### I. China Allows For Email Service On Parties In Cases Involving Contracting States To The Hague Service Convention

China's courts of general jurisdiction are its People's Courts, under the supervision of China's Supreme People's Court (SPC) in Beijing. For parties from different countries, such as parties from Contracting States to the Hague Service Convention, Article 283 of the PRC Civil Procedure Law (China's comparable provision to FRCP Rule 4(f)) is the applicable provision. Even if both parties in a

3

Chinese lawsuit are from Contracting States, service can be effected in numerous ways. Article 283 enumerates a number of different avenues that the Chinese court may pursue to effect service. Article 283 provides, in translation:

> Service of litigation documents by People's Courts on litigants without a domicile in the People's Republic of China **may adopt** the following methods:
> (1) Service pursuant to the methods stipulated in an international treaty between the country of the party being served and the People's Republic of China or an international treaty for which the country of the party being served and the People's Republic of China are both participants;
> (2) Service through diplomatic channels;
> (3) Where the party being served is of Chinese nationality, the People's Court may entrust the embassy or consulate of the People's Republic of China based in the country where the party being served resides to serve on its behalf;
> (4) Serving the documents on the agent ad litem entrusted by the party being served in the case;
> (5) Serving the documents on the wholly owned enterprise, representative organization, branch organization established in the People's Republic of China by the party being served or business agent of the party being served which has the right to receive service of documents;
> (6) Serving the documents on the legal person or other organization where the party being served is a foreigner or a stateless person, who acts as the legal representative or key person-in-charge of a legal person or any other organization established in the People's Republic of China, and is the co-defendant with the said legal person or other organization;
> (7) Serving the documents on the legal representative or key person-in-charge where the party being served is a foreign legal person or any other organization, and its legal representative or key person-in-charge is in the People's Republic of China;
> (8) Where the laws of the country where the party being served resides permit service of documents by mail, the documents may be served by mail; upon expiry of a three- month period from the date of mailing and the acknowledgement of service is not being returned, but the documents may be deemed served based on the circumstances, the documents shall be deemed served on the date of expiry of the period;
> (9) *Service via an electronic method for which receipt by the party being served can be confirmed, except as prohibited by the laws of the country where the party being served resides. and*

(10) Service by any other methods agreed by the party being served, except prohibited by the laws of the country where the party being served resides. Where the documents cannot be served via the aforesaid methods, the documents shall be served by way of a public announcement and shall be deemed served upon expiry of a sixty-day period from the date of public announcement.

(emphasis added).

Article 283 states the court "may adopt" one of several methods to effect service. Among the methods allowed is service by email with return receipt. No consent is required to effect electronic service under Article 283(9). Further, like Rule 4(f)(3), there is no required order or hierarchy in which the Chinese court must attempt to effect service under Article 283. *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1)"). Amongst the various methods identified under Article 283, and with the exception of service by publication, which is viewed as a last resort, all other methods of service provided by Article 283 are permitted in any order in the Chinese court's discretion.[3]

---

[3] Article 6 and Article 11 of the *Certain Provisions of the Supreme People's Court on Issues Concerning Service of Judicial Documents in Civil or Commercial Cases Involving Foreign Elements*, promulgated by Supreme People's Court on August 10, 2006, *Fa Shi* [2006] No. 5; revised in 2020 and effective from January 1, 2021, *Fa Shi* [2020] No. 20. Article 6 provides, in translation: "[i]n the event that the people's court serves a judicial document on a party having no domicile in the territory of the People's Republic of China, if the country of the party has concluded any judicial assistance agreement with the People's Republic of China, the judicial document **may** be served in accordance with the provisions of the judicial assistance agreement; if the country of the party is a member state of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, the judicial document **may** be served by the means specified therein [Emphasis added.]." Article 11 provides that "[e]xcept for the way of public notice, a people's court may serve the judicial documents on the person to be served in several ways simultaneously, while the date of receipt shall be determined by the way that first achieves the service." Addendum, Ex. 2.

Given the flexibility provided by Article 283, if a Chinese court were faced with special circumstances (such as the need for expedited notice) in a case with parties from Contracting States to the Hague Service Convention, the Chinese court would not need to pursue service via the Hague Service Convention; the court could effect service via email.[4] Put another way, if a Chinese court were faced with a situation similar to that in the underlying TRO proceedings before the District Court, the Chinese court might utilize email as provided under Article 283(9) to effect service on the foreign party. Indeed, Courts have recognized that if China permits electronic service of process on defendants located outside of China, it is difficult for China to object to U.S. courts ordering the same for defendants located in China. *See, e.g., Milwaukee Elec. Tool Corp. v. Individuals, et al.*, 2025 U.S. Dist. LEXIS 216016, at *9 (N.D. Ill. Nov. 3, 2025); *Hangzhou Chic Intelligent Tech. Co. v. P'ships, et al.*, 2021 U.S. Dist. LEXIS 64064, at *11 (N.D. Ill. April 1, 2021).

In 2022, the SPC issued meeting minutes to courts on the issue of electronic service in international cases.[5] The meeting minutes instruct the courts not to serve by electronic means if such would violate the law of the country of the foreign party to be served. To promote judicial efficiency, Item 11 of these meeting minutes provides that courts should take the view that if the party to be served is from a Contracting State that has made a reservation to Article 10(a) of the Hague Service

---

[4] In international intellectual property cases involving preliminary injunctions (行为保全, in Chinese), the Chinese courts also serve process through Article 283, which allows the court flexibility to effect service under circumstances appropriate for the case, including email service with return receipt under Article 283(9).

[5] *Minutes of the National Symposium on Foreign-related Commercial and Maritime Trial Work of Courts*, published on January 24, 2022 ("Meeting Minutes"). Addendum, Ex. 3.

Convention, the Chinese court effecting service should presume that the internal law of the Contracting State does not allow for service by electronic means.  Item 11 of the Meeting Minutes provides in English translation, emphasis added:

11. [Electronic Service]

When a people's court serves a judicial document on a person to be served who has no domicile within the territory of the People's Republic of China, *if the law of the country where the person to be served is located does not prohibit electronic service, the people's court may adopt electronic service* in accordance with Article [283] of the Civil Procedure Law, unless the electronic service is against an international treaty concluded or acceded to by China.

In the event that the *country where the person to be served is located is a member state of the Hague Service Convention and objects to the service by mail* under the Convention, *it shall be presumed that the country does not allow electronic service*, and the people's court shall not adopt electronic service.

(emphasis added).

Consistent with promoting judicial efficiency, the guidance (akin to administrative guidance) directs the People's Courts to adopt a simplistic approach—instead of trying to assess the internal law of each country and that country's approach to electronic service, the People's Court should simply look to see whether the country is a Contracting State to the Hague Service Convention and determine whether that country had made a reservation to Article 10(a).   If so, then the serving court may presume that the country does not allow electronic service, and thus, not serve the documents by electronic means.  Under such circumstances, and if the presumption is not rebutted, the People's Court should

then adopt one of the other methods articulated in Article 283, with public announcement as a last resort.[6]

However, while the guidance reflected in Item 11 of the Meeting Minutes assists the People's Court with having to make difficult determinations of foreign law, it is not designed to require the People's Court to effect service pursuant to the Hague Service Convention's Central Authority mechanism or one of the other methods specifically enumerated in the Hague Service Convention if the party to be served is from a Contracting State. The Chinese court could still employ one of the other methods contained in Article 283 of the PRC Civil Procedure Law.

Moreover, the SPC Meeting Minutes appear to suggest that from the perspective of the SPC (China's highest court), China does not view the Hague Service Convention as generally prohibiting email service. If the party to be served was from a Contracting State that had not made a reservation to Article 10(a), there would be no presumption that the internal law of that Contracting State prohibited electronic service. Service could be made on that party via email or through any of the other methods enumerated in Article 283 of the PRC Civil Procedure Law, even methods that were not specifically enumerated in the Hague Service Convention.

---

[6] Ultimately, this is by public announcement under Article 283, paragraph 2. Article 283, paragraph 2 of the *Civil Procedure Law of the People's Republic of China* provides, in translation: "Where the documents cannot be served via the aforesaid methods, the documents shall be served by way of a public announcement and shall be deemed served upon expiry of a sixty-day period from the date of public announcement." Addendum, Ex. 4.

## II. China Has Not Indicated That Email Service Falls Within The Ambit Of "Postal Channels" Under Article 10(a)

While China has made a reservation to the Hague Service Convention's Article 10(a)'s "freedom to send by postal channels," it has provided no official interpretation as to whether such reservation should apply to email.  An official interpretation could be made by means of China's organs responsible for interpreting treaties, the National People's Congress ("NPC") (in Chinese, 全国人民代表大会) and the Standing Committee of the People's Congress (in Chinese, 全国人大常务委员会).  In addition, and while China has made updates to its Country Profile on the HCCH website by providing an updated "Most Frequently Asked Questions and Answers[7]" document, there is no mention of an objection to email.  *See* China - Central Authority & practical information on HCCH website[8].  Contracting parties are encouraged to update their Country Profiles, declarations, reservations, and notifications.  *See* Hague Conference on Private International Law, Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Service, Taking of Evidence and Access to Justice Conventions (2024) [9] ("2024 Special Commission"), ¶¶ 38, 42, 49, 54, 75, 85, 93, 106-07, 134-35.  These statements can be as qualified, specific, or broad as a country sees fit.

---

[7] https://assets.hcch.net/docs/5bbc302d-532b-40b1-9379-a2ccbd7479d6.pdf;
https://assets.hcch.net/docs/5bbc302d-532b-40b1-9379-a2ccbd7479d6.pdf.
[8] https://www.hcch.net/en/states/authorities/details3/?aid=243.
[9] https://assets.hcch.net/docs/6aef5b3a-a02c-408f-8277-8c995d56f255.pdf.

Given that U.S. district courts have been authorizing email service on China-based defendants for over a decade, one might expect China to update its declaration to Article 10(a) to provide its view on the issue, particularly if it had formal reservations to email service by private parties pursuant to court authorization in overseas cases.

Amici for Appellant rely on the position taken by the United States on whether "postal channels" under Article 10(a) of the Hague Service Convention encompasses email. [Dkt No. 23, 17] (citing United States, Responses to Questionnaire Relating to the Service Convention ¶ 23.3). However, in the view of Amicus, the views of a U.S. government agency have limited relevance in this context. The more relevant question is whether China's objection to "postal channels" in 1965 could be interpreted today to encompass electronic communications like email. When responding to the same questionnaire cited by Amici, China did not give any indication that it views "postal channels" to encompass email. China, Responses to Questionnaire Relating to the Service Convention ¶ 23.3.[10] Indeed, the majority of respondents indicated that they do not view "postal channels" under Article 10(a) of the Hague Service Convention to encompass email, and rejected that the two are analogous. Prel. Doc. No. 13 of June 2024 ¶ 21[11]; Prel. Doc. No. 2 REV of June 2024 at 58-60.[12]

---

[10] https://assets.hcch.net/docs/585e8512-8fc9-4fe9-8fe1-b61673d31b8f.pdf.
[11] https://assets.hcch.net/docs/a032f13b-74a0-4ddc-ae0f-151b17fcd6d1.pdf.
[12] https://assets.hcch.net/docs/783bc7ff-ab8e-46bd-a386-42131f316f4b.pdf.

Moreover, at the time the Hague Service Convention was enacted (1965) and China acceded to it (1991), electronic service like email was not contemplated because modern email did not yet exist. Article 10(a) concerns sending judicial documents by postal channels, a means of transmission that is often under the control of the sovereign country in question—e.g., the United States Postal Service, a branch of the federal government, one of several federal agencies explicitly authorized by the U.S. Constitution. This is perhaps one reason to explain why a country might object to service by postal channels, but not object to service by email; the foreign sovereign would not necessarily be involved in transmitting the judicial documents by email.

China ratified the Hague Service Convention by way of the NPC Standing Committee's Decision on Ratifying the Accession to the Hague Service Convention on March 2, 1991 (the "Decision"). Pursuant to Item 3 of the introductory section of the Decision, China opposed effecting service within the territory of the PRC by a method proscribed in Article 10 of the Hague Service Convention. Following the Decision, the 1991 PRC Civil Procedure Law was enacted by the NPC on April 9, 1991. The PRC government deposited its accession document on May 3, 1991. Indeed, and consistent with a finding that the prohibited channel for cross-border transmission in question was sovereign, in China's official translation of the Hague Service Convention, the term used for postal channels in Article 10(a) is "邮寄" (literally, "postal dispatch"), not "邮件" (literally, "mail"). Using the term "邮件" ("mail") might have been more conducive to an interpretation of postal channels

that would have included something like email in later years (which in Chinese is "电子邮件" – literally, "electronic mail"), but that is not the term that was used.[13]  In Chinese, "邮寄" ("postal dispatch") is commonly used when referring to official postal channels and people are unlikely to associate this word with email.[14]  Put another way, Article 10(a) contemplates an alternative channel for service under the auspices of a foreign sovereign, and China was making a reservation to service that would take place by the foreign sovereign's official postal service.

Strictly speaking, in the Chinese legal system, the power to interpret laws resides with the NPC and the Standing Committee of the People's Congress.[15]  The Chinese Ministry of Foreign Affairs also plays an important role in treaty

---

[13] Article 10(a) provides in the official Chinese translation – "如送达目的地国不表异议，本公约不妨碍：（一）通过邮寄途径直接向身在国外的人送交司法文书的自由". In Chinese, this provision does not appear to contemplate service on companies or other organizations.  A literal reading of China's official translation suggests Article 10(a) only concerns natural persons.  Addendum, Ex. 5.

[14] In Chinese dictionaries, the term "邮寄" is defined as "delivered by post office (通过邮局寄递)." *See,* e.g., Mo, H., 2001. *The Contemporary Chinese Dictionary.*  Addendum, Ex. 6.

[15] Article 62 and 67 of the *Constitution of the People's Republic of China,* promulgated by the National People's Congress on December 4, 1982; last amended on and effective from March 11, 2018, Announcement No. 1 of the National People's Congress of the People's Republic of China.  Article 62 provides, in translation: "[t]he National People's Congress exercises the following functions and powers: … (3) to enact and amend basic laws governing criminal offences, civil affairs, the State organs and other matters".  Article 67 provides, in translation: "[t]he Standing Committee of the National People's Congress exercises the following functions and powers: … (4) to interpret laws;" Addendum, Ex. 7. Article 48 of the *Legislation Law of the People's Republic of China*, promulgated by the National People's Congress on March 15, 2000, Order No.31 of the President of the People's Republic of China, amended on March 13, 2023 and effective from March 15, 2023, Order No.3 of the President of the People's Republic of China. Article 48 provides, in translation: "The power of legal interpretation belongs to the Standing Committee of the National People's Congress. A law shall be interpreted by the Standing Committee of the National People's Congress if: (1)  the specific meaning of a provision needs to be further defined; or (2)  after its enactment, new developments make it necessary to define the basis on which to apply the law." Addendum, Ex. 8.

formation. *See*, e.g., Article 5 of the *Law of the People's Republic of China on the Procedure of the Conclusion of Treaties*. Addendum, Ex. 1.

However, even though it is China's highest court, the SPC is not the final arbiter on Chinese law; nor does it generally have the power to interpret treaties. The SPC has over 200 judges, and operates in certain respects like an administrative agency. In addition to formal judicial interpretation work, the SPC also issues various forms of administrative guidance to the lower courts, some of which are designed to make handling cases easier. Item 11 from the SPC Meeting Minutes discussed above is not classified as a judicial interpretation but is more akin to administrative guidance from the SPC for lower courts in handling complex international cases. In any event, it is not a formal interpretation as to the meaning of Article 10(a) as has been suggested by Amici for the Appellant. [Dkt. No. 23, 18 n.6].

In summary, neither the NPC nor the Standing Committee of the People's Congress (China's organs responsible for interpreting treaties) have made any interpretation as to whether China's reservation to Article 10(a) of the Hague Service Convention includes email. Put another way, from the perspective of the Hague Service Convention, as it relates to the U.S. and China, email service is not expressly prohibited.

## III. To The Extent It Provides Context, Chinese Civil Procedure Does Not Prohibit Electronic Service

Amicus submits that Chinese Civil Procedure Law is not relevant for evaluating whether service was proper under Rule 4(f)(3). *See Rio Props.*, 284 F.3d

at 1014; *see also Compañía De Inversiones Mercantiles v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1294-95 (10th Cir. 2020); *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries OPEC*, 766 F.3d 74, 81-82 (D.C. Cir. 2014).  Nonetheless, Amicus provides this Court additional information on Chinese law below to explain why, even if it was relevant, the positions taken by Amici Hangzhou Longqi Network Technology Co., Ltd. and Hangzhou Qingpeng Technology Co. Ltd. are incorrect.

A.     **Article 294 of Chinese Civil Procedure Law Does not Specifically Contemplate or Prohibit Service by Email from Abroad**

While not specifically relevant to a Rule 4(f)(3) analysis, since other courts have been interested in this issue, Amicus offers a brief discussion of whether Chinese domestic law specifically contemplates service by email from abroad under its Civil Procedure Law.  The provision most often discussed in this context is Article 294 of China's Civil Procedural Law.

Article 294 provides in English translation:

Any request for judicial assistance shall be made through channels prescribed by [relevant] international treaties concluded or acceded to by the People's Republic of China; or in the absence of such a treaty, any request for judicial assistance shall be made through diplomatic channels.
A foreign embassy or consulate in the People's Republic of China may serve process on and investigate and collect evidence from its citizens but shall not violate the laws of the People's Republic of China and shall not take compulsory measures.
Except for the circumstances in the preceding paragraph, *no foreign authority or individual shall*, without permission from the competent authorities of the People's Republic of China, *serve process* or investigate and collect evidence

14

*within the territory of the People's Republic of China* (在中华人民共和国领域内, in Chinese).

(emphasis added).

The language used in Article 294 has remained the same since it was promulgated in 1991 as Article 263.[16]  Put another way, while the PRC Civil Procedure Law has been revised five times since 1991 (including provisions for electronic service in 2012 and 2023), the text of Article 294 has not changed since it was first promulgated.  At the time Article 294 was first promulgated as Article 263, email was not contemplated for service.  Moreover, Article 294's prohibition in Article 294(3) uses the phrase "within the territory of the PRC" where the service is performed by a foreign entity.  As such, while Article 294 would arguably prohibit a foreign process server from physically serving process within the territory of the PRC, by its plain terms it does not prohibit a PRC defendant from 1) waiving service, 2) being served from an offshore electronic platform, or 3) being served via email from overseas.

Finally, since it was first promulgated in 1991 as Article 263, the provision has been contained in those sections of the PRC Civil Procedure Law concerning judicial assistance.  There is no express penalty for violating Article 294 itself.[17]  Unlike many other areas of civil procedure, including those concerning the law of

---

[16] This provision has gone by different numbers over the years (most recently Article 284 and 277), but its text has remained unchanged since it was first promulgated in 1991.  *See generally* Richard K. Wagner, *Proving Chinese Law in the Courts of the United States: Surveying and Critiquing the Article 277 Cases,* 188 Amicus Curiae Series 2 Vol. 2, at 192 (2020).
[17] *See* Richard K. Wagner, *supra*, at 206-207.

evidence and service of process, there are no judicial interpretations that interpret the text. Additionally, Amicus is aware of only three Chinese cases which have cited the provision, none of which are particularly relevant to the situation here.[18] In the view of Amicus, Article 294 does not specifically contemplate or prohibit electronic mail service.

> **B. Under the Chinese Civil Procedure Doctrine of "Deemed Service," a Party from a Contracting State to the Hague Service Convention may be Deemed Served if the Party were to Challenge the Service in Chinese Court even if the Service was otherwise Improper**

China has also developed a doctrine of "deemed service" (视为送达, in Chinese) to allow for flexibility when the courts are faced with special circumstances. Under Article 13 of the *Certain Provisions of the Supreme People's Court on Issues Concerning Service of Judicial Documents in Civil or Commercial Cases Involving Foreign Elements*, *Fa Shi* [2020] No. 20, a Chinese court may find that a party has been served even if no service receipt has been provided by the

---

[18] *Xuzhou Sentife Fragrance Technology Co., Ltd. and American Velex Products Company v. Beijing Qizhihaotian Technology Co., Ltd, Hangzhou Alibaba Advertising Co., Ltd. and Zhejiang Taobao Network Co., Ltd.* ((2019) Zhejiang 01 Min Zhong No. 10636 (Chinese law firm entrusted to collect evidence in the PRC was not excluded under Article 277 (now Article 294));
*Dongguan Yixin Disk Co., Ltd v. Zhejiang Jinma Industrial Co., Ltd.* ((2018) Yue Min Zhong No. 726 ( Article 277 (now Article 294) did not apply to actions by employee who had applied for notarization in the PRC);
*Case of Mr./Ms. Song Applying for Recognition and Enforcement of a U.S. Court Civil Judgment* ((2021) Zhe 06 Xie Wai Ren No.1), released on April 8, 2024 as Case No.2 among the 2023 Annual Top Ten Typical Foreign-related and Hong Kong, Macao and Taiwan-related Commercial and Maritime Cases of Zhejiang Courts (court rejected enforcement of U.S. court judgement finding service by special process server violated Article 284 (now Article 294)). Cases provided upon request.

defendant in an international case if the circumstances suggest that the defendant is aware of the litigation.[19]  Article 13 provides in translation:

> Where the person to be served fails to perform the procedure for signing the receipt of the judicial documents served by a people's court, the service shall still be deemed as having been achieved under any of the following circumstances:
> (1) The person to be served has mentioned to the people's court the content of the judicial documents which have been served in writing;
> (2) The person to be served has made performance pursuant to the content of the judicial documents which have been served; or
> (3) Other circumstances in which the service can be deemed as having been achieved.

Under the logic of Article 13, if a party from a Contracting State to the Hague Service Convention had been served through a technically improper means, but that party raised a service objection in the Chinese court, the Chinese court could find that the foreign defendant had been served anyway.  The Chinese court would "deem" the service as having been achieved.  This doctrine developed in Chinese courts to deter foreign defendants in international cases from making overly technical procedural challenges.

## IV.  Contracting States May Order Substituted Service By Methods Not Provided For In The Hague Service Convention

"The Convention does not preclude the use of other forms of transmission that are not provided for in the Convention, including transmission by electronic means."  Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on the Operation of the 1965 Service Convention (2025)

---

[19] Promulgated by Supreme People's Court on August 10, 2006, revised in 2020 and effective from January 1, 2021.

("Practical Handbook"), ¶ 482. "Substituted service" as used in the Practical Handbook "refers to the situation where a document is required to be served for the purpose of legal proceedings before a court, and that court directs that the use of some alternative means of bringing the document to the attention of the party to be served will constitute, or be treated as, valid service." *Id.*, ¶ 96. "In the United States, this type of service is called 'alternative service[.'] Fed. R. Civ. Pro. 4(f)(3) allows for service 'by other means not prohibited by international agreement, as the court orders.'" *Id.*, n. 87. Where provided for by a Contracting State's laws, *id.*, ¶ 96, the Hague Service Convention does not displace a Court's ability to order "substituted service" when "service may be impracticable or impossible," *id.*, ¶ 95, or when it is otherwise justified. *Id.*, ¶ 96. For example, "[c]ases where the proceedings have been begun with an injunction application, which is to be served immediately or in short order on the respondent" may justify the need for substituted service. *Id.*, ¶ 103.

## CONCLUSION

Amicus respectfully requests the Court take into account the above discussion in making its determination in this appeal on issues concerning service on China based defendants.

Dated: December 29, 2025

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Greer, Burns & Crain, Ltd.
200 W Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law

*Counsel for Amicus Curiae*
*Richard K. Wagner*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE- STYLE REQUIREMENTS

The undersigned certifies on **December 29, 2025**, that

1. This document complies with the type-volume limit of Seventh Circuit Rule 29 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 5,539 words.

2. This document complies with Fed. R. App. P. 27(d)(1)(E) because it complies with the typeface and the type-style requirements of Seventh Circuit Rule 32(b) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 Version 2505 in 12-point and Century Schoolbook Font, with footnotes in 11-point.

Dated this 29th day of December 2025.          Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Greer, Burns & Crain, Ltd.
200 W Madison Street, Suite 2100
Chicago, IL, 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law

*Counsel for Amicus Curiae*
*Richard K. Wagner*

## CERTIFICATE OF SERVICE

The undersigned certifies that on **December 29, 2025**, an electronic copy of the foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

By: /s/ Justin R. Gaudio

# ADDENDUM

# Table of Contents*

| | | |
|---|---|---|
| Ex. 1 | *Law of the People's Republic of China on the Procedure of the Conclusion of Treaties* | p. 3 |
| Ex. 2 | *Certain Provisions of the Supreme People's Court on Issues Concerning Service of Judicial Documents in Civil or Commercial Cases Involving Foreign Elements*, promulgated by Supreme People's Court on August 10, 2006, *Fa Shi* [2006] No. 5; revised in 2020 and effective from January 1, 2021, *Fa Shi* [2020] No. 20 | p. 7 |
| Ex. 3 | *Minutes of the National Symposium on Foreign-related Commercial and Maritime Trial Work of Courts*, published on January 24, 2022 | p. 12 |
| Ex. 4 | *Civil Procedure Law of the People's Republic of China* | p. 14 |
| Ex. 5 | China's Official Version of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (1969) | p. 19 |
| Ex. 6 | Mo, H., 2001. *The Contemporary Chinese Dictionary* | p. 28 |
| Ex. 7 | *Constitution of the People's Republic of China* | p. 30 |
| Ex. 8 | *Legislation Law of the People's Republic of China*, promulgated by the National People's Congress on March 15, 2000, Order No.31 of the President of the People's Republic of China, amended on March 13, 2023 and effective from March 15, 2023, Order No.3 of the President of the People's Republic of China | p. 38 |
| Ex. 9 | Hague Conference on Private International Law, Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Service, Taking of Evidence and Access to Justice Conventions (2024) | p. 40 |
| Ex. 10 | Curriculum Vitae of Richard K. Wagner | p. 47 |

*Exhibits 1-9 only include the relevant portions of the materials cited in the corresponding Amicus Brief. Full versions of the cited materials are available upon request.

# Exhibit 1

# 中华人民共和国缔结条约程序法

| | |
|---|---|
| 发 文 机 关： 全国人民代表大会常务委员会 | **Promulgated by：** Standing Committee of the National People's Congress |
| 发 布 日 期： 1990.12.28 | **Promulgation Date：** 1990.12.28 |
| 生 效 日 期： 1990.12.28 | **Effective Date：** 1990.12.28 |
| 时 效 性： 现行有效 | **Validity Status：** Effective |
| 文 号： 主席令第三十七号 | **Document No.：** |

---

**中华人民共和国缔结条约程序法**

（1990 年 12 月 28 日第七届全国人民代表大会常务委员会第十七次会议通过 1990 年 12 月 28 日中华人民共和国主席令第 37 号公布 自公布之日起施行）

**Law of the People's Republic of China on Procedures for Concluding a Treaty**

Adopted 28 December 1990 at the 17th Session of the Standing Committee of the 7th National People's Congress.

**第一条** 根据中华人民共和国宪法，制定本法。

**Article 1.** This Law is formulated in accordance with the Constitution of the People's Republic of China.

**第二条** 本法适用于中华人民共和国同外国缔结的双边和多边条约、协定和其他具有条约、协定性质的文件。

**Article 2.** This Law shall apply to bilateral and multilateral treaties, agreements and other documents of a treaty or agreement-type nature concluded between the People's Republic of China and foreign countries.

**第三条** 中华人民共和国国务院，即中央人民政府，同外国缔结条约和协定。

**Article 3.** The State Council of the People's Republic of China, namely the Central People's Government, shall be responsible for the conclusion of treaties and agreements with foreign countries.

The Standing Committee of the National People's Congress of the People's Republic of China shall determine the approval and

中华人民共和国全国人民代表大会常务委员会决定同外国缔结的条约和重要协定的批准和废除。

abrogation of treaties and major agreements concluded with foreign countries.

The Chairman of the People's Republic of China shall approve and abrogate treaties and major agreements concluded with foreign countries, pursuant to the resolutions of the Standing Committee of the National People's Congress.

中华人民共和国主席根据全国人民代表大会常务委员会的决定，批准和废除同外国缔结的条约和重要协定。

The Ministry of Foreign Affairs of the People's Republic of China shall, under the guidance of the State Council, administer detailed matters relating to the conclusion of treaties and agreements with foreign countries.

中华人民共和国外交部在国务院领导下管理同外国缔结条约和协定的具体事务。

**第四条** 中华人民共和国以下列名义同外国缔结条约和协定：

（一）中华人民共和国；

（二）中华人民共和国政府；

（三）中华人民共和国政府部门；

**Article 4.** The People's Republic of China shall conclude treaties and agreements with foreign countries in the following names:

(1) the People's Republic of China;

(2) the Government of the People's Republic of China;

(3) a Government department of the People's Republic of China.

**第五条** 谈判和签署条约、协定的决定程序如下：

（一）以中华人民共和国名义谈判和签署条约、协定，由外交部或者国务院有关部门会同外交部提

**Article 5.** The resolution process for negotiating and signing a treaty or agreement shall be as follows:

(1) In the case of a treaty or agreement to be negotiated and signed in the name of the People's Republic of China, the Ministry of Foreign Affairs or a relevant State Council department in conjunction with the Ministry of Foreign Affairs shall put forward a proposal, draw up the Chinese party's draft of the treaty or

出建议并拟订条约、协定的中方草案，报请国务院审核决定；

（二）以中华人民共和国政府名义谈判和签署条约、协定，由外交部提出建议并拟订条约、协定的中方草案，或者由国务院有关部门提出建议并拟订条约、协定的中方草案，同外交部会商后，报请国务院审核决定。属于具体业务事项的协定，经国务院同意，协定的中方草案由国务院有关部门审核决定，必要时同外交部会商；

（三）以中华人民共和国政府部门名义谈判和签署属于本部门职权范围内事项的协定，由本部门决定或者本部门同外交部会商后决定；涉及重大问题或者涉及国务院其他有关部门职权范围的，由本部门或者本部门同国务院其他有关部门会商后，报请国务院决定。协定的中方草案由本部门审核决定，必要时同外交部会商。

经国务院审核决定的条约、协

agreement and submit this to the State Council for examination, verification and resolution.

(2) In the case of a treaty or agreement to be negotiated and signed in the name of the Government of the People's Republic of China, the Ministry of Foreign Affairs shall put forward a proposal and draw up the Chinese party's draft of the treaty or agreement or a relevant State Council department shall put forward a proposal and draw up the Chinese party's draft of the treaty or agreement and, after consultation with the Ministry of Foreign Affairs, shall submit this to the State Council for examination, verification and resolution. In the case of an agreement on a specific business matter, the relevant State Council department shall, subject to State Council approval, examine, verify and pass a resolution on the Chinese party's draft of the agreement or, if deemed necessary, shall do so in conjunction with the Ministry of Foreign Affairs.

(3) In the case of an agreement to be negotiated and signed in the name of a Government department of the People's Republic of China on a matter within the department's own scope of operations, a resolution shall be passed by the department itself or after consultation with the Ministry of Foreign Affairs. If involving a major issue or the scope of operations of another State Council department, the department shall submit the matter directly to the State Council for resolution or shall do so after consultation with the other relevant State Council department. The department shall examine, verify and pass a resolution on the Chinese party's draft of the agreement or, if deemed necessary, shall do so after consultation with the Ministry of Foreign Affairs.

If, as the result of negotiations, major amendments need to be made to a Chinese party's draft treaty or agreement which was subject to examination, verification and approval by the State Council, the amended draft shall be resubmitted to the State Council for further examination, verification and resolution.

# Exhibit 2

# 最高人民法院关于涉外民事或商事案件司法文书送达问题若干规定（2020 修正）

| | |
|---|---|
| 发 文 机 关：最高人民法院 | **Promulgated by：** Supreme People's Court |
| 发 布 日 期：2020.12.29 | **Promulgation Date：** 2020.12.29 |
| 生 效 日 期：2021.01.01 | **Effective Date：** 2021.01.01 |
| 时 效 性：现行有效 | **Validity Status：** valid |

---

**最高人民法院关于涉外民事或商事案件司法文书送达问题若干规定（2020 修正）**

（2006 年 7 月 17 日最高人民法院审判委员会第 1394 次会议通过，根据 2020 年 12 月 23 日最高人民法院审判委员会第 1823 次会议通过的《最高人民法院关于修改〈最高人民法院关于人民法院民事调解工作若干问题的规定〉等十九件民事诉讼类司法解释的决定》修正）

　　为规范涉外民事或商事案件司法文书送达，根据《中华人民共和国民事诉讼法》（以下简称民事诉讼法）的规定，结合审判实践，制定本规定。

**Provisions of the Supreme People's Court on Service of Judicial Documents in Foreign-related Civil or Commercial Cases（Amended in 2020）**

(Adopted at the 1394th Meeting of the Adjudication Committee of the Supreme People's Court on July 17, 2006 and amended in accordance with the Decision of the Supreme People's Court on Amending 19 Judicial Interpretations of Civil Procedure, including Provisions of the Supreme People's Court on Certain Issues concerning Civil Mediation by People's Courts adopted at the 1823rd Meeting of the Adjudication Committee of the Supreme People's Court on December 23, 2020)

These Provisions are enacted pursuant to the Civil Procedural Law of the People's Republic of China (hereinafter referred to as the "Civil Procedural Law") to standardize the service of judicial documents in foreign-related civil or commercial cases and integrate the adjudication process.

第五条　人民法院向受送达人送达司法文书，可以送达给其在中华人民共和国领域内设立的代表机构。

受送达人在中华人民共和国领域内有分支机构或者业务代办人的，经该受送达人授权，人民法院可以向其分支机构或者业务代办人送达。

**Article 5 When the people's court effects service of judicial documents on a person, the judicial documents may be served on the representative organization that is established by the person in the People's Republic of China.** Where a person for whom service is effected has established a branch organization or an appointed business agent in the People's Republic of China, the people's court may, upon authorization by such a person, serve the judicial documents on its branch organization or business agent.

第六条　人民法院向在中华人民共和国领域内没有住所的受送达人送达司法文书时，若该受送达人所在国与中华人民共和国签订有司法协助协定，可以依照司法协助协定规定的方式送达；若该受送达人所在国是《关于向国外送达民事或商事司法文书和司法外文书公约》的成员国，可以依照该公约规定的方式送达。

依照受送达人所在国与中华人民共和国缔结或者共同参加的国际条约中规定的方式送达的，根据《最高人民法院关于依据国际公约

**Article 6 When the people's court serves judicial documents on a person who is not domiciled in the People's Republic of China, service may be effected according to the method stipulated under the treaty of judicial assistance, if the person is in a country which has entered into such a treaty with the People's Republic of China. Where the person for whom service is effected is in a country which is a member state of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, service may be effected according to the method stipulated under the said Convention.** Where the documents are to be served in the manner prescribed in the international treaties concluded or acceded to jointly by the People's Republic of China and the country where the person for whom service is effected, service shall be effected in accordance with the Provisions of the Supreme People's Court on Service of Judicial Documents in Civil and Commercial Cases and Requests for Judicial Assistance in Investigation and Collection of Evidence under International Conventions and Bilateral Judicial Assistance Treaties.

**第九条** 人民法院依照民事诉讼法第二百六十七条第（八）项规定的公告方式送达时，公告内容应在国内外公开发行的报刊上刊登。

Article 9 When the people's court effects service by way of a public announcement stipulated in Item (8) of Article 267 of the Civil Procedural Law, the contents of the public announcement shall be published in newspapers and periodicals with public circulation at home and abroad.

**第十条** 除本规定上述送达方式外，人民法院可以通过传真、电子邮件等能够确认收悉的其他适当方式向受送达人送达。

Article 10 Other than the aforesaid methods of service stipulated in these Provisions, the people's court may effect service on a person by other appropriate methods such as facsimile and e-mail, where determination of receipt is possible.

**第十一条** 除公告送达方式外，人民法院可以同时采取多种方式向受送达人进行送达，但应根据最先实现送达的方式确定送达日期。

Article 11 With the exception of a public announcement, the people's court may effect service through multiple methods concurrently, but the effective date of service shall be the earliest date when the documents are served.

**第十二条** 人民法院向受送达人在中华人民共和国领域内的法定代表人、主要负责人、诉讼代理人、代表机构以及有权接受送达的分支机构、业务代办人送达司法文书，可以适用留置送达的方式。

Article 12 The people's court may effect service by leaving the judicial documents with the legal representative, principal, agent ad litem or representative organization, branch organization or business agent of a person who is domiciled in the People's Republic of China.

**第十三条** 受送达人未对人民法院送达的司法文书履行签收手续，但存在以下情形之一的，视为

Article 13 Service shall be deemed effective under any of the following circumstances, even if a person for whom service is effected has not acknowledged by signature for the judicial documents served by the people's court: (1) the person for whom service is effected described the contents of the judicial

送达：

（一）受送达人书面向人民法院提及了所送司法文书的内容；

（二）受送达人已经按照所送达司法文书的内容履行；

（三）其他可以视为已经送达的情形。

documents to the people's court in writing;

(2) the person for whom service is effected has performed the contents of the judicial documents; or

(3) any other circumstances under which the service is deemed effective.

第十四条 人民法院送达司法文书，根据有关规定需要通过上级人民法院转递的，应附申请转递函。

上级人民法院收到下级人民法院申请转递的司法文书，应在七个工作日内予以转递。

上级人民法院认为下级人民法院申请转递的司法文书不符合有关规定需要补正的，应在七个工作日内退回申请转递的人民法院。

**Article 14 Where the people's court, in effecting service, applies to the higher-level people's court to forward a judicial document pursuant to the relevant provisions, a letter of request for such forwarding shall attach the application.** The higher-level people's court shall forward the judicial documents submitted by the lower-level people's court within seven working days.

Where the higher-level people's court deems that the judicial documents to be forwarded by the lower-level people's court do not satisfy relevant requirements and should be supplemented or corrected, the judicial documents shall be returned within seven working days to the lower-level people's court.

第十五条 人民法院送达司法文书，根据有关规定需要提供翻译件的，应由受理案件的人民法院委

**Article 15 Where a judicial document served by the people's court requires an attached translation pursuant to the relevant provisions, the people's court who has accepted the case shall entrust a translation agency in the People's Republic of China to translate the document.** Where the seal of the people's

# Exhibit 3

| 三 、关于涉外送达 | III . Foreign-related Service of Documents |
|---|---|

**10.【邮寄送达退件的处理】**人民法院向在中华人民共和国领域内没有住所的受送达人邮寄送达司法文书，如邮件被退回，且注明原因为"该地址查无此人""该地址无人居住"等情形的，视为不能用邮寄方式送达。

**10. [Handling of Returned Documents Served by Mail]** When a people's court serves a judicial document on a person to be served who has no domicile within the territory of the People's Republic of China by mail, if the mail is returned, with the reasons stated as "this person does not exist at the address", "no one lives at the address", among others, it shall be deemed that the document cannot be served by mail.

**11.【电子送达】**人民法院向在中华人民共和国领域内没有住所的受送达人送达司法文书，如受送达人所在国法律未禁止电子送达方式的，人民法院可以依据民事诉讼法第二百七十四条的规定采用电子送达方式，但违反我国缔结或参加的国际条约规定的除外。

受送达人所在国系《海牙送达公约》成员国，并在公约项下声明反对邮寄方式送达的，应推定其不允许电子送达方式，人民法院不能采用电子送达方式。

**11. [Electronic Service]** When a people's court serves a judicial document on a person to be served who has no domicile within the territory of the People's Republic of China, if the law of the country where the person to be served is located does not prohibit electronic service, the people's court may adopt electronic service in accordance with Article 274 of the Civil Procedure Law, unless the electronic service is against an international treaty concluded or acceded to by China.

In the event that the country where the person to be served is located is a member state of the Hague Service Convention and objects to the service by mail under the Convention, it shall be presumed that the country does not allow electronic service, and the people's court shall not adopt electronic service.

**12.【外国自然人的境内送达】**人民法院对外国自然人采用下

**12. [Service within the Territory of China on Foreign Natural Persons]** If a people's court adopts the following methods to serve documents on a foreign natural person, it shall be

# Exhibit 4

必要措施审理案件，或者未在合理期限内审结，当事人又向人民法院起诉的，人民法院应当受理。

## 第二十五章 送达、调查取证、期间

## Chapter 25 — Service, Investigation and Evidence Collection and Period

第二百八十三条 人民法院对在中华人民共和国领域内没有住所的当事人送达诉讼文书，可以采用下列方式：

（一）依照受送达人所在国与中华人民共和国缔结或者共同参加的国际条约中规定的方式送达；

（二）通过外交途径送达；

（三）对具有中华人民共和国国籍的受送达人，可以委托中华人民共和国驻受送达人所在国的使领馆代为送达；

（四）向受送达人在本案中委托的诉讼代理人送达；

（五）向受送达人在中华人民共和国领域内设立的独资企业、代

**Article 283 A people's court may adopt the following methods for service of litigation documents on litigants without domicile in the People's Republic of China:** (1) service by the methods stipulated in an international treaty concluded or jointly acceded to by the country of the party being served and the People's Republic of China;

(2) service through diplomatic channels;

(3) service upon the party being served with the Chinese nationality by the entrusted embassy or consulate of the People's Republic of China based in the country where the party being served resides;

(4) service on the agent ad litem entrusted by the party being served in the lawsuit;

(5) service on a wholly owned enterprise, representative office or branch established in the People's Republic of China by the party being served or a business agent who has the right to receive service of process;

(6) service on the legal person or other organisation where the party being served is a foreigner or a Stateless person, who acts as the legal representative or key person-in-charge of a legal person or any other organisation established in the People's Republic of China, and is the co-defendant with the said legal person or other organisation;

(7) service on the legal representative or key person-in-charge

表机构、分支机构或者有权接受送达的业务代办人送达；

（六）受送达人为外国人、无国籍人，其在中华人民共和国领域内设立的法人或者其他组织担任法定代表人或者主要负责人，且与该法人或者其他组织为共同被告的，向该法人或者其他组织送达；

（七）受送达人为外国法人或者其他组织，其法定代表人或者主要负责人在中华人民共和国领域内的，向其法定代表人或者主要负责人送达；

（八）受送达人所在国的法律允许邮寄送达的，可以邮寄送达，自邮寄之日起满三个月，送达回证没有退回，但根据各种情况足以认定已经送达的，期间届满之日视为送达；

（九）采用能够确认受送达人收悉的电子方式送达，但是受送达人所在国法律禁止的除外；

where the party being served is a foreign legal person or any other organisation, and its legal representative or key person-in-charge is in the People's Republic of China;

(8) where the laws of the country where the party being served resides permit service of documents by mail, the documents may be served by mail; upon expiry of a three-month period from the date of mailing and the acknowledgement of service is not being returned, but the documents may be deemed served based on the circumstances, the service shall be deemed successful on the date of expiry of the period;

(9) service by electronic methods for which receipt by the party being served can be confirmed, except prohibited by the laws of the country where the party being served resides; and

(10) service by any other methods agreed by the party being served, except prohibited by the laws of the country where the party being served resides.

Where the documents cannot be served by any of the aforesaid methods, the documents shall be served by way of a public announcement and deemed served 60 days after the date of issuance of the public announcement.

重新申请仲裁，也可以向人民法院起诉。

Court.

## 第二十七章 司法协助

## Chapter 27 — Judicial Assistance

第二百九十三条 根据中华人民共和国缔结或者参加的国际条约，或者按照互惠原则，人民法院和外国法院可以相互请求，代为送达文书、调查取证以及进行其他诉讼行为。

外国法院请求协助的事项有损于中华人民共和国的主权、安全或者社会公共利益的，人民法院不予执行。

**Article 293 Pursuant to the international treaty concluded or participated by the People's Republic of China or in accordance with the principle of reciprocity, a People's Court and a foreign court may request each other to carry out service of documents on behalf, investigation and collection of evidence and any other litigation acts.** Where a request by a foreign court for assistance is prejudicial to the sovereignty, security or public interest of the People's Republic of China, the People's Court shall refuse to enforce.

第二百九十四条 请求和提供司法协助，应当依照中华人民共和国缔结或者参加的国际条约所规定的途径进行；没有条约关系的，通过外交途径进行。

外国驻中华人民共和国的使领馆可以向该国公民送达文书和调查取证，但不得违反中华人民共和国的法律，并不得采取强制措施。

**Article 294 Request for and provision of judicial assistance shall be carried out via the channels stipulated in the international treaty concluded or participated by the People's Republic of China; where there is no treaty relations, request for and provision of judicial assistance shall be carried out via diplomatic channels.** An embassy or consulate of a foreign country based in the People's Republic of China may serve documents on a citizen of the foreign country and carry out investigation and collection of evidence, but shall not violate the laws of the People's Republic of China and shall not adopt mandatory measures.

Except for the circumstances stipulated in the preceding paragraph, no foreign agency or individual shall carry out service of documents, investigation and collection of evidence in the

除前款规定的情况外，未经中华人民共和国主管机关准许，任何外国机关或者个人不得在中华人民共和国领域内送达文书、调查取证。

People's Republic of China without the consent by the relevant administrative authorities of the People's Republic of China.

第二百九十五条　外国法院请求人民法院提供司法协助的请求书及其所附文件，应当附有中文译本或者国际条约规定的其他文字文本。

人民法院请求外国法院提供司法协助的请求书及其所附文件，应当附有该国文字译本或者国际条约规定的其他文字文本。

**Article 295 A request from a foreign court for a People's Court to provide judicial assistance and the appendices thereto shall be attached with a Chinese translation or any other language version stipulated by the international treaty.** A request from a People's Court for a foreign court to provide judicial assistance and the appendices thereto shall be attached with a translation of the request into the country's language or any other language version stipulated by the international treaty.

第二百九十六条　人民法院提供司法协助，依照中华人民共和国法律规定的程序进行。外国法院请求采用特殊方式的，也可以按照其请求的特殊方式进行，但请求采用的特殊方式不得违反中华人民共和国法律。

**Article 296 People's Courts shall provide judicial assistance in accordance with the procedures stipulated by the laws of the People's Republic of China. Where a foreign court requests for adoption of a special method, the requested special method may be adopted, provided that the requested special method shall not violate the laws of the People's Republic of China.**

第二百九十七条　人民法院作出的发生法律效力的判决、裁定，

**Article 297 With respect to a judgment or ruling made by a People's Court which has come into legal effect, where the enforcee or its properties is/are not located in the People's**

# Exhibit 5

# 14: 关于向国外送达民事或商事司法
# 文书和司法外文书公约①

**本公约缔约国,**

希望创立适当方法,以确保须予送达到国外的司法文书和司法外文书在足够的时间内为收件人所知悉,

希望通过简化并加快有关程序,改进为此目的而进行相互司法协助的体制,

为此目的,兹决定缔约一项公约,并议定下列各条:

**第一条** 在所有民事或商事案件中,如有须递送司法文书或司法外文书以便向国外送达的情形,均应适用本公约。

在文书的受送达人地址不明的情况下,本公约不予适用。

## 第 一 章　司 法 文 书

**第二条** 每一缔约国应指定一个中央机关,负责根据第三条至第六条的规定,接收来自其它缔约国的送达请求书,并予以转递。

每一缔约国应依其本国法律组建中央机关。

**第三条** 依文书发出国法律有权主管的当局或司法助理人员应将符合本公约所附范本的请求书送交文书发往国中央机关,无须认证或其它类似手续。

请求书应附有须予送达的文书或其副本。请求书和文书均须一式两份。

**第四条** 如中央机关认为该请求书不符合本公约的规定,应及时通知申请者,并说明其对请求书的异议。

**第五条** 文书发往国中央机关应按照下列方法之一,自行送达该文书,或安排经由一适当机构使之得以送达:

---

① 本公约于 1965 年 11 月 15 日订于海牙,1969 年 2 月 10 日生效。缔约国(64):阿尔巴尼亚、阿根廷、澳大利亚、白俄罗斯、比利时、波黑、保加利亚、加拿大、中国(包括香港特别行政区、澳门特别行政区)、克罗地亚、塞浦路斯、捷克、丹麦、埃及、爱沙尼亚、芬兰、法国、德国、希腊、匈牙利、冰岛、印度、爱尔兰、以色列、意大利、日本、韩国、拉脱维亚、立陶宛、卢森堡、马耳他、墨西哥、摩纳哥、摩洛哥、荷兰、挪威、波兰、葡萄牙、罗马尼亚、俄罗斯、塞尔维亚、斯洛伐克、斯洛文尼亚、西班牙、斯里兰卡、瑞典、瑞士、马其顿、土耳其、乌克兰、英国、美国、委内瑞拉、安提瓜和巴布达、巴哈马、巴巴多斯、伯利兹、博茨瓦纳、科威特、马拉维、巴基斯坦、圣文森特和格林纳丁斯、圣马力诺、塞舌尔。

（一）按照其国内法规定的在国内诉讼中对在其境内的人员送达文书的方法，或

（二）按照申请者所请求采用的特定方法，除非这一方法与文书发往国法律相抵触。

除本条第一款第（二）项规定外，均可通过将文书交付自愿接受的收件人的方法进行送达。

如依上述第一款送达文书，则中央机关可要求该文书以文书发往国的官方文字或其中之一写成，或译为该种文字。

依本公约所附格式填写的请求书中包括被送达文书概要的部分应连同文书一并送达。

**第六条**　文书发往国中央机关或该国为此目的可能指定的任何机关应依本公约所附范本格式出具证明书。

证明书应说明文书已经送达，并应包括送达的方法、地点和日期，以及文书被交付人。如文书并未送达，则证明书中应载明妨碍送达的原因。

申请者可要求非中央机关或司法机关出具的证明书由上述一个机关副署。

证明书应直接交给申请者。

**第七条**　本公约所附范本的标准栏目均应用法文或英文写成，亦可用文书发出国的官方文字或其中之一写成。

相应空格应用文书发往国文字或法文或英文填写。

**第八条**　每一缔约国均有权直接通过其外交或领事代表机构向身在国外的人完成司法文书的送达，但不得采用任何强制措施。

任何国家均可声明其对在其境内进行此种送达的异议，除非该文书须送达给文书发出国国民。

**第九条**　此外，每一缔约国有权利用领事途径将文书送交另一缔约国为此目的指定的机关，以便送达。

如有特殊情况需要，每一缔约国可为同一目的使用外交途径。

**第十条**　如送达目的地国不表异议，本公约不妨碍：

（一）通过邮寄途径直接向身在国外的人送交司法文书的自由；

（二）文书发出国的司法助理人员、官员或其他主管人员直接通过送达目的地国的司法助理人员，官员或其他主管人员完成司法文书的送达的自由；

（三）任何在司法程序中有利害关系的人直接通过送达目的地国的司法助理人员、官员或其他主管人员完成司法文书的送达的自由。

**第十一条**　本公约不妨碍两个或更多缔约国达成协议，允许采用上述各条所规定的递送途径以外的途径，特别是通过其各自机关直接联系的途径，以便

送达司法文书。

**第十二条** 发自缔约一国的司法文书的送达不应产生因文书发往国提供服务所引起的税款或费用的支付或补偿。

申请者应支付或补偿下列情况产生的费用:

(一)有司法助理人员或依送达目的地地方法律主管人员的参与;

(二)特定送达方法的使用。

**第十三条** 如果送达请求书符合本公约的规定,则文书发往国只在其认为执行请求将损害其主权或安全时才可拒绝执行。

一国不得仅根据下列理由拒绝执行,即:依其国内法,该国主张对该项诉讼标的专属管辖权,或其国内法不允许进行该项申请所依据的诉讼。

在拒绝执行的情况下,中央机关应迅速通知申请者,并说明拒绝的理由。

**第十四条** 在为了送达而递送司法文书的过程中可能产生的困难,应通过外交途径解决。

**第十五条** 如须根据本公约向国外递送传票或类似文书,以便送达,而被告没有出庭,则在确定以下情况之前,不得作出判决:

(一)该文书已依文字发往国的国内法所规定的在国内诉讼中对在其境内的人送达文书的方法予以送达;或

(二)该文书已依本公约规定的其它方法被实际交付被告或其居所。

并且,在上述任何一种情况下,送达或交付均应在能保证被告进行答辩的足够时间内完成。

每一缔约国均可声明,只要满足下述条件,即使未收到送达或交付的证明书,法官仍可不顾本条第一款的规定,作出判决:

(一)已依本公约所规定的一种方法递送该文书;

(二)法官根据具体案件认为自递送文书之日起不少于六个月的适当期间已满;

(三)尽管为获取证明书已通过文书发往国的主管机关尽了一切合理的努力,但仍未收到任何种类的证明书。

虽有上述各款规定,法官仍可在紧急情况下决定采取任何临时性或保护性的措施。

**第十六条** 如须根据本公约向国外递送传票或类似文书,以便送达,且已对未出庭的被告作出败诉判决,则在满足下述条件的情况下,法官有权使被告免于该判决因上诉期间届满所产生的丧失上诉权的效果:

(一)被告非因自己的过失,未能在足够期间内知悉该文书,以便提出答辩,或未能在足够期间内知悉该判决,以便提起上诉,并

（二）被告对该案的实质问题提出了表面可以成立的答辩理由。

被告只能在其知悉该判决后的合理期间内提出免除丧失上诉权效果的申请。

每一缔约国均可声明对在该声明中所指明的期间届满后提出的申请不予受理，但这一期间在任何情况下均不得少于自判决之日起的一年。

本条不适用于有关人的身份或能力的判决。

## 第二章　司法外文书

第十七条　缔约一国的机关和司法助理人员发出的司法外文书可依本公约的方法并按照本公约各条规定递送到缔约另一国，以便送达。

## 第三章　一　般　条　款

第十八条　每一缔约国除指定中央机关外，还可指定其它机关，并应确定这些机关的主管范围。

但在任何情况下，申请者均有权将请求书直接送交中央机关。

联邦制国家有权指定一个以上的中央机关。

第十九条　只要缔约国的国内法允许使用上述各条规定之外的其它方法递送来自国外的文书，以便在其境内送达，本公约不影响此类规定。

第二十条　本公约不妨碍两个或更多的缔约国达成协议，以免除下列规定的适用：

（一）第三条第二款关于须予递送的文书必须一式两份的要求；

（二）第五条第三款和第七条关于文字的要求；

（三）第五条第四款的规定；

（四）第十二条第二款的规定。

第二十一条　每一缔约国均应在其交存批准书或加入书时或在此之后，就下述事项通知荷兰外交部：

（一）根据第二条和第十八条指定的机关；

（二）根据第六条指定的有权出具证明书的机关；

（三）根据第九条指定的有权接收通过领事途径递送的文书的机关。

适当时，每一缔约国还应通知荷兰外交部：

（一）对使用第八条和第十条所规定的递送方法所提出的异议；

（二）根据第十五条第二款和第十六条第三款所作出的声明；

（三）对上述指定、异议和声明的任何修改。

第二十二条　如本公约当事国亦为 1905 年 7 月 17 日和 1954 年 3 月 1 日订于海牙的两个《民事诉讼程序公约》或其中之一的缔约国，则本公约应在这

些国家之间取代上述两公约第一条至第七条的规定。

**第二十三条** 本公约不应影响 1905 年 7 月 17 日订于海牙的《民事诉讼程序公约》第二十三条和 1954 年 3 月 1 日订于海牙的《民事诉讼程序公约》第二十四条的适用。

但只在使用与上述公约规定一致的联系方法时才应适用这些条款。

**第二十四条** 1905 年和 1954 年公约当事国之间缔结的补充协定应被认为同样适用于本公约，除非上述当事国另有协议。

**第二十五条** 在不损害第二十二条和第二十四条规定的情况下，本公约不损及缔约国已经或将要成为当事国并含有本公约所规定事项的条款的其它公约。

**第二十六条** 本公约应开放供出席海牙国际私法会议第十次会议的国家签署。

本公约须经批准，批准书应交存荷兰外交部。

**第二十七条** 本公约自第二十六条第二款所指的第三份批准书交存后的第六十天起生效。

对于此后批准本公约的签署国，本公约自其交存批准书后的第六十天起对其生效。

**第二十八条** 在本公约依第二十七条第一款规定生效后，任何未出席海牙国际私法会议第十次会议的国家均可加入本公约。加入书应交存荷兰外交部。

如该加入书交存前已批准本公约的国家在荷兰外交部将这一加入行为通知该国之日后六个月期间内并未通知荷兰外交部表示异议，则本公约对该加入国生效。

如未提出任何异议，则本公约自前款所指的最后期间届满后下个月的第一天起对该加入国生效。

**第二十九条** 任何国家均可在签署、批准或加入时声明，本公约应扩展适用于其为之负责国际关系的全部领土，或其中一个或几个部分。这类声明自本公约对有关国家生效之日起发生效力。

在其后任何时候，此类扩展适用事项均应通知荷兰外交部。

本公约自前款所指的通知发出后第六十天起对扩展适用通知中所提及的领土生效。

**第三十条** 本公约自依第二十七条第一款规定生效之日起五年有效，即使对后来批准或加入本公约的国家亦如此。

如未经通知退出，本公约应每五年自动展期一次。

任何退出通知均须在五年期满的至少六个月前通知荷兰外交部。

这类退出通知可仅限于适用本公约的某些领土。

此项退出通知只对通知退出的国家有效。本公约对其它缔约国应继续有效。

**第三十一条**　荷兰外交部应将下述事项通知第二十六条所指的国家以及已依第二十八条加入本公约的国家：

（一）第二十六条所指的签署和批准；

（二）本公约依第二十七条第一款生效的日期；

（三）第二十八条所指的加入及其生效日期；

（四）第二十九条所指的扩展适用及其生效日期；

（五）第二十一条所指的指定、异议和声明；

（六）第三十条第三款所指的退出通知。

下列签署人经正式授权，签署本公约，以昭信守。

一九六五年十一月十五日订于海牙，用英文和法文写成，两种文本同一作准。正本一份，存于荷兰政府档案库。经证明无误的副本应通过外交途径送交出席海牙国际私法会议第十次会议的各国。

**附件：**

表格（请求书和证明书）

送达文书摘要

（第三条、第五条、第六条和第七条的附件）

---

本公约附件表格

向国外送达司法文书或司法外文书的

请　求　书

关于向国外送达民事或商事司法文书和司法外文书公约

一九六五年十一月十五日订于海牙

| 申请者身份及地址 | 接收机关的地址 |
|:---:|:---:|
|  |  |

　　签署本请求书的申请者荣幸地转去下面开列的文书一式两份,并依上述公约第五条规定请求迅速将其中一份送达给收件人,即:

（身份和地址）：_____

　　1. 请依公约第五条第一款第(一)项的规定进行送达。*

　　2. 请依下述特定方法送达(第五条第一款第(二)项)*

_____

　　3. 如收件人自愿接受,请予以交付(第五条第二款)。*

　　请贵机关将该文书(及其附件*)的副本连同背后所附的证明书一并退还或使之退还给申请者。

　　文件清单：

_____

_____

_____

制于_____（日期）_____（地点）

签名和(或)盖章

　　* 如不适用,则请删去。

---

（请求书背面）

<h2 align="center">证　明　书</h2>

　　根据公约第六条,签署本公约证明书的机关荣幸地证明:

　　1. 文书已予送达

　　　　—日期：_____

　　　　—地点(城镇、街、号)：_____

　　　　—采用的第五条所规定的送达方法为:

　　　　(1)依公约第五条第一款第(一)项的规定。*

　　　　(2)依下述特定方法*_____

　　　　(3)交付给自愿接受的收件人。*

　　　　请求书中所列文书已交付给:

　　　　—(收件人身份和说明)：_____

　　　　—与受送达人的关系(家庭、业务及其他)：_____

2.　由于下列事实文书未能送达 * _____

_____

按照公约第十二条第二款,请申请者支付或补偿后附说明中开列的费用。

附:

退还的文书:_____

适当时,确认送达的文书:_____

制于_____(日期)_____(地点)

签名和(或)盖章

　*如不适用,则请删去。

---

## 被送达文书概要

### 关于向国外送达民事或商事司法文书和司法外文书公约
### 一九六五年十一月十五日订于海牙
#### (第五条第四款)

请求机关的名称和地址:_____

当事人详情 * :_____

### 司　法　文　书

文书的性质和目的:_____

诉讼的性质和目的,适当时,争讼金额:_____

出庭的日期和地点: * * _____

作出判决的法院: * * _____

判决日期: * * _____

文书中所指明的期限: * * _____

### 司法外文书

文书的性质和目的:_____

文书中所指明的期限:_____

　*适当时,应填写与递送文书有利害关系的人的身份和地址。

　* *如不适用,则请删去。

# Exhibit 6

中国工具书网络出版总库

当代汉语词典 > J > jì > 寄 > 邮寄

# 邮寄

通过邮局寄递：～包裹。 13 字

知识来源：莫衡等 主编.当代汉语词典.上海：上海辞书出版社.2001.

# Exhibit 7

务委员会必须完成下届全国人民代表大会代表的选举。如果遇到不能进行选举的非常情况，由全国人民代表大会常务委员会以全体组成人员的三分之二以上的多数通过，可以推迟选举，延长本届全国人民代表大会的任期。在非常情况结束后一年内，必须完成下届全国人民代表大会代表的选举。

the Standing Committee of the incumbent National People's Congress, and the term of office of the incumbent National People's Congress may be extended. The election of deputies to the succeeding National People's Congress must be completed within one year after the termination of such exceptional circumstances.

　　**第六十一条**　全国人民代表大会会议每年举行一次，由全国人民代表大会常务委员会召集。如果全国人民代表大会常务委员会认为必要，或者有五分之一以上的全国人民代表大会代表提议，可以临时召集全国人民代表大会会议。

　　全国人民代表大会举行会议的时候，选举主席团主持会议。

**Article 61 The National People's Congress meets in session once a year and is convened by its Standing Committee. A session of the National People's Congress may be convened at any time the Standing Committee deems this necessary, or when more than one-fifth of the deputies to the National People's Congress so propose.** When the National People's Congress meets, it elects a presidium to conduct its session.

　　**第六十二条**　全国人民代表大会行使下列职权：

　　（一）修改宪法；

　　（二）监督宪法的实施；

**Article 62 The National People's Congress exercises the following functions and powers:** (1) to amend the Constitution;

(2) to supervise the enforcement of the Constitution;

(3) to enact and amend basic statutes concerning criminal offences, civil affairs, the state organs and other matters;

(4) to elect the President and the Vice-President of the People's

| | |
|---|---|
| （三）制定和修改刑事、民事、国家机构的和其他的基本法律； | Republic of China; (previously translated as Chairman and Vice-Chairman of the People's Republic of China-translator's note.) |
| | (5) to decide on the choice of the Premier of the State Council upon nomination by the President of the People's Republic of China, and to decide on the choice of the Vice-Premiers, State Councillors, Ministers in charge of Ministries or Commissions and the Auditor-General and the Secretary-General of the State Council upon nomination by the Premier; |
| （四）选举中华人民共和国主席、副主席； | |
| （五）根据中华人民共和国主席的提名，决定国务院总理的人选；根据国务院总理的提名，决定国务院副总理、国务委员、各部部长、各委员会主任、审计长、秘书长的人选； | (6) to elect the Chairman of the Central Military Commission and, upon his nomination, to decide on choice of the other members of the Central Military Commission; |
| | (7) to elect the Director of the National Supervisory Commission; |
| | (8) to elect the President of the Supreme People's Court; |
| | (9) to elect the Procurator-General of the Supreme People Procuratorate; |
| （六）选举中央军事委员会主席；根据中央军事委员会主席的提名，决定中央军事委员会其他组成人员的人选； | (10) to examine and approve the plan for national economic and social development and the reports on its implementation; |
| | (11) to examine and approve the state budget and the report on its implementation; |
| | (12) to alter or annul inappropriate decisions of the Standing Committee of the National People's Congress; |
| （七）选举国家监察委员会主任； | (13) to approve the establishment of provinces, autonomous regions, and municipalities directly under the Central Government; |
| | (14) to decide on the establishment of special administrative regions and the systems to be instituted there; |
| （八）选举最高人民法院院长； | (15) to decide on questions of war and peace; and |
| （九）选举最高人民检察院检察长； | (16) to exercise such other functions and power as the highest organ of state power should exercise. |

（十）审查和批准国民经济和社会发展计划和计划执行情况的报告；

（十一）审查和批准国家的预算和预算执行情况的报告；

（十二）改变或者撤销全国人民代表大会常务委员会不适当的决定；

（十三）批准省、自治区和直辖市的建置；

（十四）决定特别行政区的设立及其制度；

（十五）决定战争和和平的问题；

（十六）应当由最高国家权力机关行使的其他职权。

第六十三条　全国人民代表大会有权罢免下列人员：

（一）中华人民共和国主席、副主席；

**Article 63 The National People's Congress has the power to recall or remove from office the following persons:** (1) the President and the Vice-President of the People's Republic of China;

(2) the Premier, Vice-Premiers, State Councillors, Ministers in charge of Ministries or Commissions and the Auditor-General and

副委员长若干人，

秘书长，

委员若干人。

全国人民代表大会常务委员会组成人员中，应当有适当名额的少数民族代表。

全国人民代表大会选举并有权罢免全国人民代表大会常务委员会的组成人员。

全国人民代表大会常务委员会的组成人员不得担任国家行政机关、监察机关、审判机关和检察机关的职务。

**第六十六条** 全国人民代表大会常务委员会每届任期同全国人民代表大会每届任期相同，它行使职权到下届全国人民代表大会选出新的常务委员会为止。

委员长、副委员长连续任职不得超过两届。

**第六十七条** 全国人民代表大

members.

Minority nationalities are entitled to appropriate representation on the Standing Committee of the National People's Congress.

The National People's Congress elects, and has the power to recall, all those on its Standing Committee.

No member of the Standing Committee of the National People's Congress may hold office in any of the administrative, supervisory, judicial or procuratorial organs of the State.

**Article 66 The Standing Committee of the National People's Congress is elected for the same term as the National People's Congress; it exercises its functions and powers until a new Standing Committee is elected by the succeeding National People's Congress.** The Chairman and Vice-Chairmen of the Standing Committee shall serve no more than two consecutive terms.

**Article 67 The Standing Committee of the National People's**

会常务委员会行使下列职权：

（一）解释宪法，监督宪法的实施；

（二）制定和修改除应当由全国人民代表大会制定的法律以外的其他法律；

（三）在全国人民代表大会闭会期间，对全国人民代表大会制定的法律进行部分补充和修改，但是不得同该法律的基本原则相抵触；

（四）解释法律；

（五）在全国人民代表大会闭会期间，审查和批准国民经济和社会发展计划、国家预算在执行过程中所必须作的部分调整方案；

（六）监督国务院、中央军事委员会、国家监察委员会、最高人民法院和最高人民检察院的工作；

（七）撤销国务院制定的同宪法、法律相抵触的行政法规、决定

**Congress exercises the following functions and powers:** (1) to interpret the Constitution and supervise its enforcement;

(2) to enact and amend statutes with the exception of those which should be enacted by the National People's Congress;

(3) to enact, when the National People's Congress is not in session, partial supplements and amendments to statutes enacted by the National People's Congress provided that they do not contravene the basic principles of these statutes;

(4) to interpret statutes;

(5) to examine and approve, when the National People's Congress is not in session, partial adjustments to the plan for national economic and social development and to the state budget that prove necessary in the course of their implementation;

(6) to supervise the work of the State Council, the Central Military Commission, the National Supervisory Commission, the Supreme People's Court and the Supreme People's Procuratorate;

(7) to annul those administrative rules and regulations, decisions or orders of the State Council that contravene the Constitution or the statutes;

(8) to annul those local regulations or decisions of the organs of state power of provinces, autonomous regions and municipalities directly under the Central Government that contravene the Constitution, the statutes or the administrative rules and regulations;

(9) to decide, when the National People's Congress is not in session, on the choice of Ministers in charge of Ministries or Commissions or the Auditor-General and the Secretary-General of the State Council upon nomination by the Premier of the State Council;

(10) to decide, upon nomination by the Chairman of the Central

和命令；

　　（八）撤销省、自治区、直辖市国家权力机关制定的同宪法、法律和行政法规相抵触的地方性法规和决议；

　　（九）在全国人民代表大会闭会期间，根据国务院总理的提名，决定部长、委员会主任、审计长、秘书长的人选；

　　（十）在全国人民代表大会闭会期间，根据中央军事委员会主席的提名，决定中央军事委员会其他组成人员的人选；

　　（十一）根据国家监察委员会主任的提请，任免国家监察委员会副主任、委员；

　　（十二）根据最高人民法院院长的提请，任免最高人民法院副院长、审判员、审判委员会委员和军事法院院长；

　　（十三）根据最高人民检察院

Military Commission, on the choice of others on the commission, when the National People's Congress is not in session;

(11) according to the request and nomination of the Director of the National Supervisory Commission, to appoint or remove the deputy director and commissioners of the National Supervisory Commission;

(12) to appoint and remove the Vice-Presidents and judges of the Supreme People's Court, members of its Judicial Committee and the President of the Military Court at the suggestion of the President of the Supreme People's Court;

(13) to appoint and remove the Deputy Procurators-General and procurators of the Supreme People's Procuratorate, members of its Procuratorial Committee and the Chief Procurator of the Military Procuratorate at the request of the Procurator-General of the Supreme People's Procuratorate, and to approve the appointment and removal of the chief procurators of the people's procuratorates of provinces, autonomous regions and municipalities directly under the Central Government;

(14) to decide on the appointment and recall of the plenipotentiary representatives abroad;

(15) to decide on the ratification and abrogation of treaties and important agreements concluded with foreign states;

(16) to institute systems of titles and ranks for military and diplomatic personnel and of other specific titles and ranks;

(17) to institute state medals and titles of honour and decide on their conferment;

(18) to decide on the granting of special pardons;

(19) to decide, when the National People's Congress is not in session, on the proclamation of a state of war in the event of an armed attack on the country or in fulfilment of international treaty

检察长的提请，任免最高人民检察院副检察长、检察员、检察委员会委员和军事检察院检察长，并且批准省、自治区、直辖市的人民检察院检察长的任免；

（十四）决定驻外全权代表的任免；

（十五）决定同外国缔结的条约和重要协定的批准和废除；

（十六）规定军人和外交人员的衔级制度和其他专门衔级制度；

（十七）规定和决定授予国家的勋章和荣誉称号；

（十八）决定特赦；

（十九）在全国人民代表大会闭会期间，如果遇到国家遭受武装侵犯或者必须履行国际间共同防止侵略的条约的情况，决定战争状态的宣布；

（二十）决定全国总动员或者

obligations concerning common defence against aggression;

(20) to decide on general mobilization or partial mobilization;

(21) to decide on the enforcement of martial law throughout the country or in particular provinces, autonomous regions or municipalities directly under the Central Government; and

(22) to exercise such other functions and powers as the National People's Congress may assign to it.

# Exhibit 8

止审议，并向常务委员会报告；必要时，委员长会议也可以决定延期审议。

**第四十六条** 对多部法律中涉及同类事项的个别条款进行修改，一并提出法律案的，经委员长会议决定，可以合并表决，也可以分别表决。

**Article 46 If legislative bills are jointly submitted to revise particular clauses involving similar matters in several laws, these legislative bills may, as decided by the Council of Chairmen, be voted jointly or separately.**

**第四十七条** 常务委员会通过的法律由国家主席签署主席令予以公布。

**Article 47 A law adopted by the Standing Committee shall be promulgated under the decree executed by the president of the People's Republic of China.**

**第四节 法律解释**

**Section 4 Legal Interpretation**

**第四十八条** 法律解释权属于全国人民代表大会常务委员会。

法律有以下情况之一的，由全国人民代表大会常务委员会解释：

（一）法律的规定需要进一步明确具体含义的；

（二）法律制定后出现新的情况，需要明确适用法律依据的。

**Article 48 The power of legal interpretation resides with the Standing Committee of the National People's Congress.** A law shall be interpreted by the Standing Committee of the National People's Congress if:

(1) the specific meaning of a provision needs to be further defined; or

(2) after its enactment, new developments make it necessary to clarify the basis of applicable law.

**第四十九条** 国务院、中央军

**Article 49 The State Council, the Central Military Commission,**

# Exhibit 9

### b) Exclusive character of the Convention

93. Despite recent developments in the United States, it remains undisputed that if the law of the forum determines that transmission of documents for service abroad is required, the Convention must be applied.

94. The exclusive character of the Convention has been broadly acknowledged by case law,[83] and by scholars,[84] as well as by the Special Commission.[85] Even States that still use the *notification au parquet* have supported this view.

⇨   Substituted service

95. Substituted service may be one instance where the Convention applies, but where service may be impracticable or impossible.[86] Additionally, substituted service may be employed when the address of the person to be served is unknown, thereby falling outside of the scope of the Convention according to Article 1(2), or when service does not occur within a Contracting Party.

96. Substituted service refers to the situation where a document is required to be served for the purpose of legal proceedings before a court, and that court directs that the use of some alternative means of bringing the document to the attention of the party to be

---

[83]   This is particularly true in the United States, where the question was examined in relation with the supremacy clause in Art. VI of the United States Constitution; in *Kadota v. Hosogai*, 608 P.2d 68 (Ariz. Ct. App. 1980), an Arizona Court of Appeal held that under the supremacy clause the 1965 Service Convention prevails over inconsistent means of service provided for under state law. In the leading *Schlunk* case (*op. cit.* note 41), the Supreme Court of the United States confirmed that the Convention applies on an exclusive basis (by employing the term "mandatory" rather than referring to "exclusive means for service") and therefore prevails over federal or state procedural law in all cases where it is applicable. See also *Gebr. Eickhoff Maschinenfabrik v. Starcher*, 328 S.E.2d 492 (W. Va. 1985); *Kreimerman, et al. v. Casa Veerkamp*, 22 F.3d 634 (5th Cir. 1994). In Canada, several courts have confirmed that the 1965 Service Convention is exclusive, noting that this is the prevailing view in their respective provinces. See decisions in Ontario: *Pharm Canada Inc. v. 1449828 Ontario Ltd. (c.o.b. Trinity Worldwide Services Inc.)*, 2011 ONSC 4808; *Khan Resources Inc. v. Atomredmetzoloto JSC* (*op. cit.* note 28); *Pitman v. Mol*, 2014 ONSC 2551 (following *Khan Resources*, the Court held that the Convention must be complied with in family law proceedings as well); in support of these decisions (the Court of Appeal of Alberta): *Metcalfe Estate v. Yamaha Motor Powered Products Co., Ltd.* (*op. cit.* note 28). One court in Australia, which joined the 1965 Service Convention in 2010, has held, in *Davenport & Rattray* (*op. cit.* note 52), that "[i]f all th[e] requirements are met [*i.e.*, 'the document is to be transmitted from one State Party to the Convention to another State Party, for service in the latter [...] [a]n address for the person to be served is known [...] [t]he document to be served is a judicial or extrajudicial document [...] [and t]he document to be served relates to a civil or commercial matter'], the transmission channels provided for under the Convention must be applied", and that as such, "the Convention is exclusive". In Portugal, a court held that a domestic code on insolvency could not override the 1965 Service Convention and that the Convention applied: Lisbon Court of Appeal (*Tribunal da Relação de Lisboa*), case No 3/2009-6, 12 February 2009. The Court further noted that to hold the contrary would be in breach of general rules of international law and the principle that international law prevails over domestic law. See also, in the same sense, Coimbra Court of Appeal (*Tribunal da Relação de Coimbra*), case No 3327/12.5TBLRA-B.C1, 19 December 2012.

[84]   T. Bischof (*op. cit.* note 17), p. 251, who refers, however, to the Convention's "obligatory" character; B. Ristau, *International Judicial Assistance (Civil and Commercial)*, Washington, D.C., International Law Institute, Georgetown University Law Center, 1984, Vol. I, Part IV, 2000 Revision, p. 160.

[85]   C&R No 66 of the 2024 SC.

[86]   For example, see note 53.

served will constitute, or be treated as, valid service.[87] Service is typically achieved through personal service, where a process server physically hands the documents to be served to the party to be served.[88] However, there are situations where personal service becomes difficult or impossible,[89] or for some other good reason it may be judged inappropriate to insist on personal service.

97.  Some common scenarios in which substituted service may be authorised include where:

- the party is intentionally evading service to avoid legal responsibility;

- the party's current whereabouts is unknown, and traditional service attempts have failed.

98.  In such cases, the court may permit substituted service as an alternative. Substituted service can be accomplished by methods including leaving documents with an agent, at the office of the relevant corporation or business, or posting them in a public place. Substituted service is usually subject to specific rules and requirements of a jurisdiction to ensure that the rights of the defendant are protected and that the alternative method of (substituted) service is fair and reasonable.

99.  It is important to distinguish situations in which one formal method of service (such as personal service) is substituted with another method, from other situations in which service is substituted with a different action that is intended to bring a document to the attention of the addressee. This distinction may have implications for whether or not the situation will fall within the scope of the Convention.[90]

100. Under the Convention, substituted service may arise, for example, where the law of the Requesting State authorises substituted service and, on that basis, the forwarding authority seeks a particular method of service under Article 5(1)(b). Alternatively, where a request has already been transmitted under the Convention, substituted service may arise, for example, when the authorities of the Requested State attempt service, but the addressee is evading service. The local authorities may then seek an order for substituted service to execute the request under the law of the Requested State. It is good practice for the authorities of the Requested State to consult with the forwarding authority in these circumstances.

---

[87]   The example in this Handbook explains substituted service as it operates in England. Where it operates in other jurisdictions, the practice and procedures of substituted service may vary. In the United States, this type of service is called "alternative service". Fed. R. Civ. Pro. 4(f)(3) allows for service "by other means not prohibited by international agreement, as the court orders". US state courts might also have similar provisions.

[88]   In some Contracting Parties, service can be achieved through different methods (*i.e.*, placing the document in the letterbox, or handing the document to someone present at the residence or in the place of work of the addressee).

[89]   *Lonestar Communications Corp. LLC v. Kaye* [2019] EWHC 3008 (Comm).

[90]   For example, under the rules of the Federal Court of Australia, where service on a person outside of Australia in accordance with the Hague Convention is not successful, a party may apply to the Court for an order either substituting another method of service, or specifying that, instead of being served, certain other steps be taken to bring the document to the attention of the person (*Federal Court Rules 2011* (Cth), r. 10.49).

▪    **An example from England**

101.    The English courts continue to make orders for service by alternative means in accordance with r. 6.15 of the *Civil Procedure Rules* in circumstances where the Convention applies. In so doing, the Court of Appeal of England and Wales has stated, "the Practical Handbook refers to the 'exclusive character' of the Convention (para. 51). However, at present, this is not the approach taken in England and Wales and it would require a significant shift to exclude, in particular, e-mail or other electronic forms of service on a party resident in a 1965 Convention State."[91]

102.    There has been some degree of dispute as to the threshold that must be demonstrated in order to grant an order for alternative or substituted service in circumstances where the Convention applies. One strand of case law suggests a possible requirement of exceptional circumstances or special circumstances to justify service by alternative means where the Convention applies.[92] Other cases indicate that the test is uniform, namely that good reason must be demonstrated for making the substituted service order, but the fact that the order would result in service by means not provided by the Convention will be relevant to whether good reason has been shown.[93] Either way, it is recognised that there is a higher threshold where the Convention applies than in other cases. When the Convention does not apply, it must only be shown that the defendant is adequately informed of the contents of the claim form and the nature of the claimant's claim.[94]

103.    As to the circumstances that will satisfy the test, it has been repeatedly emphasised that merely avoiding delay or inconvenience is insufficient to justify substituted service where the Convention applies.[95] However, as noted by Foxton J in *M v. N*,[96] there are now some clear examples of cases in which the circumstances are likely to be considered to justify an order for alternative service, including:

•    Cases in which an attempt is being made to join a new party to existing proceedings, where the effect of delay in effecting service on the new party under the Convention will either substantially interfere with directions for the existing trial, or require claims which there is good reason to hear together to be heard separately.[97]

---

[91]    *Wilmot v. Maughan* [2017] EWCA Civ 1668 per Moylan LJ at [132].

[92]    *Celgard, LLC v. Shenzhen Senior Technology Material Co. Ltd* [2020] EWHC 2071 (Ch); *Protec International Ltd v. Stout* [2017] EWHC 1208 (Ch); *Marashen v. Kenvett* [2017] EWHC 1706 (Ch); *BVC v. EWF* [2018] EWHC 2674 (QB).

[93]    *Société Générale v. Goldas Kuyumculuk Sanayi and others* [2017] EWHC 667 (Comm); *Koza Ltd v. Akcil* [2018] EWHC 384 (Ch).

[94]    *Abela & Ors v. Baadarani* [2013] UKSC 44.

[95]    For example, see *Deutsche Bank AG v. Sebastian Holdings Inc., et al.* [2014] EWHC 112 (Comm); *M v. N* [2021] EWHC 360 (Comm).

[96]    *M v. N* (*ibid.*).

[97]    *Avonwick Holding Limited v. Azitio Holdings Limited and others* [2019] EWHC 1254 (Comm); *Evison Holdings Limited v. International Company Finvision Holdings LLC* [2020] EWHC 239 (Comm).

- Cases where the proceedings have been begun with an injunction application, which is to be served immediately or in short order on the respondent.[98]

- Cases where an expedited trial is appropriate, and the order for alternative service is necessary to achieve the required expedition.[99]

- It has also been suggested that an order for alternative service might be appropriate when the order sought arises out of a hearing which has already taken place, and delay in service under the Convention might lead to the issues being determined over a prolonged period after the fact-finding has been undertaken or in cases in which the financial consequences of requiring service under the Convention might make pursuit of a low value claim financially unviable.[100]

104.   Orders for alternative service are routinely made in the Commercial Court, even in Convention cases, in claims for relief under the *Arbitration Act 1996*, as part of the policy of English law to promote, where possible, the speedy finality of arbitration.[101]

105.   In addition to the categories of cases detailed in Foxton J's judgment,[102] it is evident that the English courts are also willing to consider an order for alternative service in circumstances where numerous attempts to serve have been made, the defendant is aware of the proceedings, and is deliberately evading service.[103]

## 3.   Scope

106.   The Convention has a broad scope of application and applies to natural and legal persons, States and State agencies. It can be used to transmit judicial or extrajudicial documents which are terms that are broadly construed, in civil or commercial matters, a concept that has somewhat evolved in scope over time. The transmission must be between Contracting Parties to the Convention and in circumstances where the address of the person to be served is known.

107.   The Convention does not refer to transmission to the defendant or to their place of domicile, residence or sojourn.[104] The addition that this transmission should be made

---

[98]   *Griffin Underwriting Limited v. Varouxakis* [2021] EWHC 226 (Comm); *AXIS Corporate Capital UK II Limited v. ABSA Group Limited* [2021] EWHC 225 (Comm); *Abu Dhabi Commercial Bank PJSC v. Shetty* [2020] EWHC 3423 (Comm).

[99]   *Daiichi Chuo Kaisha v. Chubb Seguros Brasil SA* [2020] EWHC 1223 (Comm).

[100]   *Marashen v. Kenvett* (*op. cit.* note 92).

[101]   *Department of Civil Aviation of the Kyrgyz Republic v. Finrep GmbH* [2006] EWHC 1722 (Comm).

[102]   *M v. N* (*op. cit.* note 95).

[103]   *Lonestar Communications Corp. LLC v. Kaye* (*op. cit.* note 89).

[104]   The Special Commission which prepared the preliminary draft Convention expressly examined the possibility of using the notions of domicile, habitual residence or residence of the defendant, but decided against it; Report of the 1964 SC (*op. cit.* note 22), pp. 80-81. Art. IV of Protocol No 1 to the 1968 Brussels Convention (for the consolidated text, see *OJEC* C 27 of 26 January 1998, p. 1), and the parallel provision for the 2007 Lugano Convention (*Convention of 30 October 2007 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters*), which both refer to the 1965 Service Convention, mention "[…] documents

### iii. Regulation (EU) 2020/1784 of the European Parliament and of the Council of 25 November 2020 on the service in the Member States of judicial and extrajudicial documents in civil or commercial matters (service of documents) (recast)

477. The 2020 EU Service Regulation, which has been in force among all EU Member States since 1 July 2022,[588] provides for the service of judicial and extrajudicial documents in civil and commercial matters. It contains provisions on both the transmission of documents from one Member State to another and the actual service of process on the defendant.

478. Articles 5 and 37(2) of the Service Regulation and its implementing Regulation[589] oblige Member States to use a decentralised IT system for the transmission of requests for service and communication between transmitting and receiving agencies, courts and central bodies. In addition, the Service Regulation has introduced (i) the possibility of effecting service by electronic means, when specific requirements are met (Art. 19); (ii) the use of electronic signatures on deeds, documents and forms (Art. 5(3)); and (iii) the provision of assistance in a Member State to determine the address of the person to be served (Art. 7).

479. Article 29 of the Service Regulation states that it takes priority over the HCCH 1965 Service Convention among EU Member States. Accordingly, and contrary to the Inter-American Convention, the Service Regulation will be applicable when a document is required to be transmitted among the EU Member States. The Service Regulation is mandatory in the sense that service abroad shall be carried out before the consideration of possible fictitious service (Recitals 6 and 7 of the Regulation).

## III. Relationship between the 1965 Service Convention and the internal law of Contracting Parties (Art. 19)

480. The 1965 Service Convention does not prevent the internal law of Contracting Parties from permitting methods of transmission other than those provided for under the Convention. Article 19 has been included in the Convention following a request from the United States, which regarded the methods of transmission under the Convention as too restrictive. To date, this provision has mainly been applied by United States courts.

481. The interpretation of Article 19, particularly the term "permits", is not uniform. Certain courts, based on a narrow construction of this provision, consider that only the methods

---

[588] The 2020 EU Service Regulation replaced Regulation (EC) No 1393/2007 of the European Parliament and of the Council of 13 November 2007 on the service in the Member States of judicial and extrajudicial documents in civil or commercial matters (service of documents), and repealing Council Regulation (EC) No 1348/2000.

[589] Commission Implementing Regulation (EU) 2022/423 of 14 March 2022 laying down the technical specifications, measures and other requirements for the implementation of the decentralised IT system referred to in Regulation (EU) 2020/1784 of the European Parliament and of the Council.

of transmission expressly permitted by the Contracting Party are allowed,[590] whereas others, in contrast, consider that Article 19 should be construed to allow for any mechanisms of transmission for service that the foreign domestic law does not expressly prohibit.[591]

482. Since the Convention does not preclude the use of other forms of transmission that are not provided for in the Convention, including transmission by electronic means, Contracting Parties may allow service by e-mail or via other digital platforms of incoming judicial documents upon addressees within their territory, as long as this is consistent with the domestic law and policy of the State of destination.

---

[590] See *Humble v. Gill*, No 1:08-CV-00166-JHM-ERG, 2009 WL 151668 (W.D. Ky. Jan. 22, 2009) (finding that the Ontario *Rules of Civil Procedure*, pursuant to which a plaintiff attempted service, was "not the type of law contemplated by Art. 19 because it does not authorize methods for international service in Canada"); *In re J.P.L.*, 359 S.W.3d 695 (Tex. App. 2011) (holding that while service was effected pursuant to the internal law of Mexico, Art. 19 could not apply, as there was no evidence provided as to how the internal law of Mexico authorises the service of documents specifically coming from abroad); HCA 1218/2019 [2020] HKCFI 3057 (ruling that, despite the wording "may be sent" in the local law of India regarding the method of service of foreign documents, it should be interpreted as a mandatory method; however, the court also ruled that, although service by a private person or agent did not comply with the mandatory procedure in India, this defect in service is cured considering that (1) leave for service was obtained, (2) the method used is not positively illegal or unlawful under Indian law, and (3) the defendants were fully aware of the proceedings).

[591] See *Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273 (S.D. Fla. 1999) (finding that personal delivery of a writ of summons by a detective on a United States defendant located in Spain constituted valid service since it was not prohibited by Spanish law). This decision also has a statement of the two possible constructions of this provision and a report on legal doctrine and case law on this issue.

# Exhibit 10

## Richard K. Wagner

Correspondence Address: Allen Overy Shearman Sterling, 9th Floor, Three Exchange Square, Central, Hong Kong

### Expert Advising and Appointments

- Expert in US court proceedings on Chinese civil procedure issues in connection with the question of remote testimony for use in trial.  *Glam and Glits Nail Design, Inc. v. iGel Beauty, Inc., et. al.*, 20-cv-088 (C.D.Cal. 2022).
- Expert in US court proceedings on issues related to PRC civil procedure (Article 284 --- now numbered Article 294) and international service.  *Smart Study Co., Ltd. v. Acuteye et al*, Civil Action No.:  1:21-cv-5860 (GHW) (S.D. N.Y); *Palace Skateboards Group et al v. Aimeey et al*, Civil Action No.:  21-cv-3951(GHW) (S.D. N.Y.).
- Consulting expert on various Chinese law and practice issues in connection with an action pending before the United States District Court for the Northern Mariana Islands (Saipan).  Advised on Article 277 of the PRC Civil Procedure Law (now numbered Article 294).
- Consulting expert on various Chinese law and practice issues related to cross-border evidence collection, including evidence collected in China pursuant to the Hague Evidence Convention.  Advised on Article 277 of the PRC Civil Procedure Law.
- Consulting expert on various China practice issues in connection with a RICO action seated before a federal court in Kentucky.  Advised on Hague service and alternative service under FRCP Rule 4(f)(3).
- Expert in a US court proceeding on issues related to PRC civil procedure (Article 277) and PRC regulatory law (PRC state secrecy and classified information).  *Motorola Solutions, Inc. v. Hytera Communications Corp. et al*, 365 *F. Supp. 3d* 916 (N.D. IL 2019).
- Expert in a Shanghai court proceeding on issues related to the enforcement and recognition of court judgments.  Court decision recognized and enforced a US court judgment in Shanghai on the basis of reciprocity.  First Shanghai court decision to recognize a US court judgment, the second only for the courts of China.  *Nalco Company LLC v. David T Chen* ((2017) Hu 01 Xie Wai Ren No. 16).
- Expert in a US court proceeding on issues related to PRC regulatory law (foreign exchange control regime).
- Consulting expert to a Houston-based oil company in connection with Chinese court proceedings.
- Expert in a Hong Kong court proceeding on issues related to PRC regulatory law (PRC state secrecy, information security, and financial audits).

## Representative International Dispute Resolution Matters

- Represented a California-based telecommunications company and its foreign subsidiaries in connection with trade secret and unfair competition litigation before the courts of Chengdu and Beijing. Advised on international service issues in connection with PRC court proceedings.
- International counsel to a US manufacturer of home fixtures and hardware in a cross-border litigation seated in Guangdong Province, China. Advised on international service issues in connection with PRC court proceedings.
- Acted for a fiber processing equipment supplier in a contractual dispute with a Hong Kong and PRC based manufacturer. Case involved numerous international service issues in connection with Ohio state court proceedings.
- Defended a company in an international carriage of goods case, successfully quashing service of process. *Koss Corp. v. Pilot Air Freight Corp*., 242 F.R.D. 514 (E.D. Wis 2007).
- Acted for a US manufacturer of office products in a China-related US trade secret investigation before the ITC. Prepared and deposed Chinese law expert witnesses on issues related to Chinese civil procedure.
- Acted for a California company in a China-related trade disparagement action seated before a federal court in Chicago. Case involved waiver of service for a Chinese company.
- International counsel to a US semiconductor company in a product liability litigation seated in Beijing. Advised on international service issues in connection with PRC court proceedings.
- Acted for a US telecommunications company before a Los Angeles court in a post-merger dispute involving claims of fraud, trade secret infringement, and unfair competition. Hague service was achieved on multiple Chinese defendants in connection with the proceedings.
- Acted for a Chinese telecommunications corporation in an intellectual property infringement action before a federal court in Seattle.
- Acted for a Chinese manufacturer in federal court litigation seated in Seattle concerning an international sale of goods dispute with a US-based buyer.
- Defended numerous Chinese companies in complex RICO litigation pending before a New Jersey federal court.
- Acted for a Chinese hospitality company in connection with an aborted professional sports tournament that had been scheduled to take place in Guangzhou.
- Represented a large Chinese electronics company in a JAMS arbitration seated in Dallas.
- Acted for a Chinese company in a USD 49 million breach of contract claim and counterclaims before the Hong Kong International Arbitration Centre.
- Advised a Chinese state-owned energy company in connection with a multi-million-dollar acquisition in Brazil on issues related to ICSID arbitration.
- Advised a Chinese state-owned enterprise in connection with LCIA arbitration seated in London.

## Representative Publications

- Author, "Proving Chinese law in the Courts of the United States: Surveying and Critiquing the Article 277 Cases," *Amicus Curiae*, Series 2, Vol. 2, No. 2, 188-215, Winter 2021.

- Author, "From the Central Sands to the Central Kingdom: Navigating Civil Litigation in China," *Wisconsin Lawyer*, May 2014. Hon. Charles Dunn Author Award, Wisconsin Bar.
- Co-author, "Permission Denied: The Curious Case of Exit Restrictions in Chinese Commercial Litigation," *China Law & Practice*, July/August 2011.
- Author, "Alternatives to Magistrate Justice: Merchant Guild Dispute Resolution and the Foreign Trader Driven Litigation and Arbitration Reforms of Late Imperial and Early Republican China," *Journal of Comparative Law*, Volume IV, Issue 2, 2009.

## Academy

- Visiting Scholar, East Asian Legal Studies Center, University of Wisconsin Law School, Madison, Wisconsin, USA (2020). Researched China-related litigation in the courts of the United States
- LL.M. in Chinese Law, School of Oriental and African Studies, University of London, London, UK (2008)
- J.D., George Washington University School of Law, Washington, DC, USA (2002)
- Certificate, Chinese Law, joint program conducted in Beijing by China University of Political Science and Law and Duquesne University School of Law (1999)
- Diploma in Mandarin Chinese, Defense Language Institute, Monterey, California, USA (1995)
- B.A. in Philosophy, Miami University, Miami, Ohio, USA (1993)

## Practice Experience

- Allen Overy Shearman Sterling LLP, Of Counsel, Hong Kong and Beijing offices (2021-present)
- Steptoe & Johnson LLP, Partner, Chicago and Beijing offices (2015-2019)
- Baker & McKenzie LLP, Associate Attorney, Hong Kong, Chicago, and Beijing offices (2002-2015)
- United States Army, Linguist (Mandarin Chinese), California and Hawaii (1993-1997)

## Bar and Court Admissions

- State Bar of Wisconsin (2002)
- State Bar of Illinois (2005)
- N.D. Illinois
- E.D. Wisconsin
- Registered Foreign Lawyer, Law Society of Hong Kong (2002-2004; 2021-2022; 2024-present)
- Registered as a Foreign Lawyer with the PRC Ministry of Justice (2011-2012; 2016-2019; 2023-2024)
- *Pro Hac Vice* admissions have included Brooklyn, New York, E.D. California, S.D. Iowa, E.D. Washington, W.D. Washington, E.D. Pennsylvania, South Carolina, Ohio, Virginia, and Washington.