No. 25-2205

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

### KANGOL LLC,

*Appellee-Plaintiff,*

**v.**

### HANGZHOU CHUANYUE SILK IMPORT & EXPORT CO., LTD.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
District Judge Sharon Johnson Coleman
No. 1:24-cv-01636

### REPLY BRIEF OF DEFENDANT-APPELLANT HANGZHOU CHUANYUE SILK IMPORT & EXPORT CO., LTD.

Wesley E. Johnson
Cross-Border Counselor LLP
105 W. Madison St, Suite 2300
Chicago, IL 60602
Phone: (312) 752-4828
Email: Wjohnson@cbcounselor.com
Attorney for Defendant-Appellant

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iii

I.   Introduction - This Appeal Turns on Procedure, not Merits-Driven Exceptions ........................................................................................................ 1

II.  Service of Process Was not Valid ............................................................ 2

    a.   Three legal errors and one factual error ............................................... 2

    i.   First Systemic Error: Kangol Is Not Entitled to Presume Hangzhou Chuanyue is a Counterfeiter Who Will Act Like Kangol Claims Other Counterfeiters Act ................................................................................................ 2

    ii.  Second Systemic Error: Kangol's Standard of Review........................... 3

    iii. Third Systemic Error: Kangol and the District Court both Mistake Hangzhou Chuanyue's chief legal claim ............................................................... 3

    iv.  Factual Error: Misrepresentations Concerning Hangzhou Chuanyue's address.   4

    b.   Kangol's waiver theory....................................................................... 5

III. Service was Invalid as a Matter of Law...................................................... 9

    a.   Kangol Elected Not to Respond to Appellant's Central Arguments, Effectively Conceding Them ..................................................................................... 9

    b.   The Supreme Court's Recent Decision in Coney Island Automotive Parts Unlimited, Inc. v. Burton........................................................................................ 10

    c.   Kangol's Substantive Argument Depends Entirely on Its Misconceived Abuse of Discretion Standard. ................................................................................. 13

    d.   The desirability of Service via email. .................................................. 15

    e.   The Convention and Postal Channels .................................................. 17

IV.  Kangol Did in fact, Transmit Documents.................................................. 18

    a.   Hangzhou Chuanyue's Address was Known ......................................... 19

V. Default was Improper Under Article 15 of the Convention ...................... 23

VI. Richard Wagner Amicus Brief does not provide any basis for this court to Affirm    23

VII. If the Judgment is void, Hangzhou Chuanyue is entitled to Restitution. 26

VIII. Conclusion. ....................................................................................... 27

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(b), FED. R. APP. P. 32(g), and CIR. R. 32(c) ................................................................. 29

CERTIFICATE OF SERVICE ..................................................................... 30

**TABLE OF AUTHORITIES**

**Cases**

*Allen v. City of Chicago*, 865 F.3d 936 (7th Cir. 2017) ................................................ 26

*Auto Driveaway Franchise Systems, LLC v. Auto Driveaway Richmond, LLC*, 928
F.3d 670 (7th Cir. 2019) .............................................................. 27

*Bonte v. U.S. Bank, N.A.*, 624 F.3d 461 (7th Cir. 2010) ....................................... 10, 26

*Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.,* 811 F.2d 278 (5th Cir. 1987) ........ 9

*Burton v. Coney Island Automotive Parts Unlimited, Inc. (In re Vista-Pro
Automotive, LLC)*, 109 F.4th 438, 446 (6th Cir. 2024) ........................................ 11

*Chanel, Inc. v. Xu*, No. 2:09-cv-02610-cgc, 2010 U.S. Dist. LEXIS 6734 (W.D. Tenn.
Jan. 27, 2010) ............................................................................. 22

*Commercial Casualty Ins. Co. v. Consolidated Stone Co.,* 278 U.S. 177 (1929) .......... 9

*Coney Island Automotive Parts Unlimited, Inc. v. Burton,* ___U.S.___, 2026 U.S.
LEXIS 505 (2026) .......................................................................... 7

*Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984) ............... 3

*Eicher Motors Ltd. v. Partnerships & Unincorporated Associations Identified on
Schedule A*, 794 F. Supp. 3d 543 (N.D. Ill. 2024) ........................................... 1

*Ennin v. CNH Industrial America, LLC*, 878 F.3d 590 (7th Cir. 2017) ................... 26

*Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308
(1999) .................................................................................... 26

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982)
............................................................................................ 13

*Mid–Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297 (7th Cir. 1991) ................ 7

*Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 347 F.R.D. 316 (N.D. Ill. June 25, 2024)............................................... 2

*Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 854 (7th Cir. 2011).................. 3

*Relational, LLC v. Hodges*, 627 F.3d 668 ........................................................ 3

*Sanderford v. Prudential Ins. Co.,* 902 F.2d 897 (11th Cir. 1990).............................. 9

*SEC v. Lahr,* No. 22-2497, 2024 WL 3518309 (3d Cir. July 24, 2024) ...................... 15

*Shishko v. Whitley*, 64 N.C. App. 668, 308 S.E.2d 448 (1983) .................................. 27

*Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382 (S.D.N.Y. 2022) ................... 23

*Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 2025 U.S. App. LEXIS 33039, (2d Cir. Dec. 18, 2025)............................................................... 14

*Sueros & Bebidas Rehidratantes S.A. de C.V. v. Candies*, No. 2:23-cv-08282-DSF-BFMx, 2025 LX 232571 (C.D. Cal. Apr. 17, 2025)................................................ 27

*Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808 (7th Cir. 1969)............................. 11

*Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731 (7th Cir. 1991)............... 9

*Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 2020 U.S. Dist. LEXIS 82150 (S.D. Cal. May 8, 2020) ......................................................................... 16

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ....................... 15

*Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017) ............................................. 15

*Zorro Productions, Inc. v. Individuals*, No. 23-cv-5761, 2023 U.S. Dist. LEXIS 226550 (N.D. Ill. Dec. 20, 2023)......................................................... 27

**Rules**

FRAP 28(j) ........................................................................................ 10

FRAP 3. ............................................................................................ 20

FRCP 4(f)(1) ................................................................................. 4, 13

FRCP 4(f)(2) ...................................................................................... 23

FRCP 4(f)(3) ......................................... 4, 9, 10, 13, 14, 15, 16, 19, 20, 21

FRCP 60(b)(4) .......................................................... 3, 8, 11, 27

FRCP 60(c) ..................................................................................... 7

FRCP 60(c)(1) ................................................................................. 11

FRCP 69 ............................................................................................ 28

**Other Authorities**

1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial

Documents in Civil and Commercial Matters, 20 U.S.T. 361 ........................ passim

Eric Goldman, *A Sad Scheme of Abusive Intellectual Property Litigation*, 123 Colum.

L. Rev. F. 183, 186-93 (2023) ............................................................... 1

*Practical Handbook on the Operation of the Service Convention* (5th Edition) .......... 23

Sarah Frackrell, *The Counterfeit Sham*, 138 Harv. L. Rev. 471, 493-95 (2024) ......... 1

**Constitutional Provisions**

*USCS Const.Art. VI, Cl 2,* ..................................................................... 15

## I.  Introduction - This Appeal Turns on Procedure, Not Merits-Driven Exceptions

*Amicus* Strategic Alliance for Fair Ecommerce, NFP ("**SAFE**") and Kangol itself, ask the Court to treat this case as part of a broader effort to combat counterfeiting, and to affirm because that cause is important and urgent. But this appeal does not turn on sympathy or antipathy toward any party, and it should not be resolved on a policy preference for "more effective" enforcement.

If Hangzhou Chuanyue were inclined to answer in kind, it could cite the growing judicial discomfort with aspects of  the Schedule A model, including the concerns articulated in *Eicher Motors Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule A*, 794 F. Supp. 3d 543 (N.D. Ill. 2024), and academic critical commentary (Eric Goldman, *A Sad Scheme of Abusive Intellectual Property Litigation*, 123 Colum. L. Rev. F. 183, 186-93 (2023) (case study of typical Schedule A case); Sarah Frackrell, *The Counterfeit Sham*, 138 Harv. L. Rev. 471, 493-95 (2024).

But this Court should not decide this appeal on sympathy or antipathy toward the litigants, or on a policy preference for "more effective" counterfeit enforcement. This case turns on objective, procedural questions.

## II. Service of Process Was Not Valid
### a. Three Legal Errors and One Factual Error

Throughout its brief, Kangol exhibits three systemic legal errors and one systemic factual error. Rather than address them each time they arise, Hangzhou Chuanyue addresses them at the outset.

### i. First Systemic Error: Kangol Is Not Entitled to Presume Hangzhou Chuanyue is a Counterfeiter Who Will Act Like Kangol Claims Other Counterfeiters Act

Although this case is not an overall review of Schedule A cases, in *Eicher Motors*, Judge Kness identified a core logical flaw behind boilerplate "Schedule A" *ex parte* procedures, i.e., that this "approach … asks courts to assume what plaintiffs are required to allege as to each defendant," effectively "presum[ing] that defendants will act nefariously unless shown otherwise," when the judicial system instead "defaults to … transparency and notice" and requires plaintiffs to justify any departure "with specifics" rather than stereotypes derived from the allegation itself. *Eicher* at 10–11.

Kangol claims that because it accused Hangzhou Chuanyue of selling counterfeit goods, it is entitled to the presumption that Hangzhou Chuanyue was a counterfeiter. That supposed "typicality" was not true here; Hangzhou Chuanyue had a real verifiable address that Kangol would have easily found had it performed "reasonably diligent efforts to ascertain and verify defendant's mailing address… in a variety of ways." *Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 347 F.R.D. 316, 325 (N.D. Ill. June 25, 2024) (Pallmeyer,

2

J.). That "variety of ways" should include, at a minimum, the address listed on the defendant's ecommerce platform, the defendant's registered address if it is a business entity, and the address listed in any trademark application or registration the defendant claims. "Unknown" is not a label a plaintiff may simply assume on the strength of its own allegations; it is a factual showing the plaintiff must show through multi-source diligence.

### ii. Second Systemic Error: Kangol's Standard of Review

Kangol cites *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 854 (7th Cir. 2011) for the proposition that denial of a FRCP 60(b)(4) motion is reviewed for abuse of discretion App. Br. 11. But *Philos* states that it is "a *per se* abuse of discretion to deny a FRCP 60(b)(4) motion when the trial court has no jurisdiction over the action." *Id.* at 855. As recently noted by the Seventh Circuit, an error of law is necessarily an abuse of discretion. *Avanzalia Solar, S.L. v. Goldwind USA, Inc.*, 146 F.4th 553, 561 (7th Cir. 2025). *See also Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563 (7th Cir. 1984). It remains law that a default judgment entered without personal jurisdiction is void, and it is a *per se* abuse of discretion to deny a motion to vacate such a judgment. *See Relational, LLC v. Hodges*, 627 F.3d 668, 671 (7th Cir. 2010).

### iii. Third Systemic Error: Kangol and the District Court Both Mistake Hangzhou Chuanyue's Chief Legal Claim

Kangol and the District Court both address a position Hangzhou Chuanyue does not dispute: FRCP 4(f) does not create a hierarchy requiring exhaustion of

FRCP 4(f)(1) before invoking FRCP 4(f)(3). Hangzhou Chuanyue agrees that FRCP 4 contains no exhaustion requirement.

Hangzhou Chuanyue has never claimed otherwise. Instead, Hangzhou Chuanyue contends that service of process is *never* available under 4(f)(3) where the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, 20 U.S.T. 361 (the "***Convention***") applies, i.e. that its threshold conditions are met. The *only* available means of serving a defendant in China (or any other of 80+ countries who are parties to the Convention) is through FRCP 4(f)(1)[1].

### iv. Factual Error: Misrepresentations Concerning Hangzhou Chuanyue's Address

Kangol also misstates what the District Court decided about the record on address. The Memorandum Opinion only noted the parties' positions, at pp. 3-4, but made no comment about evidence or lack of evidence supporting Hangzhou Chuanyue's contentions.

To the extent this mischaracterization is meant to imply that Hangzhou Chuanyue *actually* failed to present evidentiary support that its address is both known and easily discoverable, the evidence of Hangzhou Chuanyue's address and

---

[1] A possible exception would be an order allowing a litigant to request some form of alternative service under FRCP 4(f)(3) pursuant to Article 5(b) of the Convention. See discussion at Section VI below.

how Kangol could have found it is in the record at Dkt 60, pp 4-5, Dkt. 60-2, 60-3, Dkt. 65 pp. 4-11, Dkt. 65-1, Dkt. 65-2, Dkt 65-3.

### b. Kangol's Waiver Theory

Kangol proposes that this Court rule that a defendant, without taking any action in court, waives its defenses, including an objection to service of process, by doing nothing more than contacting the plaintiff's attorneys to inquire about settlement.

Such a rule would not only discourage settlement for fear of waiving important defenses but would create a trap for unwary litigants. Law firms contacted by defendants to negotiate a settlement would be obligated to advise their clients of the dangers of discussing settlement. This Court should not create such a rule. That is especially true in a Schedule A case, where early proceedings are *ex parte* and defendants can appear only after assets are restrained. In that environment, treating settlement outreach as a waiver trap would turn ordinary, pragmatic conduct into forfeiture of defenses, while insulating improper service from scrutiny.

Kangol's primary response to Hangzhou Chuanyue's service challenge is to argue that Hangzhou Chuanyue waived any objection to service by (1) having prior counsel contact Kangol's counsel to inquire about settlement (2) contacting Kangol through four different law firms (prior to its present counsel) and (3) waiting approximately ten months to appear in court to move to vacate. The District Court did not address waiver in its Memorandum Opinion, as Kangol made no such

argument. Had Kangol raised this argument in the District Court, Hangzhou Chuanyue could have developed a countervailing factual record.

Kangol is correct that this Court *may* affirm on any ground supported by the record, but that does not mean it *should* do so, especially where the inquiry is factually based, was not addressed below, and would expand waiver well beyond Seventh Circuit law.

A personal-jurisdiction defense (including one based on defective service) may be waived only where the defendant "gives a plaintiff a reasonable expectation that he will defend the suit on the merits or where he causes the court to go to some effort that would be wasted if personal jurisdiction is subsequently found lacking." *Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 906 (7th Cir. 2016).

Kangol cannot meet either branch of the *Hedeen* standard. Nothing Hangzhou Chuanyue did caused the District Court to expend effort that would be wasted if jurisdiction is lacking. Hangzhou Chuanyue did nothing in court except appear and object to service of process.

Kangol never explains why having several attorneys in succession constitutes waiver. Kangol does not claim to have responded to any of Hangzhou Chuanyue's previous attorneys but presumably there were unsuccessful negotiations, or Kangol simply ignored the inquiries. Kangol does admit that previous counsel "said nothing about service," Appellee Br. P. 17, so those attorneys never explicitly waived service.

It might be said that contact by the attorneys demonstrates notice of the lawsuit, but that isn't in dispute. Knowledge of a lawsuit does not substitute for

valid service. See, e.g., *Mid–Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991).

Kangol does not explain why time between when the first of Hangzhou Chuanyue's attorneys contacted Kangol and when current counsel filed its Motion to Vacate constitutes waiver, nor could it.[2]

The *Hedeen* standard requires that a defendant waives objection to personal jurisdiction when it "gives a plaintiff a reasonable expectation that [it] will defend the suit on the merits." *Hedeen at* 906. But Kangol's theory of waiver is: "[t]hrough its silence on service, Chuanyue clearly gave the decided belief that service was proper. If service was an issue, its counsel should have promptly brought it up. However, none of them did." Appellee Br. P. 15.

This theory fails on multiple levels. First, it focuses on the wrong (supposed) belief. Waiver of objection to service requires a reasonable expectation that the defendant intends to defend the suit on the merits, not that it believes that service was proper. That's an important distinction since, as noted below, defending a lawsuit on the merits is a substantial endeavor.

Second, there is nothing in the record showing or implying that Hangzhou Chuanyue induced Kangol to form any expectation, reasonable or not, that it was prepared to defend the suit on the merits. Kangol's claimed expectation must be

---

[2] Whether any delay is a basis of waiver is an entirely different question than whether any delay is unreasonable under FRCP 60(c) in light of the Supreme Court's recent decision in *Coney Island.* The import of that case is discussed in III.b.

grounded in evidence that it actually formed such an expectation. But Kangol points to no statement by Kangol's counsel, no filing, and no contemporaneous conduct showing that Kangol "reasonably expected" merits litigation because of Hangzhou Chuanyue's emails. Kangol does not claim to have done or said anything differently than it would have otherwise in response to the four settlement inquiries.

Third, Kangol's supposed expectation was not reasonable at all. Negotiating a settlement is a relatively minor task for a law firm. Undertaking to defend a federal intellectual property lawsuit is a *massive* undertaking. That is particularly true where the complaint itself, including exhibits, is nearly 300 pages long and an injunction freezing the defendant's assets is already in place. Kangol cannot claim that Hangzhou Chuanyue "clearly" meant to convey, through nothing more than engaging in settlement negotiations, that it intended to defend the case on the merits.

Kangol suggests that Hangzhou Chuanyue delayed filing its motion to vacate as a strategy. There is of course, nothing wrong with employing strategy in defending a legal case. But the record provides no support for a strategic delay. Hangzhou Chuanyue gained nothing by waiting and Kangol suffered no prejudice.

Moreover, the *Philos* case *endorses* this strategy. In that case, the district court ruled that the defendants' FRCP 60(b)(4) motion was untimely because it was filed nearly a year after the entry of the default judgment against them. The *Philos* court called that conclusion "erroneous" since a defendant has two options. "First, the defendant can appear in court and immediately object to the court's personal

jurisdiction. Second, the defendant can 'ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding,'" *Philos* 645 F.3d at 855-56.

None of the other cases cited by Kangol suggest a different result. The court in *Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731 (7th Cir. 1991), found waiver only after approximately six years of *post*-judgment proceedings in which the defendants participated in court without raising service defects. *Id*. at 732. Kangol's Fifth Circuit case, *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.,* 811 F.2d 278 (5th Cir. 1987), found waiver where defendants wasted the *court's* time. *Sanderford v. Prudential Ins. Co.,* 902 F.2d 897 (11th Cir. 1990), concerned a minor technical problem with the summons (a missing return date) not a claim that service of process violated the treaty obligations of the United States. *Commercial Casualty Ins. Co. v. Consolidated Stone Co.,* 278 U.S. 177 (1929) addresses venue, not service of process.

For all these reasons, the Court should decline Kangol's invitation to decide this appeal on an undeveloped, fact-bound waiver theory that was not addressed below and that does not satisfy the Seventh Circuit's waiver standard.

### III. Service Was Invalid as a Matter of Law
#### a. Kangol Elected Not to Respond to Appellant's Central Arguments, Effectively Conceding Them

The principal question before the Court is whether service of process by email was valid pursuant to FRCP 4(f)(3), which allows service "by other means not prohibited by international agreement, as the court orders." That question in turn

depends on whether the Convention prohibits service by email. Hangzhou Chuanyue asks this Court to find that the Convention is exclusive, i.e. that it prohibits any "other means" not allowed for in the Convention.

Kangol does not contest the interpretation of FRCP 4(f)(3) and the Convention in Hangzhou Chuanyue's opening brief and in the brief of *Amici* professors Dodge and Gardner. Failure to respond to an argument generally results in waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Specifically, Kangol does not contest 1) that treaties should be analyzed pursuant to the Supreme Court methodology identified by Hangzhou Chuanyue and *Amici* and 2) Hangzhou Chuanyue and *Amici's* analysis of the Convention pursuant to that methodology.

Hangzhou Chuanyue's and *Amici's* analysis need not be reiterated here, but may be found discussed at length in their respective briefs.

### b. The Supreme Court's Recent Decision in *Coney Island Automotive Parts Unlimited, Inc. v. Burton*

Hangzhou Chuanyue appreciates that Kangol filed its FRAP 28(j) letter on January 23, 2026, informing Hangzhou Chuanyue and the Court of the Supreme Court's January 20, 2026 decision in *Coney Island Automotive Parts Unlimited, Inc. v. Burton,* ___U.S.___, 2026 U.S. LEXIS 505 (2026) in time for Hangzhou Chuanyue to incorporate it into this Reply brief.

The case is especially important to consider as it seems to overrule long standing Seventh Circuit precedent, *See, e.g., Taft v. Donellan Jerome, Inc.*, 407 F.2d 807,

808 (7th Cir. 1969), as well as cases relied upon by both parties to this appeal and the District Court, such as *Philos Technologies, Inc. v. Philos & D, Inc.*, 645 F.3d 851 (7th Cir. 2011).

*Coney Island* resolves a circuit split on the threshold question whether FRCP 60(c)(1)'s "reasonable time" requirement applies to a motion under FRCP 60(b)(4) asserting that a judgment is void. It does. *Id.* at *9. The Supreme Court affirmed a fact-specific finding on an extreme record, where the movant waited six years after entry of a default judgment during which time a bankruptcy trustee attempted to enforce the judgment, before seeking relief. Nothing in *Coney Island* holds, or even implies, that a far shorter interval is unreasonable.

The Supreme Court did not opine on what constitutes a reasonable time for purposes of FRCP 60(b)(4) motion, as the defendant in Coney Island did not contend that it complied with the requirement. *Id.* at *9. The 6th Circuit case which *Coney Island* affirmed, however, did. "[Reasonable time] ordinarily depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief." *Burton v. Coney Island Automotive Parts Unlimited, Inc. (In re Vista-Pro Automotive, LLC)*, 109 F.4th 438, 446 (6th Cir. 2024).

Although Hangzhou Chuanyue reasonably relied on existing Seventh Circuit precedent that could bring its FRCP 60(b)(4) motion at "any time," *Philos* at 857, the record nonetheless shows that the motion to vacate was filed within a reasonable time. Kangol moved for default judgment on April 18, 2024. Thereafter,

Hangzhou Chuanyue was not idle. As Kangol points out, Hangzhou Chuanyue made numerous attempts to settle the matter, beginning on that date and continuing at least until the correspondence dated December 31, 2024. The parties presumably engaged in unsuccessful settlement negotiations for some time after that.

The Motion to Vacate was filed on February 25, 2025, about 8 weeks after the attempt to settle on December 31, 2024. *See* Appellee Supp. App. 139. Although there is nothing in the record, one can draw reasonable inferences about what occurred between December 31, 2024 and February 25, 2025. Settlement negotiations occurred for some period of time but were unsuccessful. Hangzhou Chuanyue then sought new counsel for some period of time after that. Present counsel then undertook representation of Hangzhou Chuanyue. Counsel, as is required, thoroughly investigated the facts of the case and the law. Given the nature of the Motion to Vacate, counsel had to spend considerable time on the required legal research and writing. In the meantime, and by contrast to the bankruptcy trustee in *Coney Island*, who wasted its own time and that of the court's in futile collection attempts, Kangol suffered no prejudice from the delay since, rightly or wrongly, the Default Judgment Order was self executing. On this record, Hangzhou Chuanyue's motion was filed within a reasonable time and nothing in *Coney Island* calls for a different result.

Nor does *Coney Island* undermine the long-settled principle that a defendant disputing personal jurisdiction is not required to appear in the first place merely to preserve that defense. The Supreme Court reiterated that a defendant is "always

free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment . . . in a collateral proceeding." *Id.* at *8-9, *citing Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982).

### c. Kangol's Substantive Argument Depends Entirely on Its Misconceived Abuse of Discretion Standard

Kangol's next contention explains why email service would be desirable, if district courts were not constrained by the Convention. These sections are based entirely on the mistaken analysis of the abuse of discretion standard as outlined above.

Kangol's arguments concerning the majority view in the Northern District of Illinois was anticipated and discussed at length in Hangzhou Chuanyue's opening brief and need not be reiterated.

Additionally, as noted in Section II.a.iii above, Kangol bases its contentions on a straw man argument, that "FRCP 4(f) does not require a plaintiff to attempt service by other means before seeking authorization to use an alternate means of service under FRCP 4(f)(3)."

As noted above, Hangzhou Chuanyue has never claimed otherwise. Hangzhou Chuanyue contends that the *only* available means of serving a defendant in China (or any other of 80+ countries who are parties to the Convention) is through FRCP 4(f)(1).

The Second Circuit agrees. In *Smart Study Co. v. Shenzhenshixin-dajixieyouxiangongsi*, 2025 U.S. App. LEXIS 33039, (2d Cir. Dec. 18, 2025) [3] ("***Smart Study II")*,* the court concluded that "email service on the Chinese defendants is prohibited by the Hague Service Convention, and thus improper under FRCP 4(f)(3)."

The case's procedural history does not help Kangol. Even accepting that *Smart Study II* reviewed the district court's opinion for abuse of discretion, *Smart Study II's* unequivocal conclusion created binding case law in the Second Circuit. A Second Circuit district court would abuse its discretion by permitting email service on a defendant in China when the Convention applies, because that ruling would rest on a legal error, authorizing what the Convention prohibits.

In accordance with the analysis of Hangzhou Chuanyue and *Amici* Dodge and Gardner*, Smart Study II* reached that result by emphasizing the Convention's mandatory character, citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486

---

[3] Kangol derides Hangzhou Chuanyue's FRAP 28(j) filing related to this case as a "last gasp". Obviously, Hangzhou Chuanyue anticipated filing a reply brief in which it could discuss that case, so it wasn't a "last gasp". Rather, since *Smart Study II* case came out on Thursday, December 18, 2025 and Kangol's brief was due on Monday December 22, 2025, Hangzhou Chuanyue wanted to afford Kangol a fair opportunity to discuss the case.

U.S. 694 (1988) and *Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017). *Smart Study II* at *13, 16

Kangol also claims that the quotes from *Schlunk* and *Water Splash* relied upon in *Smart Study II* are dicta. Hangzhou Chuanyue's opening brief explores at length why those quotes are not dicta. See Appellant Br. pp. 31-37 to which Hangzhou Chuanyue can only add that the Second Circuit's reliance on those cases shows that it does not consider them dicta either.

Kangol further seeks to distinguish *Schlunk* and *Water Splash* since they involved state law service of process. That is a distinction without a difference. The treaties of the United States are the "supreme Law of the Land," *USCS Const.Art. VI, Cl 2*, binding on both state and federal courts.

Finally, Hangzhou Chuanyue does not rely on the Third Circuit's *SEC v. Lahr* case. Rather, it provided this Court with relevant legal authority for its consideration. Until *Smart Study II*, *Lahr* was the only circuit court opinion considering whether the Convention is exclusive, albeit in an unpublished opinion. *SEC v. Lahr,* No. 22-2497, 2024 WL 3518309 (3d Cir. July 24, 2024). That court held that service by email was prohibited because the Convention is exclusive. *Id.* at *5.

### d. The Desirability of Service Via Email

Kangol puts forth several claims about the desirability of service by email, which it believes is entirely up to the discretion of district courts. Appellee Br, p. 25. Email is preferable to plaintiffs and district courts on a factual basis, but the question of law is whether service by email is allowed under FRCP 4(f)(3), which

turns on whether the Convention prohibits it. No real or perceived benefit of email service supersedes FRCP 4(f)(3).

In particular, Kangol's "need for speed" claim should be rejected for three reasons. First, nothing in FRCP 4(f) or the Convention provides for exceptions based on urgency. The Second Circuit expressly rejected any urgency-based exception, stressing that FRCP 4(f)(3) "makes no mention of urgency or exigent circumstances." *Smart Study II* at *17.

Second, it is based at least in part on outdated information. Kangol cites a six-year-old case, *Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 2020 U.S. Dist. LEXIS 82150, at *3 (S.D. Cal. May 8, 2020) for the claim that it is "nearly certain" that the Chinese Central Authority would exceed six months in its attempt to effectuate service, and that according to China's Ministry of Justice, it "often takes more than two years to complete." That may have been true six years ago, but the current information from China's Ministry of Justice, which may be found on the HCCH website, states that:

> If the request is submitted through our online portal, the whole procedure could be very fast. The fastest record is 11 days (from the day of submission online to the day we issued the certificate of service). In most cases, service could be completed in 3 months. But this period could be shorter or longer depending on the location of the recipient. 5bbc302d-532b-40b1-9379-a2ccbd7479d6.pdf (last accessed January 25, 2026)

Third, the claimed "need for speed" is illusory. Inevitably, plaintiffs like Kangol request service of process only after they have obtained an *ex parte* TRO, freezing defendants' assets. Service via email hastens nothing but the date on which

plaintiffs can obtain and collect upon a default judgment. No doubt plaintiffs prefer to collect on a financial award sooner rather than later, but that is not a matter of urgency[4].

Even if Kangol and some district courts are dissatisfied with the speed of the Chinese Central Authority, that does not allow a district court to alter the terms of a duly ratified treaty of the United States. Resolution of the problem, if it is indeed a problem, lies with the United States Department of State. Article 14 of the Convention *requires* that such disputes be settled diplomatically: "Difficulties which may arise in connection with the transmission of judicial documents for service *shall be* settled through diplomatic channels". (Emphasis supplied.)

### e. The Convention and Postal Channels

Kangol contends that email is not a "postal channel" within the meaning of Article 10(a) of the Convention. If the Convention is exclusive, the only category of allowed service under the Convention in which email could fit *is* through Article 10(a).

Kangol relies on a 2022 questionnaire, the same questionnaire that Hangzhou Chuanyue referred to in its opening brief. From this questionnaire, Kangol claims that the Permanent Bureau of the HCCH "concluded" that only 13%

---

[4] Also relevant to the claim that there is a "need for speed," Article 15(a) of the Convention provides an upper limit of six months for a Central Authority to provide a certificate of service, after which default may be entered.

of contracting parties agreed that email was a postal channel. However, Kangol leaves out two important contexts:

First, this was not a vote, it was a survey in anticipation of the 2024 meeting of the Special Commission. At that meeting, whether email constitutes a postal channel was discussed and as a result of that discussion, a consensus was reached that email was in fact a postal channel. *Practical Handbook*, p.181, ¶381, C & R, ¶105 "The [Special Commission] noted that Article 10(a) includes transmission and service by e-mail." The minority view ultimately prevailed.

But the most important piece of missing context is that the United States was in the that minority of 13% who agreed that email is a postal channel. In the context of interpreting a treaty, the views of the Unites States should prevail, even if it was actually in the minority.

## IV. Kangol Did Transmit Documents

Creatively, Kangol suggests that the Convention does not apply since Kangol never actually transmitted any documents to Hangzhou Chuanyue. Rather, Kangol only emailed links to documents and, after all, emails aren't documents anyway. Kangol now claims that "an email with links to a website is not a "document" as contemplated by Article I of the Hague Convention". Appellee Br. P. 32. Needless to say, Kangol did not make this argument in the District Court.

The Hague Service Convention does not separately define "document," but the Supreme Court's Hague cases treat the initiating papers, the summons and complaint, as paradigmatic "judicial documents." As the Supreme Court notes, "the

term 'service of process' has a well-established technical meaning. Service of process refers to a formal delivery of *documents* that is legally sufficient to charge the defendant with notice of a pending action". *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988) (emphasis supplied).

If Kangol's theory is to be taken seriously, it has just provided an alternative basis for invalidating service of process since it now admits it did not serve documents on Hangzhou Chuanyue. But emailing defendants in China a link to a U.S. website that hosts the summons and complaint necessarily results in transmission of those documents abroad. Once the recipient clicks the link, the documents are electronically delivered from servers in the United States to the user in China. It does not matter that the defendant initiates the transmission, especially where the plaintiff's email induced and enabled that transmission.

### a. Hangzhou Chuanyue's Address was Known

Kangol claims that the District Court decided that Hangzhou Chuanyue's address was unknown but it explicitly declined to decide that issue. In the Memorandum Opinion, the District Court noted the arguments made by Hangzhou Chuanyue and Kangol related to whether Hangzhou Chuanyue's address was known and whether Kangol made reasonably diligent efforts to determine the address, but pointedly reached no conclusion, stating,

"[e]ven if Plaintiff did not make reasonably diligent efforts, it is not

dispositive of the motion. Many Northern District of Illinois courts have

found that a defendant was properly served under FRCP 4(f)(3) even where

a plaintiff failed to conduct reasonable due diligence under the Convention.

Therefore, the real inquiry is whether service was proper under

FRCP 4(f)(3)."

 Memorandum Opinion pp 3-4, S. App. 003-4, citations omitted.

Kangol further claims that "[s]ince Chuanyue has not appealed that original order allowing for service via email, it has waived that argument". Appellee Br. p. 34. By rule, Hangzhou Chuanyue's notice of appeal encompassed "all orders that, for purposes of appeal, merge into the designated judgment or appealable order. It is not necessary to designate those orders in the notice of appeal". FRAP 3.

Kangol's effort to transform a neutral assessment into an implicit factual finding in Kangol's favor should be rejected. If this Court accepts Kangol's invitation to this resolve this factual issue which the District Court avoided, i.e. whether Hangzhou Chuanyue's address is "known" within the meaning of Article 1 of the Hague Service Convention, it should be resolved in Hangzhou Chuanyue's favor. The principal underlying and indisputable fact is that, as noted in Hangzhou Chuanyue's Reply in support of its Motion to Vacate (Dkt. 65, p. 7), "[t]here are no facts, not a single statement, sworn or unsworn, neither in its Response [to the Motion to Vacate, Dkt. 63], nor any previous filing in this matter, that demonstrate that Plaintiff made any actual effort to determine the address of Hangzhou Chuanyue before asking the Court to allow it to serve process by email."

In requesting service pursuant to FRCP 4(f)(3), Kangol never actually claimed that Hangzhou Chuanyue's address was unknown. In its memorandum in support of its motion for a TRO, Dkt. 19, in which it requested service of process by

email pursuant to FRCP 4(f)(3), it claimed only that "it is very difficult to know the true identities and locations of the Defendants given that the Defendants are primarily Chinese entities that sell counterfeit goods on online sales platforms and typically do not disclose reliable information about their identities and locations in connection with their online storefronts." Dkt. 19, p. 14.[5]

The only evidentiary support offered was the declaration of Todd R. Tucker, Kangol's lead counsel both in this Court and in the District Court. His declaration offers no evidence that Kangol even considered putting forth an effort, let alone a diligent effort, to locate Hangzhou Chuanyue's address. Mr. Tucker's declaration did not describe any attempted methods, any searches, any inquiries, any platform requests, any corporate registry checks, or any effort "in a variety of ways." Instead, Tucker merely quotes a report that counterfeiters change their address "routinely." See Appellee Supp. App. p. 069-70.

Doing nothing at all, since finding an address is "very difficult," is no substitute for the reasonable diligence required by courts in the Northern District of Illinois. Attorneys are often called upon to complete "very difficult" tasks when litigating in federal court. But their claim that it would have been "very difficult" is hard to credit. Hangzhou Chuanyue's address was at Kangol's attorneys' fingertips as noted above. Section II.a.iv above.

---

[5] The District Court did not grant Kangol's motion for a TRO based on the memorandum included in Appellee's Appendix, Dkt, 11. Rather, it granted Kangol's Motion for a TRO based on its amended memorandum, Dkt. 19.

Kangol also misrepresents the nature of the location where Hangzhou Chuanyue's storefront may be found. Hangzhou China Silk Town is not an "open air market" akin to a flea market such as the Maxwell Street Market. It is an open air *mall* with permanent store fronts with posted addresses, akin to Oakbrook Center. The true character of Hangzhou China Silk Town may be readily viewed here: https://youtu.be/EFAhad9WPjg?si=nmqiKNOox3Oi_oNx[7].

The video depicts a pedestrian shopping street lined with permanent storefronts, modern signage, and posted shop identifiers, not a temporary bazaar of pop-up stalls. The "stall" Kangol refers to is a store in that mall. Uncontested evidence that an accurate picture of the storefront was available to Kangol Dkt 65-3, p2, so describing it as one of "hundreds of stalls at an open-air market in China" is unsupported in the record.

Of course, there would have been no need for Kangol to travel to China. If it had any doubts as to the veracity of the address, Kangol could have hired an investigator, as attorneys do every day. As noted in *Chanel, Inc. v. Xu*, No. 2:09-cv-02610-cgc, 2010 U.S. Dist. LEXIS 6734, at *3 (W.D. Tenn. Jan. 27, 2010), there are investigators in China available to "verify the accuracy of the physical contact addresses and research alternative addresses for Defendants."

---

[7] This link was included in the declaration attached to HC's reply brief. Dkt 65-3 p. 7.

## V. Default Was Improper Under Article 15 of the Convention

Unlike the other aspects of the Convention, Kangol does discuss the text of Article 15. Kangol relies on the second paragraph. While it is true that the United States is amongst the nations who have made a declaration under this paragraph, the paragraph explicitly requires that a judge may give judgment only if the document was transmitted through a method provided for in the Convention. Nothing in the paragraph can be read to say that Article 15 doesn't apply if the Convention is ignored.

## VI. Richard Wagner Amicus Brief Does Not Provide Any Basis for this Court to Affirm

Mr. Wagner's thesis, that because the Chinese judiciary allows *itself* email service under some circumstances, foreign litigants are free to serve residents of China directly via email, was considered and rejected by both the SDNY and the Second Circuit. *See Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1399 (S.D.N.Y. 2022) ("**Smart Study I**") ("the law of the People's Republic of China prohibits foreign entities and individuals from serving litigants in China without the consent of the Ministry of Justice"), *Smart Study II* at *9 (noting Mr. Wagner's claims but concluding nonetheless that email service was not proper on Chinese defendants under FRCP 4(f)(2) or (3)).

Of the three briefs submitted on behalf of Appellee, only Mr. Wagner's brief addresses the *Practical Handbook on the Operation of the Service Convention* (5th Edition), one of two principal sources for the views of the contracting parties to the

Convention,[8] including the United States, which are entitled to, respectively, "considerable" and "great" weight in interpreting the treaty. *Water Splash* at 281-82.

But Mr. Wagner's references are misleading. Paragraph 482 of the Practical Handbook does indeed include the quote "[t]he Convention does not preclude the use of other forms of transmission that are not provided for in the Convention, including transmission by electronic means," but Wagner omits that the sentence starts with the word "[s]ince" and omits that the sentence continues "*Contracting Parties may allow* service by e-mail or via other digital platforms of the linking addresses within their territory, *as long as* this is consistent with the domestic law and policy of the State of Destination." (emphasis supplied). Nothing in the *Practical Handbook* (or anywhere else) says that China *has* allowed service by email, or that service by email *is* consistent with China's domestic law and policy.

Wagner's discussion of substitute, i.e. alternate, service is equally misleading. The selected paragraphs and footnotes he cites ranging from ¶¶93-103 are from a section entitled "Exclusive Character of the Convention" which begins "it remains undisputed that if the law of the forum determines that transmission of documents for service abroad is required, the Convention must be applied". ¶93.

A subsection entitled "Substituted service" does not contradict the "exclusive character of the Convention". As can readily be ascertained, there are provisions for substitute or alternate service in the text of the Convention itself, but only in the

---

[8] The other being the Conclusions and Recommendations.

context of Article 5, which provides that a Central Authority shall serve a document under its own internal law, or "by a particular method requested by the applicant [i.e. the party wishing to serve the document], unless such method is incompatible with the law of the State addressed".

The paragraphs relied upon by Mr. Wagner do not describe acceptable substitutes or alternate methods of service that are allowed under the Convention but describe *in general* what is meant by those terms. The ultimate and key paragraph of the section, ¶100, which Mr. Wagner does not quote, describes when substituted (or alternate) service *is* allowed under the Convention:

> Under the Convention, substituted service may arise, for example, where the law of the Requesting State authorises substituted service and, on that basis, the forwarding authority seeks a particular method of service under Article 5(1)(b). Alternatively, where a request has already been transmitted under the Convention, substituted service may arise, for example, when the authorities of the Requested State attempt service, but the addressee is evading service. The local authorities may then seek an order for substituted service to execute the request under the law of the Requested State. It is good practice for the authorities of the Requested State to consult with the forwarding authority in these circumstances.

Mr. Wagner, Kangol and SAFE seem unaware that the Convention anticipates and provides for their objections. Article 5(1)(b) specifically allows for alternate service which the Central Authority "shall" apply, unless it is incompatible with the receiving states internal law. Rather than taking a stance on

Chinese law, this Court should recognize that the requested form of service, via email, may be requested of the Chinese Central Authority, its Ministry of Justice, International Legal Cooperation Center[9]. That body should be allowed to determine if the request is compatible with its own internal law, as contemplated by the Convention.

**VII. If the Judgment is Void, Hangzhou Chuanyue is Entitled to Restitution.**

For the first time on appeal, Kangol disputes that if Hangzhou Chuanyue is successful in vacating the Default judgment as void, it is entitled to restitution. Failure to respond to an argument generally results in waiver, and failure to present an argument to the district court usually means it should not be addressed on appeal. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond in the district court); *Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017) (arguments presented for the first time on appeal are waived). *Ennin v. CNH Industrial America, LLC*, 878 F.3d 590, 595 (7th Cir. 2017).

Even if this Court entertains these arguments, Kangol errs in supposing that if the default judgment were vacated, the terms of the preliminary injunction would remain in effect. "Generally, an appeal from the grant of a preliminary injunction becomes moot when the trial court enters a permanent injunction, because the former merges into the latter." *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 314 (1999). *See also Auto Driveaway Franchise Systems, LLC v.*

---

[9] https://www.hcch.net/en/states/authorities/details3/?aid=243 (last accessed January 25, 2026.

*Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019) ("the preliminary injunction is overtaken by the entry of a permanent injunction. The rulings effectively 'merge,' and so the earlier preliminary injunction no longer has any effect" (*citing Grupo Mexicano).*

Kangol's obscure cases from far afield are inapplicable. *Sueros & Bebidas Rehidratantes S.A. de C.V. v. Candies*, No. 2:23-cv-08282-DSF-BFMx, 2025 LX 232571 (C.D. Cal. Apr. 17, 2025) and *Shishko v. Whitley*, 64 N.C. App. 668, 308 S.E.2d 448 (1983) did not involve FRCP 60(b)(4) claims that the judgment was void but requested relief from the default judgment for excusable neglect. Service of process was not contested in either case.

Kangol brings up equitable remedies but did not request an equitable remedy. As another district court opinion reads, "Schedule A plaintiffs rush into court, request and receive an asset freeze, and obtain a default judgment. And then, the Schedule A plaintiffs ask district courts to unfreeze the money and award statutory damages, not equitable relief." *Zorro Productions, Inc. v. Individuals*, No. 23-cv-5761, 2023 U.S. Dist. LEXIS 226550, at *10 (N.D. Ill. Dec. 20, 2023). Kangol asked for and was granted a monetary award for statutory damages and collected the money in January 2025. If that judgment is void, the money should be returned.

## VIII. Conclusion

For the foregoing reasons, Defendant-Appellant Hangzhou Chuanyue Silk Import & Export Co., Ltd. respectfully requests that this Court reverse the order denying its motion to vacate, vacate the default judgment and related orders, and remand for further proceedings consistent with this Court's opinion, including

application of the Hague Service Convention and FRCP 69. The Court should also direct restitution of any amounts Kangol obtained from Hangzhou Chuanyue pursuant to the vacated judgment and related orders.

January 26, 2026

Respectfully submitted,

/s/ Wesley E. Johnson

Wesley E. Johnson
Cross-Border Counsel LLP
105 W. Madison Street, Suite 2300
Chicago, Illinois 60602
(312) 752-4828
wjohnson@cbcounselor.com
Counsel for Defendant-Appellant
      Hangzhou Chuanyue Silk Import &
Export Co., Ltd

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(b), FED. R. APP. P. 32(g), and CIR. R. 32(c)**

The undersigned hereby certifies that the foregoing Brief for Plaintiff-Appellant complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(b). The brief was printed using 12-point Century Schoolbook font, with footnotes in 11-point Century Schoolbook font. The word-processing system used to prepare the document, excluding the Table of Contents, Table of Authorities, and Certificates, calculates that it contains 6,784 words, including footnotes.

*/s/ Wesley E. Johnson*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 26, 2026, an electronic copy of the foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/Wesley E. Johnson*